| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ☐ *Individual appearing without attorney* <br> ☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - _____**

| In re: | CASE NO.: <br><br> CHAPTER: |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l)** <br> **(with supporting declarations)** <br> **(UNLAWFUL DETAINER)** |
| Debtor(s). | DATE: <br> TIME: <br> COURTROOM: |

**Movant**:

1.  **Hearing Location**:

    ☐ 255 East Temple Street, Los Angeles, CA 90012     ☐ 411 West Fourth Street, Santa Ana, CA 92701
    ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
    ☐ 3420 Twelfth Street, Riverside, CA 92501

2.  Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3.  To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☐  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: _____

_____
Printed name of law firm (if applicable)

_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
### (Unlawful Detainer)

**1. Movant is the:**

a. ☐ Owner of the Property
b. ☐ Authorized Agent of the owner of the Property
c. ☐ Other (*specify*):

**2. The Property at Issue (Property):**

Type of Property: ☐ Residential    ☐ Nonresidential

*Street Address*:
*Unit/Suite Number*:
*City, State, Zip Code*:

**3. Bankruptcy Case History:**

a. ☐ A voluntary    ☐ An involuntary    petition under chapter    ☐ 7 ☐ 11 ☐ 12 ☐ 13
was filed on (*date*):

b. ☐ An order to convert this case to chapter    ☐ 7 ☐ 11 ☐ 12 ☐ 13
was entered on (*date*):

c. ☐ A plan was confirmed on (*date*):

**4. Pursuant to 11.U.S.C. § 362(b)(22) and (23) there is no stay because (*check all that apply*):**

a. ☐ Movant commenced an eviction, unlawful detainer action or similar proceeding against the Debtor involving residential property in which the Debtor resides and:

(1) ☐ The Debtor has not filed and served on Movant the certification required under 11 U.S.C. § 362(l)(1).

(2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become due during the 30-day period after the filing of the petition.

(3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

(4) ☐ Movant filed and served an objection to the Debtor's certification.  A copy of the objection is attached as Exhibit _____.  A hearing on this objection is set for (*date*) _____.

**5. Grounds for Relief from Stay: (*check all that apply*)**

a. ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of the bankruptcy petition date, the Debtor had no right to continued occupancy of the premises, as follows:

(1) ☐ Movant caused a notice to quit to be served on the Debtor.

(2) ☐ An unlawful detainer proceeding was commenced on (*date*) _____.

(3) ☐ An unlawful detainer judgment was entered on (*date*) _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(4) ☐ Movant acquired title to the Property by foreclosure sale before the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

(5) ☐ Movant acquired title to the Property by foreclosure sale after the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(1) the Debtor's right to possession should be terminated because (*check all that apply*):

(1) ☐ The lease or other right of occupancy expired by its terms on (*date*) _____.

(2) ☐ The lease has matured, been rejected or deemed rejected by operation of law on (*date*) _____.

(3) ☐ Lease payments have not been made after the filing of the bankruptcy petition.

(4) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant filed and served upon the Debtor a certification that ☐ such an action was filed or
☐ that within the 30 days preceding the certification, the Debtor has endangered the subject Property or illegally allowed the use of controlled substances on the Property. A copy of Movant's certification is attached as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if any, is attached as Exhibit _____. A hearing on this objection is set for (*date*) _____.

(5) ☐ The bankruptcy case was filed in bad faith:

(A) ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

(B) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

(C) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

(D) ☐ There was a recent transfer of all or part ownership of, or other interest in the Property without the consent of the Movant or court approval.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

6. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor:

a. ☐ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other:

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                    Page 4                    **F 4001-1.RFS.UD.MOTION**

7.  **Evidence in Support of Motion:** (*Important Note: Declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)

    a.  The UNLAWFUL DETAINER DECLARATION on page 7.

    b.  ☐  Supplemental declaration(s).

    c.  ☐  Other (*specify*):


**Movant requests the following relief.**

1.  Relief from stay pursuant to:  ☐ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)

2.  ☐  Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to obtain possession of the Property.

3.  ☐  Confirmation that there is no stay in effect.

4.  ☐  The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition acts taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.  ☐  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.  ☐  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing of this motion:
    ☐  without further notice.
    ☐  upon recording of a copy of the order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8.  ☐  Relief from stay is granted under 11 U.S.C. § 362(d)(4), if the order granting this motion is recorded in compliance with state laws governing notices of interest or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than two years after the date of entry of such order, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and a hearing.

9.  ☐  The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐  without further notice.
    ☐  upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10.  ☐  The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

11.  ☐  The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

12. ☐ If relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable;

    a. ☐ Establishment of a deadline for assumption or rejection of the lease.

    b. ☐ Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

13. ☐ Other relief requested.

Date: _____

_____
Print name of law firm (*if applicable*)

_____
Print name of individual Movant or attorney for Movant (*if applicable*)

_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## UNLAWFUL DETAINER DECLARATION

I, (*name of declarant*) _____ , declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property because (*specify*):

    a.  ☐  I am the Movant and owner of the Property.

    b.  ☐  I manage the Property as the authorized agent for the Movant.

    c.  ☐  I am employed by Movant as (*title and capacity*):

    d.  ☐  Other (*specify*):

2.  a.  ☐  I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (see attached):

3.  The Property is:

    ☐ Residential   ☐ Nonresidential

    *Street Address*:
    *Unit/Suite Number*:
    *City, State, Zip Code*:

4.  Movant is the  ☐ legal owner of the Property, or  ☐ the owner's legally authorized agent.  A true and correct copy of the trustee's deed upon sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit _____.  A true and correct copy of the applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5.  The Debtor asserts a possessory interest in the Property based upon:

    (1)  ☐  a month-to-month tenancy

    (2)  ☐  a lease that is in default

    (3)  ☐  after a foreclosure sale that was held on (*date*): _____.

    (4)  ☐  other (*specify*):

6.  The Debtor failed to pay:

    a.  ☐  The monthly rent of $_____ beginning on (*date*): _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☐ Other obligations including:

    (1) ☐ Common area maintenance charges

    (2) ☐ Property taxes

    (3) ☐ Other obligations (*specify*):

7. Procedural status

a. ☐ The lease matured or was rejected on (*date*) _____:

    (1) ☐ by operation of law.

    (2) ☐ by order of the court.

b. ☐ Movant caused a notice to quit to be served upon the Debtor on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

c. ☐ Before the bankruptcy petition was filed:

    (1) ☐ Movant filed a complaint for unlawful detainer against the Debtor on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

    (2) ☐ Trial was held on (*date*) _____.

    (3) ☐ Trial was continued to (*date)* _____.

    (4) ☐ An unlawful detainer judgment against the Debtor was entered on the complaint for unlawful detainer on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

    (5) ☐ A writ of possession for the Property was issued on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

d. After the bankruptcy petition was filed:

    (1) ☐ The Debtor has not filed and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

    (2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

    (3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

    (4) ☐ The Debtor filed and served on the Movant the certification required under 11 U.S.C. § 362(d)(1).

        (A) ☐ Movant filed and served an objection a copy of which is attached as Exhibit _____. A hearing on this objection is set for (*date*) _____.

        (B) ☐ Movant has not filed and served an objection.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(5) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that ☐ such action was filed or ☐ that the Debtor has endangered the Property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property. A copy of Movant's certification is attached hereto as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if filed, is attached as Exhibit ___. A hearing on this objection is set for: _____.

(6) ☐ Regular lease payments have not been made after the bankruptcy petition was filed.

8. ☐ The Debtor does not have an interest in the Property that could be assumed or assigned under 11 U.S.C. § 365.

9. ☐ The Property is not necessary to an effective reorganization because it is:

a. ☐ Residential, and is not producing income for the Debtor.

b. ☐ Commercial, but no reorganization is reasonably in prospect.

c. ☐ No longer property of the estate.

d. ☐ Other (specify):


10. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (specify):


11. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page of facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property include:

(1) Case name: _____
Chapter: _____     Case number: _____
Date filed: _____          Date discharged: _____     Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(2) Case name: _____
Chapter: _____     Case number: _____
Date filed: _____          Date discharged: _____     Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 9                              F 4001-1.RFS.UD.MOTION

(3) Case name: _____

Chapter: _____   Case number: _____

Date filed: _____   Date discharged: _____   Date dismissed: _____

Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

12. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____   _____   _____

*Date*                      *Printed Name*                              *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                      Page 10                      **F 4001-1.RFS.UD.MOTION**

ANTHONY A. FRIEDMAN (State Bar No. 201955)
aaf@lnbyg.com
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Tanager Co., LLC


# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**JOHNNY CHEK,**<br><br>               **Debtor.** | Case No.: 2:25-bk-18980 WB<br><br>Chapter 13<br><br>**SUPPLEMENTAL DECLARATION OF KENNETH MILLMAN IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br><br><br>**<u>Hearing</u>**<br>**Date:  November 4, 2025**<br>**Time: 10:00 a.m.**<br>**Place: Courtroom 1375**<br>      **255 E. Temple Street**<br>    **Los Angeles, California 90012** |

### DELCARATION OF KENNETH MILLMAN

I, KENNETH MILLMAN, hereby declare:

1.      I am the manager of Tanager Co., LLC, the Movant herein ("Movant").   Unless otherwise stated, the following facts are within my personal knowledge.  If called to testify as a witness with respect to the statements set forth herein, I could and would competently testify thereto.   This Supplemental Declaration is submitted in further support of my declaration contained within in the *Notice Of Motion And Motion For Relief From The Automatic Stay Or For Order Confirming That The Automatic Stay Does Not Apply Under 11 U.S.C. § 362(l)* (the "Motion") to which this Supplemental Declaration is attached.

2.      On or about December 15, 2015, Movant, as Landlord, and Tak Ye International, Inc. ("Tak Ye"), as Tenant, entered into a written Standard Industrial/Commercial Single-Tenant Lease – Gross (as amended on February 10, 2020, May 15, 2020, and February 24, 2025, the "Lease") whereby Tak Ye leased the premises located at 3014 Tanager Ave., Commerce, California 90040 (the "Premises"). A true and correct copy of the Lease is attached hereto as **Exhibit "A"** and is incorporated herein by this reference.

3.      A review of the Lease provides that Tak Ye is the only party identified as the "Lessee" under the Lease.    Sain Chek is identified as a guarantor under the Lease and entered into a Guaranty of Lease, which is also attached to the Lease (see, **Exhibit "A"**).   As noted in the Guaranty of Lease, Johnny Chek, the Debtor herein the above referenced bankruptcy proceeding (the "Debtor"), was stricken from being a guarantor under the Lease.  Moreover, the Debtor never signed the Lease, the Guaranty of Lease, or any amendments to the Lease (see, **Exhibit "A"**).   All Lease documents were only signed by Kin Wa Chek, the chief executive officer of Tak Ye. Attached hereto as **Exhibit "E"** is a true and correct copy of Tak Ye's Statement of Information filed with the California Secretary of Statement providing that Kin Wa Tam is identified as the chief executive office, chief financial office and secretary and Kin Wa Check as the sole director. The Debtor is not identified as an officer or director of Tak Ye.

4.      After entering into the Lease, Tak Ye defaulted under the terms of the Lease failing, among other things, to pay the rent due under the Lease.

5.    As a result, on July 15, 2025, Movant filed a verified complaint for unlawful detainer (the "UD Complaint") against Tak Ye in the Los Angeles Superior Court, bearing case number 25STCV20894 (the "UD Action").    A true and correct copy of the UD Complaint is attached hereto as **Exhibit "C"** and is incorporated herein by this reference.

6.    On September 3, 2025, in the UD Action, the Court filed that certain Judgment – Unlawful Detainer (the "UD Judgment") awarding possession of the Premises to Movant.  A true and correct copy of the UD Judgment is attached hereto as **Exhibit "D"** and is incorporated herein by this reference.

7.    On September 5, 2025, in the UD Action, the Clerk of the Court signed a Writ of Possession Of Real Property (the "Writ").  A true and correct copy of the Writ is attached hereto as **Exhibit "F"** and is incorporated herein by this reference.

8.    On October 9, 2025 (the "Petition Date"), Debtor commenced this bankruptcy case by the filing of a voluntary petition under Chapter 13 of the Bankruptcy Code [Docket No. 1].   The Debtor's bankruptcy filing only contained the voluntary petition and a verification of the master mailing list only providing for 3 total creditors, including Movant.  A true and correct copy of the voluntary petition, mailing list and order to comply with Bankruptcy Rule 1007 and 3015(b) and notice of intent to dismiss case is attached hereto as **Exhibit "G"** and is incorporated herein by this reference.

9.    On October 10, 2025, I received a Claim of Right to Possession and Notice of Hearing The Debtor (the "Claim") wherein the Debtor misrepresents a right to possession of the Premises pursuant to a written rental agreement.  A true and correct copy of the Claim is attached hereto as **Exhibit "H"** and is incorporated herein by this reference.  As set forth in the Motion and this declaration, it is clear that Debtor never had any interest in the Lease or a right to possession of the Premises.  Further, I understand that the Claim was provided to the sheriff immediately after the Debtor filed his bankruptcy case demonstrating Debtor's bad faith efforts to interfere with and delay Movant's right to possession of the Premises which Movant is rightfully entitled to.

/ / /

/ / /

3

10.    As clearly based on the Motion and both declarations I have submitted in connection with the Motion, the Debtor has no right whatsoever to the Premises.  Accordingly, by way of the Motion, Movant seeks relief from the automatic stay to enforce its state law rights under the UD Judgment and Writ to regain possession of the Premises.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed on this __14___ day of October 2025 at Los Angeles, California.

_____
KENNETH MILLMAN

**EXHIBIT A**

# AIR COMMERCIAL REAL ESTATE ASSOCIATION
## STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE -- GROSS
### (DO NOT USE THIS FORM FOR MULTI-TENANT BUILDINGS)

**1.    Basic Provisions ("Basic Provisions").**

1.1    **Parties:** This Lease ("Lease"), dated for reference purposes only * December 15, 2015 ,
is made by and between    Tanager Co., LLC, a California Limited Liability Company

("**Lessor**")

and    Tak Ye International, Inc., a California Corporation

("**Lessee**"),

(collectively the "**Parties,**" or individually a "**Party**").

1.2    **Premises:** That certain real property, including all improvements therein or to be provided by Lessor under the terms of this Lease,
and commonly known as    3014 Tanager Avenue, Commerce ,
located in the County of    Los Angeles                , State of    California ,
and generally described as (describe briefly the nature of the property and, if applicable, the "**Project**", if the property is located within a Project)
    an approximately 17,875 square foot industrial building situated on approximately 32,234 square feet of land

("**Premises**").  (See also Paragraph 2)

1.3    **Term:** five (5)    years and    0    months ("**Original Term**") commencing    March 1, 2015
("**Commencement Date**") and ending    February 28, 2020                    ("**Expiration Date**").
(See also Paragraph 3)

1.4    **Early Possession:** If the Premises are available Lessee may have non-exclusive possession of the Premises commencing
February 16, 2015                            ("**Early Possession Date**").  (See also Paragraphs 3.2 and 3.3)

1.5    **Base Rent:** $ 10,000.00    per month ("**Base Rent**"), payable on the  first (1st)
day of each month commencing  April 1, 2015

. (See also Paragraph 4)

☒ If this box is checked, there are provisions in this Lease for the Base Rent to be adjusted. See Paragraph    51

1.6    **Base Rent and Other Monies Paid Upon Execution:**

(a)    **Base Rent:** $ 5,000.00            for the period  March 1, 2015 - March 31, 2015 (One-half of the
Base Rent for March 2015 has been abated.)

(b)    **Security Deposit:** $ 28,712.76 (existing)    ("**Security Deposit**").  (See also Paragraph 5)

(c)    **Association Fees:** $            for the period

(d)    **Other:** $            for

(e)    **Total Due Upon Execution of this Lease:** $ 5,000.00 .

1.7    **Agreed Use:**  warehousing and distribution of food related products.

(See also Paragraph 6)

1.8    **Insuring Party:** Lessor is the "**Insuring Party**".  The annual "**Base Premium**" is $ 2,002.20    (See also Paragraph 8)

1.9    **Real Estate Brokers:** (See also Paragraph 15 and 25)
(a) **Representation:** The following real estate brokers (the "**Brokers**") and brokerage relationships exist in this transaction (check
applicable boxes):

☐                            represents Lessor exclusively ("**Lessor's Broker**");

☐                            represents Lessee exclusively ("**Lessee's Broker**"); or

☐                            represents both Lessor and Lessee ("**Dual Agency**").

(b) **Payment to Brokers:** Upon execution and delivery of this Lease by both Parties, Lessor shall pay to the Brokers the brokerage
fee agreed to in a separate written agreement (or if there is no such agreement, the sum of            or            % of the total Base
Rent) for the brokerage services rendered by the Brokers.

1.10    **Guarantor.** The obligations of the Lessee under this Lease are to be guaranteed by    Sain Chek

("**Guarantor**").  (See also Paragraph 37)

1.11    **Attachments.** Attached hereto are the following, all of which constitute a part of this Lease:
☒ an Addendum consisting of Paragraphs    51    through    55    ;
☐ a plot plan depicting the Premises;
☐ a current set of the Rules and Regulations;
☐ a Work Letter;
☐ a energy disclosure addendum is attached;
☒ other (specify):  Guaranty of Lease

INITIALS

PAGE 1 OF 13

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

2.    **Premises.**

2.1    **Letting.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Lease. While the approximate square footage of the Premises may have been used in the marketing of the Premises for purposes of comparison, the Base Rent stated herein is NOT tied to square footage and is not subject to adjustment should the actual size be determined to be different. **Note: Lessee is advised to verify the actual size prior to executing this Lease.**

2.2    **Condition.** Lessor shall deliver the Premises to Lessee broom clean and free of debris on the Commencement Date or the Early Possession Date, whichever first occurs ("**Start Date**"), and, so long as the required service contracts described in Paragraph 7.1(b) below are obtained by Lessee and in effect within thirty days following the Start Date, warrants that the existing electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ("**HVAC**"), loading doors, sump pumps, if any, and all other such elements in the Premises, other than those constructed by Lessee, shall be in good operating condition on said date and that the surface and structural elements of the roof, bearing walls and foundation of any buildings on the Premises (the "**Building**") shall be free of material defects, and that the Unit does not contain hazardous levels of any mold or fungi defined as toxic under applicable state or federal law. If a non-compliance with said warranty exists as of the Start Date, or if one of such systems or elements should malfunction or fail within the appropriate warranty period, Lessor shall, as Lessor's sole obligation with respect to such matter, except as otherwise provided in this Lease, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, malfunction or failure, rectify same at Lessor's expense. The warranty periods shall be as follows: (i) 6 months as to the HVAC systems, and (ii) 30 days as to the remaining systems and other elements of the Building. If Lessee does not give Lessor the required notice within the appropriate warranty period, correction of any such non-compliance, malfunction or failure shall be the obligation of Lessee at Lessee's sole cost and expense, except for the roof, foundations, and bearing walls which are handled as provided in paragraph 7. Lessor also warrants, that unless otherwise specified in writing, Lessor is unaware of (i) any recorded Notices of Default affecting the Premise; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

2.3    **Compliance.** Lessor warrants that to the best of its knowledge the improvements on the Premises comply with the building codes, applicable laws, covenants or restrictions of record, regulations, and ordinances ("**Applicable Requirements**") that were in effect at the time that each improvement, or portion thereof, was constructed. Said warranty does not apply to the use to which Lessee will put the Premises, modifications which may be required by the Americans with Disabilities Act or any similar laws as a result of Lessee's use (see Paragraph 50), or to any Alterations or Utility Installations (as defined in Paragraph 7.3(a)) made or to be made by Lessee. **NOTE: Lessee is responsible for determining whether or not the Applicable Requirements, and especially the zoning, are appropriate for Lessee's intended use, and acknowledges that past uses of the Premises may no longer be allowed.** If the Premises do not comply with said warranty, Lessor shall, except as otherwise provided, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, rectify the same at Lessor's expense. If Lessee does not give Lessor written notice of a non-compliance with this warranty within 6 months following the Start Date, correction of that non-compliance shall be the obligation of Lessee at Lessee's sole cost and expense. If the Applicable Requirements are hereafter changed so as to require during the term of this Lease the construction of an addition to or an alteration of the Premises and/or Building, the remediation of any Hazardous Substance, or the reinforcement or other physical modification of the Unit, Premises and/or Building ("**Capital Expenditure**"), Lessor and Lessee shall allocate the cost of such work as follows:

(a) Subject to Paragraph 2.3(c) below, if such Capital Expenditures are required as a result of the specific and unique use of the Premises by Lessee as compared with uses by tenants in general, Lessee shall be fully responsible for the cost thereof, provided, however that if such Capital Expenditure is required during the last 2 years of this Lease and the cost thereof exceeds 6 months' Base Rent, Lessee may instead terminate this Lease unless Lessor notifies Lessee, in writing, within 10 days after receipt of Lessee's termination notice that Lessor has elected to pay the difference between the actual cost thereof and an amount equal to 6 months' Base Rent. If Lessee elects termination, Lessee shall immediately cease the use of the Premises which requires such Capital Expenditure and deliver to Lessor written notice specifying a termination date at least 90 days thereafter. Such termination date shall, however, in no event be earlier than the last day that Lessee could legally utilize the Premises without commencing such Capital Expenditure.

(b) If such Capital Expenditure is not the result of the specific and unique use of the Premises by Lessee (such as, governmentally mandated seismic modifications), then Lessor shall pay for such Capital Expenditure and Lessee shall only be obligated to pay, each month during the remainder of the term of this Lease or any extension thereof, on the date that on which the Base Rent is due, an amount equal to 1/144th of the portion of such costs reasonably attributable to the Premises. Lessee shall pay Interest on the balance but may prepay its obligation at any time. If, however, such Capital Expenditure is required during the last 2 years of this Lease or if Lessor reasonably determines that it is not economically feasible to pay its share thereof, Lessor shall have the option to terminate this Lease upon 90 days prior written notice to Lessee unless Lessee notifies Lessor, in writing, within 10 days after receipt of Lessor's termination notice that Lessee will pay for such Capital Expenditure. If Lessor does not elect to terminate, and fails to tender its share of any such Capital Expenditure, Lessee may advance such funds and deduct same, with Interest, from Rent until Lessor's share of such costs have been fully paid. If Lessee is unable to finance Lessor's share, or if the balance of the Rent due and payable for the remainder of this Lease is not sufficient to fully reimburse Lessee on an offset basis, Lessee shall have the right to terminate this Lease upon 30 days written notice to Lessor.

(c) Notwithstanding the above, the provisions concerning Capital Expenditures are intended to apply only to non-voluntary, unexpected, and new Applicable Requirements. If the Capital Expenditures are instead triggered by Lessee as a result of an actual or proposed change in use, change in intensity of use, or modification to the Premises then, and in that event, Lessee shall either: (i) immediately cease such changed use or intensity of use and/or take such other steps as may be necessary to eliminate the requirement for such Capital Expenditure, or (ii) complete such Capital Expenditure at its own expense. Lessee shall not, however, have any right to terminate this Lease.

2.4    **Acknowledgements.** Lessee acknowledges that: (a) it has been given an opportunity to inspect and measure the Premises, (b) it has been advised by Lessor and/or Brokers to satisfy itself with respect to the size and condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Lessee's intended use, (c) Lessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises, (d) it is not relying on any representation as to the size of the Premises made by Brokers or Lessor, (e) the square footage of the Premises was not material to Lessee's decision to lease the Premises and pay the Rent stated herein, and (f) neither Lessor, Lessor's agents, nor Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this Lease. In addition, Lessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Lessee's ability to honor the Lease or suitability to occupy the Premises, and (ii) it is Lessor's sole responsibility to investigate the financial capability and/or suitability of all proposed tenants.

2.5    **Lessee as Prior Owner/Occupant.** The warranties made by Lessor in Paragraph 2 shall be of no force or effect if immediately prior to the Start Date Lessee was the owner or occupant of the Premises. In such event, Lessee shall be responsible for any necessary corrective work.

3.    **Term.**

3.1    **Term.** The Commencement Date, Expiration Date and Original Term of this Lease are as specified in Paragraph 1.3.

3.2    **Early Possession.** Any provision herein granting Lessee Early Possession of the Premises is subject to and conditioned upon the Premises being available for such possession prior to the Commencement Date. Any grant of Early Possession only conveys a non-exclusive right to occupy the Premises. If Lessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such Early Possession. All other terms of this Lease (including but not limited to the obligations to pay Real Property Taxes and insurance premiums and to maintain the Premises) shall be in effect during such period. Any such Early Possession shall not affect the Expiration Date.

3.3    **Delay In Possession.** Lessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises to Lessee by the Commencement Date. If, despite said efforts, Lessor is unable to deliver possession by such date, Lessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or change the Expiration Date. Lessee shall not, however, be obligated to pay Rent or perform its other obligations until Lessor delivers possession of the Premises and any period of rent abatement that Lessee would otherwise have enjoyed shall run from the date of delivery of possession and continue for a period equal to what Lessee would otherwise have enjoyed under the terms hereof, but minus any days of delay caused by the acts or omissions of Lessee. If possession is not delivered within 60 days after the Commencement Date, as the same may be extended under the terms of any Work Letter executed by Parties, Lessee may, at its option, by notice in writing within 10 days after the end of such 60 day period, cancel this Lease, in which event the Parties shall be discharged from all obligations hereunder. If such written notice is not received by Lessor within said 10 day period, Lessee's right to cancel shall terminate. If possession of the Premises is not delivered within 120 days after the Commencement Date, this Lease shall terminate unless other agreements are reached between Lessor and Lessee. in writing.

3.4    **Lessee Compliance.** Lessor shall not be required to deliver possession of the Premises to Lessee until Lessee complies with its obligation to provide evidence of insurance (Paragraph 8.5). Pending delivery of such evidence, Lessee shall be required to perform all of its obligations under this Lease from and after the Start Date, including the payment of Rent, notwithstanding Lessor's election to withhold possession pending receipt of such evidence of insurance. Further, if Lessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Lessor may elect to withhold possession until such conditions are satisfied.

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

4.      **Rent.**

4.1.      **Rent Defined.**   All monetary obligations of Lessee to Lessor under the terms of this Lease (except for the Security Deposit) are deemed to be rent (**"Rent"**).

4.2      **Payment.**   .   Lessee shall cause payment of Rent to be received by Lessor in lawful money of the United States, without offset or deduction (except as specifically permitted in this Lease), on or before the day on which it is due. All monetary amounts shall be rounded to the nearest whole dollar.  In the event that any invoice prepared by Lessor is inaccurate such inaccuracy shall not constitute a waiver and Lessee shall be obligated to pay the amount set forth in this Lease.   Rent for any period during the term hereof which is for less than one full calendar month shall be prorated based upon the actual number of days of said month.  Payment of Rent shall be made to Lessor at its address stated herein or to such other persons or place as Lessor may from time to time designate in writing.  Acceptance of a payment which is less than the amount then due shall not be a waiver of Lessor's rights to the balance of such Rent, regardless of Lessor's endorsement of any check so stating.  In the event that any check, draft, or other instrument of payment given by Lessee to Lessor is dishonored for any reason, Lessee agrees to pay to Lessor the sum of $25 in addition to any Late Charge and Lessor, at its option, may require all future payments to be made by Lessee to be by cashier's check.  Payments will be applied first to accrued late charges and attorney's fees, second to accrued interest, then to Base Rent, Insurance and Real Property Taxes, and any remaining amount to any other outstanding charges or costs.

4.3      **Association Fees.**   In addition to the Base Rent, Lessee shall pay to Lessor each month an amount equal to any owner's association or condominium fees levied or assessed against the Premises.  Said monies shall be paid at the same time and in the same manner as the Base Rent.

5.      **Security Deposit.**   Lessee shall deposit with Lessor upon  execution hereof the Security Deposit as security for Lessee's faithful performance of its obligations under this Lease.  If Lessee fails to pay Rent, or otherwise Defaults under this Lease, Lessor may use, apply or retain all or any portion of said Security Deposit for the payment of any amount already due Lessor, for Rents which will be due in the future, and/ or to reimburse or compensate Lessor for any liability, expense, loss or damage which Lessor may suffer or incur by reason thereof.  If Lessor uses or applies all or any portion of the Security Deposit, Lessee shall within 10 days after written request therefor deposit monies with Lessor sufficient to restore said Security Deposit to the full amount required by this Lease. If the Base Rent increases during the term of this Lease, Lessee shall, upon written request from Lessor, deposit additional monies with Lessor so that the total amount of the Security Deposit shall at all times bear the same proportion to the increased Base Rent as the initial Security Deposit bore to the initial Base Rent.  Should the Agreed Use be amended to accommodate a material change in the business of Lessee or to accommodate a sublessee or assignee, Lessor shall have the right to increase the Security Deposit to the extent necessary, in Lessor's reasonable judgment, to account for any increased wear and tear that the Premises may suffer as a result thereof.  If a change in control of Lessee occurs during this Lease and following such change the financial condition of Lessee is, in Lessor's reasonable judgment, significantly reduced, Lessee shall deposit such additional monies with Lessor as shall be sufficient to cause the Security Deposit to be at a commercially reasonable level based on such change in financial condition.  Lessor shall not be required to keep the Security Deposit separate from its general accounts. Within 90 days after the expiration or termination of this Lease, Lessor shall return that portion of the Security Deposit not used or applied by Lessee to Lessor. No part of the Security Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any monies to be paid by Lessee under this Lease.

6.      **Use.**

6.1      **Use.**   Lessee shall use and occupy the Premises only for the Agreed Use, or any other legal use which is reasonably comparable thereto, and for no other purpose.  Lessee shall not use or permit the use of the Premises in a manner that is unlawful, creates damage, waste or a nuisance, or that disturbs occupants of or causes damage to neighboring premises or properties. Other than guide, signal and seeing eye dogs, Lessee shall not keep or allow in the Premises any pets, animals, birds, fish, or reptiles. Lessor shall not unreasonably withhold or delay its consent to any written request for a modification of the Agreed Use, so long as the same will not impair the structural integrity of the improvements on the Premises or the mechanical or electrical systems therein, and/or is not significantly more burdensome to the Premises.  If Lessor elects to withhold consent, Lessor shall within 7 days after such request give written notification of same, which notice shall include an explanation of Lessor's objections to the change in the Agreed Use.

6.2      **Hazardous Substances.**

(a) **Reportable Uses Require Consent.**  The term **"Hazardous Substance"** as used in this Lease shall mean any product, substance, or waste whose presence, use, manufacture, disposal, transportation, or release, either by itself or in combination with other materials expected to be on the Premises, is either: (i) potentially injurious to the public health, safety or welfare, the environment or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for potential liability of Lessor to any governmental agency or third party under any applicable statute or common law theory.  Hazardous Substances shall include, but not be limited to, hydrocarbons, petroleum, gasoline, and/or crude oil or any products, by-products or fractions thereof.  Lessee shall not engage in any activity in or on the Premises which constitutes a Reportable Use of Hazardous Substances without the express prior written consent of Lessor and timely compliance (at Lessee's expense) with all Applicable Requirements.  **"Reportable Use"** shall mean (i) the installation or use of any above or below ground storage tank, (ii) the generation, possession, storage, use, transportation, or disposal of a Hazardous Substance that requires a permit from, or with respect to which a report, notice, registration or business plan is required to be filed with, any governmental authority, and/or (iii) the presence at the Premises of a Hazardous Substance with respect to which any Applicable Requirements requires that a notice be given to persons entering or occupying the Premises or neighboring properties.  Notwithstanding the foregoing,  Lessee may use any ordinary and customary materials reasonably required to be used in the normal course of the Agreed Use, ordinary office supplies (copier toner, liquid paper, glue, etc.) and common household cleaning materials, so long as such use is in compliance with all Applicable Requirements, is not a Reportable Use, and does not expose the Premises or neighboring property to any meaningful risk of contamination or damage or expose Lessor to any liability therefor.  In addition, Lessor may condition its consent to any Reportable Use upon receiving such additional assurances as Lessor reasonably deems necessary to protect itself, the public, the Premises and/or the environment against damage, contamination, injury and/or liability, including, but not limited to, the installation (and removal on or before Lease expiration or termination) of protective modifications (such as concrete encasements) and/or increasing the Security Deposit.

(b) **Duty to Inform Lessor.**  If Lessee knows, or has reasonable cause to believe, that a Hazardous Substance has come to be located in, on, under or about the Premises, other than as previously consented to by Lessor, Lessee shall immediately give written notice of such fact to Lessor, and provide Lessor with a copy of any report, notice, claim or other documentation which it has concerning the presence of such Hazardous Substance.

(c) **Lessee Remediation.**  Lessee shall not cause or permit any Hazardous Substance to be spilled or released in, on, under, or about the Premises (including through the plumbing or sanitary sewer system) and shall promptly, at Lessee's expense, comply with all Applicable Requirements and take all investigatory and/or remedial action reasonably recommended, whether or not formally ordered or required, for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises or neighboring properties, that was caused or materially contributed to by Lessee, or pertaining to or involving any Hazardous Substance brought onto the Premises during the term of this Lease, by or for Lessee, or any third party.

(d) **Lessee Indemnification.**  Lessee shall indemnify,  defend and hold Lessor, its agents, employees, lenders and ground lessor, if any, harmless from and against any and all loss of rents and/or damages, liabilities, judgments, claims, expenses, penalties, and attorneys' and consultants' fees arising out of or involving any Hazardous Substance brought onto the Premises by or for Lessee, or any third party (provided, however, that Lessee shall have no liability under this Lease with respect to underground migration of any Hazardous Substance under the Premises from adjacent properties not caused or contributed to by Lessee).  Lessee's obligations shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or suffered by Lessee, and the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease.  **No termination, cancellation or release agreement entered into by Lessor and Lessee shall release Lessee from its obligations under this Lease with respect to Hazardous Substances, unless specifically so agreed by Lessor in writing at the time of such agreement.**

(e) **Lessor Indemnification.**  Except as otherwise provided in paragraph 8.7, Lessor and its successors and assigns shall indemnify, defend, reimburse and hold Lessee, its employees and lenders, harmless from and against any and all environmental damages, including the cost of remediation,  which result from Hazardous Substances which existed on the Premises prior to Lessee's occupancy or which are caused by the gross negligence or willful misconduct of Lessor, its agents or employees.  Lessor's obligations, as and when required by the Applicable Requirements, shall include, but not be limited to, the cost of investigation, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease.

(f) **Investigations and Remediations.**  Lessor shall retain the responsibility and pay for any investigations or remediation measures required by governmental entities having jurisdiction with respect to the existence of Hazardous Substances on the Premises prior to Lessee's occupancy, unless such remediation measure is required as a result of Lessee's use (including "Alterations", as defined in paragraph 7.3(a) below) of the Premises, in which event Lessee shall be responsible for such payment.  Lessee shall cooperate fully in any such activities at the request of Lessor, including allowing Lessor and Lessor's agents to have reasonable access to the Premises at reasonable times in order to carry out Lessor's investigative and remedial responsibilities.

(g) **Lessor Termination Option.**  If a Hazardous Substance Condition (see Paragraph 9.1(e)) occurs during the term of this Lease, unless Lessee is legally responsible therefor (in which case Lessee shall make the investigation and remediation thereof required by the Applicable

**INITIALS**

**INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                                          FORM STG-20-07/14E

Requirements and this Lease shall continue notwithstanding same unless, subject to the provisions of Paragraph 6.2(d) and Paragraph 13), Lessor may, at Lessor's option, either (i) investigate and remediate such Hazardous Substance Condition, if required, as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (ii) if the estimated cost to remediate such condition exceeds 12 times the then monthly Base Rent or $100,000, whichever is greater, give written notice to Lessee, within 30 days after receipt by Lessor of knowledge of the occurrence of such Hazardous Substance Condition, of Lessor's desire to terminate this Lease as of the date 60 days following the date of such notice.  In the event Lessor elects to give a termination notice, Lessee may, within 10 days thereafter, give written notice to Lessor of Lessee's commitment to pay the amount by which the cost of the remediation of such Hazardous Substance Condition exceeds an amount equal to 12 times the then monthly Base Rent or $100,000, whichever is greater.  Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days following such commitment.  In such event, this Lease shall continue in full force and effect, and Lessor shall proceed to make such remediation as soon as reasonably possible after the required funds are available.  If Lessee does not give such notice and provide the required funds or assurance thereof within the time provided, this Lease shall terminate as of the date specified in Lessor's notice of termination.

    6.3    **Lessee's Compliance with Applicable Requirements.**  Except as otherwise provided in this Lease, Lessee shall, at Lessee's sole expense, fully, diligently and in a timely manner, materially comply with all Applicable Requirements, the requirements of any applicable fire insurance underwriter or rating bureau, and the recommendations of Lessor's engineers and/or consultants which relate in any manner to the such Requirements, without regard to whether such Requirements are now in effect or become effective after the Start Date.  Lessee shall, within 10 days after receipt of Lessor's written request, provide Lessor with copies of all permits and other documents, and other information evidencing Lessee's compliance with any Applicable Requirements specified by Lessor, and shall immediately upon receipt, notify Lessor in writing (with copies of any documents involved) of any threatened or actual claim, notice, citation, warning, complaint or report pertaining to or involving the failure of Lessee or the Premises to comply with any Applicable Requirements. Likewise, Lessee shall immediately give written notice to Lessor of: (i) any water damage to the Premises and any suspected seepage, pooling, dampness or other condition conducive to the production of mold; or (ii) any mustiness or other odors that might indicate the presence of mold in the Premises.  In addition, Lessee shall provide Lessor with copies of its business license, certificate of occupancy and/or any similar document within 10 days of the receipt of a written request therefor.

    6.4    **Inspection; Compliance.**  Lessor and Lessor's **"Lender"** (as defined in Paragraph 30) and consultants shall have the right to enter into Premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable notice, for the purpose of inspecting the condition of the Premises and for verifying compliance by Lessee with this Lease.  The cost of any such inspections shall be paid by Lessor, unless a violation of Applicable Requirements, or a Hazardous Substance Condition (see paragraph 9.1) is found to exist or be imminent, or the inspection is requested or ordered by a governmental authority.  In such case, Lessee shall upon request reimburse Lessor for the cost of such inspection, so long as such inspection is reasonably related to the violation or contamination.  In addition, Lessee shall provide copies of all relevant material safety data sheets (**MSDS**) to Lessor within 10 days of the receipt of a written request therefor.

7.    **Maintenance; Repairs; Utility Installations; Trade Fixtures and Alterations.**

    7.1    **Lessee's Obligations.**

    (a) **In General.**  Subject to the provisions of Paragraph 2.2 (Condition), 2.3 (Compliance), 6.3 (Lessee's Compliance with Applicable Requirements), 7.2 (Lessor's Obligations), 9 (Damage or Destruction), and 14 (Condemnation), Lessee shall, at Lessee's sole expense, keep the Premises, Utility Installations (intended for Lessee's exclusive use, no matter where located), and Alterations in good order, condition and repair (whether or not the portion of the Premises requiring repairs, or the means of repairing the same, are reasonably or readily accessible to Lessee, and whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of such portion of the Premises), including, but not limited to, all equipment or facilities, such as plumbing, HVAC equipment, electrical, lighting facilities, boilers, pressure vessels, fire protection system, fixtures, walls (interior and exterior), ceilings, floors, windows, doors, plate glass, skylights, landscaping, driveways, parking lots, fences, retaining walls, signs, sidewalks and parkways located in, on, or adjacent to the Premises. Lessee is also responsible for keeping the roof and roof drainage clean and free of debris. Lessor shall keep the surface and structural elements of the roof, foundations, and bearing walls in good repair (see paragraph 7.2). Lessee, in keeping the Premises in good order, condition and repair, shall exercise and perform good maintenance practices, specifically including the procurement and maintenance of the service contracts required by Paragraph 7.1(b) below. Lessee's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all improvements thereon or a part thereof in good order, condition and state of repair.  Lessee shall, during the term of this Lease, keep the exterior appearance of the Building in a first-class condition (including, e.g. graffiti removal) consistent with the exterior appearance of other similar facilities of comparable age and size in the vicinity, including, when necessary, the exterior repainting of the Building.

    (b) **Service Contracts.**  Lessee shall, at Lessee's sole expense, procure and maintain contracts, with copies to Lessor, in customary form and substance for, and with contractors specializing and experienced in the maintenance of the following equipment and improvements, if any, if and when installed on the Premises:  (i) HVAC equipment, (ii) boiler, and pressure vessels, (iii) fire extinguishing systems, including fire alarm and/or smoke detection, (iv) landscaping and irrigation systems, and (v) clarifiers.  However, Lessor reserves the right, upon notice to Lessee, to procure and maintain any or all of such service contracts, and Lessee shall reimburse Lessor, upon demand, for the cost thereof.

    (c) **Failure to Perform.**  If Lessee fails to perform Lessee's obligations under this Paragraph 7.1, Lessor may enter upon the Premises after 10 days' prior written notice to Lessee (except in the case of an emergency, in which case no notice shall be required), perform such obligations on Lessee's behalf, and put the Premises in good order, condition and repair, and Lessee shall promptly pay to Lessor a sum equal to 115% of the cost thereof.

    (d) **Replacement.** Subject to Lessee's indemnification of Lessor as set forth in Paragraph 8.7 below, and without relieving Lessee of liability resulting from Lessee's failure to exercise and perform good maintenance practices, if an item described in Paragraph 7.1(b) cannot be repaired other than at a cost which is in excess of 50% of the cost of replacing such item, then such item shall be replaced by Lessor, and the cost thereof shall be prorated between the Parties and Lessee shall only be obligated to pay, each month during the remainder of the term of this Lease, on the date on which Base Rent is due, an amount equal to the product of multiplying the cost of such replacement by a fraction, the numerator of which is one, and the denominator of which is 144 (ie. 1/144th of the cost per month).  Lessee shall pay interest on the unamortized balance but may prepay its obligation at any time.

    7.2    **Lessor's Obligations.**  Subject to the provisions of Paragraphs 2.2 (Condition), 2.3 (Compliance), 9 (Damage or Destruction) and 14 (Condemnation), it is intended by the Parties hereto that Lessor have no obligation, in any manner whatsoever, to repair and maintain the Premises, or the equipment therein, all of which obligations are intended to be that of the Lessee, except for the surface and structural elements of the roof, foundations and bearing walls, the repair of which shall be the responsibility of Lessor upon receipt of written notice that such a repair is necessary.  It is the intention of the Parties that the terms of this Lease govern the respective obligations of the Parties as to maintenance and repair of the Premises, and they expressly waive the benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease.

    7.3    **Utility Installations; Trade Fixtures; Alterations.**

    (a) **Definitions.**  The term **"Utility Installations"** refers to all floor and window coverings, air and/or vacuum lines, power panels, electrical distribution, security and fire protection systems, communication cabling, lighting fixtures, HVAC equipment, plumbing, and fencing in or on the Premises.  The term **"Trade Fixtures"** shall mean Lessee's machinery and equipment that can be removed without doing material damage to the Premises.  The term **"Alterations"** shall mean any modification of the improvements, other than Utility Installations or Trade Fixtures, whether by addition or deletion.  **"Lessee Owned Alterations and/or Utility Installations"** are defined as Alterations and/or Utility Installations made by Lessee that are not yet owned by Lessor pursuant to Paragraph 7.4(a).

    (b) **Consent.**  Lessee shall not make any Alterations or Utility Installations to the Premises without Lessor's prior written consent. Lessee may, however, make non-structural Alterations or Utility Installations to the interior of the Premises (excluding the roof) without such consent but upon notice to Lessor, as long as they are not visible from the outside, do not involve puncturing, relocating or removing the roof or any existing walls, will not affect the electrical, plumbing, HVAC, and/or life safety systems, and the cumulative cost thereof during this Lease as extended does not exceed a sum equal to 3 month's Base Rent in the aggregate or a sum equal to one month's Base Rent in any one year.  Notwithstanding the foregoing, Lessee shall not make or permit any roof penetrations and/or install anything on the roof without the prior written approval of Lessor.  Lessor may, as a precondition to granting such approval, require Lessee to utilize a contractor chosen and/or approved by Lessor.  Any Alterations or Utility Installations that Lessee shall desire to make and which require the consent of the Lessor shall be presented to Lessor in written form with detailed plans.  Consent shall be deemed conditioned upon Lessee's: (i) acquiring all applicable governmental permits, (ii) furnishing Lessor with copies of both the permits and the plans and specifications prior to commencement of the work, and (iii) compliance with all conditions of said permits and other Applicable Requirements in a prompt and expeditious manner.  Any Alterations or Utility Installations shall be performed in a workmanlike manner with good and sufficient materials.  Lessee shall promptly upon completion furnish Lessor with as-built plans and specifications.  For work which costs an amount in excess of one month's Base Rent, Lessor may condition its consent upon Lessee providing a lien and completion bond in an amount equal to 150% of the estimated cost of such Alteration or Utility Installation and/or upon Lessee's posting an additional Security Deposit with Lessor.

    (c) **Liens; Bonds.**  Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use on the Premises, which claims are or may be secured by any mechanic's or materialmen's lien against the Premises or any interest therein.  Lessee shall give Lessor not less than 10 days notice prior to the commencement of any work in, on, or about the Premises, and Lessor shall have the right to post notices of non-responsibility.  If Lessee shall contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense defend and protect itself, Lessor and the Premises against the same and shall pay and satisfy any such adverse judgment that

INITIALS                                                       INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                             FORM STG-20-07/14E

may be rendered thereon before the enforcement thereof may require Lessor to furnish a surety bond in an amount equal to 150% of the amount of such contested lien, claim or demand; indemnifying Lessor against liability for the same.  If Lessor elects to participate in any such action, Lessee shall pay Lessor's attorneys' fees and costs.

7.4    **Ownership; Removal; Surrender; and Restoration.**

(a) **Ownership.**  Subject to Lessor's right to require removal or elect ownership as hereinafter provided, all Alterations and Utility Installations made by Lessee shall be the property of Lessee, but considered a part of the Premises.  Lessor may, at any time, elect in writing to be the owner of all or any specified part of the Lessee Owned Alterations and Utility Installations.  Unless otherwise instructed per paragraph 7.4(b) hereof, all Lessee Owned Alterations and Utility Installations shall, at the expiration or termination of this Lease, become the property of Lessor and be surrendered by Lessee with the Premises.

(b) **Removal.**  By delivery to Lessee of written notice from Lessor not earlier than 90 and not later than 30 days prior to the end of the term of this Lease, Lessor may require that any or all Lessee Owned Alterations or Utility Installations be removed by the expiration or termination of this Lease.  Lessor may require the removal at any time of all or any part of any Lessee Owned Alterations or Utility Installations made without the required consent.

(c) **Surrender; Restoration.**  Lessee shall surrender the Premises by the Expiration Date or any earlier termination date, with all of the improvements, parts and surfaces thereof broom clean and free of debris, and in good operating order, condition and state of repair, ordinary wear and tear excepted.  "Ordinary wear and tear" shall not include any damage or deterioration that would have been prevented by good maintenance practice.  Notwithstanding the foregoing, if this Lease is for 12 months or less, then Lessee shall surrender the Premises in the same condition as delivered to Lessee on the Start Date with NO allowance for ordinary wear and tear.  Lessee shall repair any damage occasioned by the installation, maintenance or removal of Trade Fixtures, Lessee owned Alterations and/or Utility Installations, furnishings, and equipment as well as the removal of any storage tank installed by or for Lessee.  Lessee shall remove from the Premises any and all Hazardous Substances brought onto the Premises by or for Lessee, or any third party (except Hazardous Substances which were deposited via underground migration from areas outside of the Premises) to the level specified in Applicable Requirements.  Trade Fixtures shall remain the property of Lessee and shall be removed by Lessee.  Any personal property of Lessee not removed on or before the Expiration Date or any earlier termination date shall be deemed to have been abandoned by Lessee and may be disposed of or retained by Lessor as Lessor may desire.  The failure by Lessee to timely vacate the Premises pursuant to this Paragraph 7.4(c) without the express written consent of Lessor shall constitute a holdover under the provisions of Paragraph 26 below.

8.    **Insurance; Indemnity.**

8.1    **Payment of Premium Increases.**

(a) Lessee shall pay to Lessor any insurance cost increase ("**Insurance Cost Increase**") occurring during the term of this Lease.  Insurance Cost Increase is defined as any increase in the actual cost of the insurance required under Paragraph 8.2(b), 8.3(a) and 8.3(b), over and above the Base Premium as hereinafter defined calculated on an annual basis.  Insurance Cost Increase shall include but not be limited to increases resulting from the nature of Lessee's occupancy, any act or omission of Lessee, requirements of the holder of mortgage or deed of trust covering the Premises, increased valuation of the Premises and/or a premium rate increase. The parties are encouraged to fill in the Base Premium in paragraph 1.8 with a reasonable premium for the Required Insurance based on the Agreed Use of the Premises. If the parties fail to insert a dollar amount in Paragraph 1.8, then the Base Premium shall be the lowest annual premium reasonably obtainable for the Required Insurance as of the commencement of the Original Term for the Agreed Use of the Premises. In no event, however, shall Lessee be responsible for any portion of the increase in the premium cost attributable to liability insurance carried by Lessor under Paragraph 8.2(b) in excess of $2,000,000 per occurrence.

(b) Lessee shall pay any such Insurance Cost Increase to Lessor within 30 days after receipt by Lessee of a copy of the premium statement or other reasonable evidence of the amount due. If the insurance policies maintained hereunder cover other property besides the Premises, Lessor shall also deliver to Lessee a statement of the amount of such Insurance Cost Increase attributable only to the Premises showing in reasonable detail the manner in which such amount was computed. Premiums for policy periods commencing prior to, or extending beyond the term of this Lease, shall be prorated to correspond to the term of this Lease.

8.2    **Liability Insurance.**

(a) **Carried by Lessee.**  Lessee shall obtain and keep in force a Commercial General Liability policy of insurance protecting Lessee and Lessor as an additional insured against claims for bodily injury, personal injury and property damage based upon or arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto.  Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $1,000,000 per occurrence with an annual aggregate of not less than $2,000,000. Lessee shall add Lessor as an additional insured by means of an endorsement at least as broad as the Insurance Service Organization's "Additional Insured-Managers or Lessors of Premises" Endorsement. The policy shall not contain any intra-insured exclusions as between insured persons or organizations, but shall include coverage for liability assumed under this Lease as an "**insured contract**" for the performance of Lessee's indemnity obligations under this Lease.  The limits of said insurance shall not, however, limit the liability of Lessee nor relieve Lessee of any obligation hereunder.  Lessee shall provide an endorsement on its liability policy(ies) which provides that its insurance shall be primary to and not contributory with any similar insurance carried by Lessor, whose insurance shall be considered excess insurance only.

(b) **Carried by Lessor.**  Lessor shall maintain liability insurance as described in Paragraph 8.2(a), in addition to, and not in lieu of, the insurance required to be maintained by Lessee.  Lessee shall not be named as an additional insured therein.

8.3    **Property Insurance - Building, Improvements and Rental Value.**

(a) **Building and Improvements.**  The Insuring Party shall obtain and keep in force a policy or policies in the name of Lessor, with loss payable to Lessor, any ground-lessor, and to any Lender insuring loss or damage to the Premises. The amount of such insurance shall be equal to the full insurable replacement cost of the Premises, as the same shall exist from time to time, or the amount required by any Lender, but in no event more than the commercially reasonable and available insurable value thereof. Lessee Owned Alterations and Utility Installations, Trade Fixtures, and Lessee's personal property shall be insured by Lessee not by Lessor.  If the coverage is available and commercially appropriate, such policy or policies shall insure against all risks of direct physical loss or damage (except the perils of flood and/or earthquake unless required by a Lender or included in the Base Premium), including coverage for debris removal and the enforcement of any Applicable Requirements requiring the upgrading, demolition, reconstruction or replacement of any portion of the Premises as the result of a covered loss.  Said policy or policies shall also contain an agreed valuation provision in lieu of any coinsurance clause, waiver of subrogation, and inflation guard protection causing an increase in the annual property insurance coverage amount by a factor of not less than the adjusted U.S. Department of Labor Consumer Price Index for All Urban Consumers for the city nearest to where the Premises are located.  If such insurance coverage has a deductible clause, the deductible amount shall not exceed $5,000 per occurrence, and Lessee shall be liable for such deductible amount in the event of an Insured Loss.

(b) **Rental Value.**  The Insuring Party shall obtain and keep in force a policy or policies in the name of Lessor with loss payable to Lessor and any Lender, insuring the loss of the full Rent for one year with an extended period of indemnity for an additional 180 days ("**Rental Value insurance**").  Said insurance shall contain an agreed valuation provision in lieu of any coinsurance clause, and the amount of coverage shall be adjusted annually to reflect the projected Rent otherwise payable by Lessee, for the next 12 month period.  Lessee shall be liable for any deductible amount in the event of such loss.

(c) **Adjacent Premises.**  If the Premises are part of a larger building, or of a group of buildings owned by Lessor which are adjacent to the Premises, the Lessee shall pay for any increase in the premiums for the property insurance of such building or buildings if said increase is caused by Lessee's acts, omissions, use or occupancy of the Premises.

8.4    **Lessee's Property; Business Interruption Insurance; Worker's Compensation Insurance.**

(a) **Property Damage.**  Lessee shall obtain and maintain insurance coverage on all of Lessee's personal property, Trade Fixtures, and Lessee Owned Alterations and Utility Installations.  Such insurance shall be full replacement cost coverage with a deductible of not to exceed $1,000 per occurrence.  The proceeds from any such insurance shall be used by Lessee for the replacement of personal property, Trade Fixtures and Lessee Owned Alterations and Utility Installations.

(b) **Business Interruption.**  Lessee shall obtain and maintain loss of income and extra expense insurance in amounts as will reimburse Lessee for direct or indirect loss of earnings attributable to all perils commonly insured against by prudent lessees in the business of Lessee or attributable to prevention of access to the Premises as a result of such perils.

(c) **Worker's Compensation Insurance.**  Lessee shall obtain and maintain Worker's Compensation Insurance in such amount as may be required by Applicable Requirements.  Such policy shall include a 'Waiver of Subrogation' endorsement.  Lessee shall provide Lessor with a copy of such endorsement along with the certificate of insurance or copy of the policy required by paragraph 8.5.

(d) **No Representation of Adequate Coverage.**  Lessor makes no representation that the limits or forms of coverage of insurance specified herein are adequate to cover Lessee's property, business operations or obligations under this Lease.

8.5    **Insurance Policies.**  Insurance required herein shall be by companies maintaining during the policy term a "General Policyholders Rating" of at least A-, VII, as set forth in the most current issue of "Best's Insurance Guide", or such other rating as may be required by a Lender. Lessee shall not do or permit to be done anything which invalidates the required insurance policies.  Lessee shall, prior to the Start Date, deliver to Lessor certified copies of policies of such insurance or certificates with copies of the required endorsements evidencing the existence and amounts of the required insurance.  No such policy shall be cancelable or subject to modification except after 30 days prior written notice to Lessor.  Lessee shall, at least 10 days prior to the expiration of such policies, furnish Lessor with evidence of renewals or "insurance binders" evidencing renewal thereof, or

PAGE 5 OF 13

INITIALS                                                INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM STG-20-07/14E

Lessor may order such insurance and charge the cost thereof to Lessee, which amount shall be payable by Lessee to Lessor upon demand.  Such policies shall be for a term of at least one year, or the length of the remaining term of this Lease, whichever is less.  If either Party shall fail to procure and maintain the insurance required to be carried by it, the other Party may, but shall not be required to, procure and maintain the same.

      8.6    **Waiver of Subrogation.**  Without affecting any other rights or remedies, Lessee and Lessor each hereby release and relieve the other, and waive their entire right to recover damages against the other, for loss of or damage to its property arising out of or incident to the perils required to be insured against herein.  The effect of such releases and waivers is not limited by the amount of insurance carried or required, or by any deductibles applicable thereto.  The Parties agree to have their respective property damage insurance carriers waive any right to subrogation that such companies may have against Lessor or Lessee, as the case may be, so long as the insurance is not invalidated thereby.

      8.7    **Indemnity.**  Except for Lessor's gross negligence or willful misconduct, Lessee shall indemnify, protect, defend and hold harmless the Premises, Lessor and its agents, Lessor's master or ground lessor, partners and Lenders, from and against any and all claims, loss of rents and/or damages, liens, judgments, penalties, attorneys' and consultants' fees, expenses and/or liabilities arising out of, involving, or in connection with, the use and/or occupancy of the Premises by Lessee.  If any action or proceeding is brought against Lessor by reason of any of the foregoing matters, Lessee shall upon notice defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense.  Lessor need not have first paid any such claim in order to be defended or indemnified.

      8.8    **Exemption of Lessor and its Agents from Liability.**  Notwithstanding the negligence or breach of this Lease by Lessor or its agents, neither Lessor nor its agents shall be liable under any circumstances for: (i) injury or damage to the person or goods, wares, merchandise or other property of Lessee, Lessee's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, indoor air quality, the presence of mold or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, HVAC or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or upon other portions of the building of which the Premises are a part, or from other sources or places, (ii) any damages arising from any act or neglect of any other tenant of Lessor or from the failure of Lessor or its agents to enforce the provisions of any other lease in the Project, or (iii) injury to Lessee's business or for any loss of income or profit therefrom.  Instead, it is intended that Lessee's sole recourse in the event of such damages or injury be to file a claim on the insurance policy(ies) that Lessee is required to maintain pursuant to the provisions of paragraph 8.

      8.9    **Failure to Provide Insurance.**  Lessee acknowledges that any failure on its part to obtain or maintain the insurance required herein will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain.  Accordingly, for any month or portion thereof that Lessee does not maintain the required insurance and/or does not provide Lessor with the required binders or certificates evidencing the existence of the required insurance, the Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater.  The parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/ costs that Lessor will incur by reason of Lessee's failure to maintain the required insurance.  Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to the failure to maintain such insurance, prevent the exercise of any of the other rights and remedies granted hereunder, nor relieve Lessee of its obligation to maintain the insurance specified in this Lease.

9.     **Damage or Destruction.**

      9.1    **Definitions.**

          (a) **"Premises Partial Damage"** shall mean damage or destruction to the improvements on the Premises, other than Lessee Owned Alterations and Utility Installations, which can reasonably be repaired in 6 months or less from the date of the damage or destruction.  Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

          (b) **"Premises Total Destruction"** shall mean damage or destruction to the Premises, other than Lessee Owned Alterations and Utility Installations and Trade Fixtures, which cannot reasonably be repaired in 6 months or less from the date of the damage or destruction.  Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

          (c) **"Insured Loss"** shall mean damage or destruction to improvements on the Premises, other than Lessee Owned Alterations and Utility Installations and Trade Fixtures, which was caused by an event required to be covered by the insurance described in Paragraph 8.3(a), irrespective of any deductible amounts or coverage limits involved.

          (d) **"Replacement Cost"** shall mean the cost to repair or rebuild the improvements owned by Lessor at the time of the occurrence to their condition existing immediately prior thereto, including demolition, debris removal and upgrading required by the operation of Applicable Requirements, and without deduction for depreciation.

          (e) **"Hazardous Substance Condition"** shall mean the occurrence or discovery of a condition involving the presence of, or a contamination by, a Hazardous Substance, in, on, or under the Premises which requires restoration.

      9.2    **Partial Damage - Insured Loss.**  If a Premises Partial Damage that is an Insured Loss occurs, then Lessor shall, at Lessor's expense, repair such damage (but not Lessee's Trade Fixtures or Lessee Owned Alterations and Utility Installations) as soon as reasonably possible and this Lease shall continue in full force and effect; provided, however, that Lessee shall, at Lessor's election, make the repair of any damage or destruction the total cost to repair of which is $10,000 or less, and, in such event, Lessor shall make any applicable insurance proceeds available to Lessee on a reasonable basis for that purpose.  Notwithstanding the foregoing, if the required insurance was not in force or the insurance proceeds are not sufficient to effect such repair, the Insuring Party shall promptly contribute the shortage in proceeds (except as to the deductible which is Lessee's responsibility) as and when required to complete said repairs.  In the event, however, such shortage was due to the fact that, by reason of the unique nature of the improvements, full replacement cost insurance coverage was not commercially reasonable and available, Lessor shall have no obligation to pay for the shortage in insurance proceeds or to fully restore the unique aspects of the Premises unless Lessee provides Lessor with the funds to cover same, or adequate assurance thereof, within 10 days following receipt of written notice of such shortage and request therefor.  If Lessor receives said funds or adequate assurance thereof within said 10 day period, the party responsible for making the repairs shall complete them as soon as reasonably possible and this Lease shall remain in full force and effect.  If such funds or assurance are not received, Lessor may nevertheless elect by written notice to Lessee within 10 days thereafter to:  (i) make such restoration and repair as is commercially reasonable with Lessor paying any shortage in proceeds, in which case this Lease shall remain in full force and effect, or (ii) have this Lease terminate 30 days thereafter.  Lessee shall not be entitled to reimbursement of any funds contributed by Lessee to repair any such damage or destruction.  Premises Partial Damage due to flood or earthquake shall be subject to Paragraph 9.3, notwithstanding that there may be some insurance coverage, but the net proceeds of any such insurance shall be made available for the repairs if made by either Party.

      9.3    **Partial Damage - Uninsured Loss.**  If a Premises Partial Damage that is not an Insured Loss occurs, unless caused by a negligent or willful act of Lessee (in which event Lessee shall make the repairs at Lessee's expense), Lessor may either:  (i) repair such damage as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (ii) terminate this Lease by giving written notice to Lessee within 30 days after receipt by Lessor of knowledge of the occurrence of such damage.  Such termination shall be effective 60 days following the date of such notice.  In the event Lessor elects to terminate this Lease, Lessee shall have the right within 10 days after receipt of the termination notice to give written notice to Lessor of Lessee's commitment to pay for the repair of such damage without reimbursement from Lessor.  Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days after making such commitment.  In such event this Lease shall continue in full force and effect, and Lessor shall proceed to make such repairs as soon as reasonably possible after the required funds are available.  If Lessee does not make the required commitment, this Lease shall terminate as of the date specified in the termination notice.

      9.4    **Total Destruction.**  Notwithstanding any other provision hereof, if a Premises Total Destruction occurs, this Lease shall terminate 60 days following such Destruction.  If the damage or destruction was caused by the gross negligence or willful misconduct of Lessee, Lessor shall have the right to recover Lessor's damages from Lessee, except as provided in Paragraph 8.6.

      9.5    **Damage Near End of Term.**  If at any time during the last 6 months of this Lease there is damage for which the cost to repair exceeds one month's Base Rent, whether or not an Insured Loss, Lessor may terminate this Lease effective 60 days following the date of occurrence of such damage by giving a written termination notice to Lessee within 30 days after the date of occurrence of such damage.  Notwithstanding the foregoing, if Lessee at that time has an exercisable option to extend this Lease or to purchase the Premises, then Lessee may preserve this Lease by, (a) exercising such option and (b) providing Lessor with any shortage in insurance proceeds (or adequate assurance thereof) needed to make the repairs on or before the earlier of (i) the date which is 10 days after Lessee's receipt of Lessor's written notice purporting to terminate this Lease, or (ii) the day prior to the date upon which such option expires.  If Lessee duly exercises such option during such period and provides Lessor with funds (or adequate assurance thereof) to cover any shortage in insurance proceeds, Lessor shall, at Lessor's commercially reasonable expense, repair such damage as soon as reasonably possible and this Lease shall continue in full force and effect.  If Lessee fails to exercise such option and provide such funds or assurance during such period, then this Lease shall terminate on the date specified in the termination notice and Lessee's option shall be extinguished.

      9.6    **Abatement of Rent; Lessee's Remedies.**

          (a) **Abatement.**  In the event of Premises Partial Damage or Premises Total Destruction or a Hazardous Substance Condition for which Lessee is not responsible under this Lease, the Rent payable by Lessee for the period required for the repair, remediation or restoration of such damage shall be abated in proportion to the degree to which Lessee's use of the Premises is impaired, but not to exceed the proceeds received from

PAGE 6 OF 13

**INITIALS**                                 **INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION          **FORM STG-20-07/14E**

the Rental Value insurance.  All other obligations _____ shall be _____ _____ _____ _____ Lessor shall have no liability for any such damage, destruction, remediation, repair or restoration except as provided herein.

(b)  **Remedies.**  If Lessor is obligated to repair or restore the Premises and does not commence, in a substantial and meaningful way, such repair or restoration within 90 days after such obligation shall accrue, Lessee may, at any time prior to the commencement of such repair or restoration within such notice to Lessor and to any Lenders of which Lessee has actual notice, of Lessee's election to terminate this Lease on a date not less than 60 days following the giving of such notice.  If Lessee gives such notice and such repair or restoration is not commenced within 30 days thereafter, this Lease shall terminate as of the date specified in said notice.  If the repair or restoration is commenced within such 30 days, this Lease shall continue in full force and effect.  **"Commence"** shall mean either the unconditional authorization of the preparation of the required plans, or the beginning of the actual work on the Premises, whichever first occurs.

9.7     **Termination; Advance Payments.**  Upon termination of this Lease pursuant to Paragraph 6.2(g) or Paragraph 9, an equitable adjustment shall be made concerning advance Base Rent and any other advance payments made by Lessee to Lessor.  Lessor shall, in addition, return to Lessee so much of Lessee's Security Deposit as has not been, or is not then required to be, used by Lessor.

10.     **Real Property Taxes.**

10.1     **Definition.**  As used herein, the term **"Real Property Taxes"** shall include any form of assessment; real estate, general, special, ordinary or extraordinary, or rental levy or tax (other than inheritance, personal income or estate taxes); improvement bond; and/or license fee imposed upon or levied against any legal or equitable interest of Lessor in the Premises or the Project, Lessor's right to other income therefrom, and/or Lessor's business of leasing, by any authority having the direct or indirect power to tax and where the funds are generated with reference to the Building address and where the proceeds so generated are to be applied by the city, county or other local taxing authority of a jurisdiction within which the Premises are located.  Real Property Taxes shall also include any tax, fee, levy, assessment or charge, or any increase therein: (i) imposed by reason of events occurring during the term of this Lease, including but not limited to, a change in the ownership of the Premises, and (ii) levied or assessed on machinery or equipment provided by Lessor to Lessee pursuant to this Lease.

10.2

(a) **Payment of Taxes.**  Lessor shall pay the Real Property Taxes applicable to the Premises provided, however, that Lessee shall pay to Lessor the amount, if any, by which Real Property Taxes applicable to the Premises increase over the fiscal tax year during which the Commencement Date Occurs ("Tax Increase").  Payment of any such Tax Increase shall be made by Lessee to Lessor within 30 days after receipt of Lessor's written statement setting forth the amount due and computation thereof.  If any such taxes shall cover any period of time prior to or after the expiration or termination of this Lease, Lessee's share of such taxes shall be prorated to cover only that portion of the tax bill applicable to the period that this Lease is in effect.  In the event Lessee incurs a late charge on any Rent payment, Lessor may estimate the current Real Property Taxes, and require that the Tax Increase be paid in advance to Lessor by Lessee monthly in advance with the payment of the Base Rent.  Such monthly payment shall be an amount equal to the amount of the estimated installment of the Tax Increase divided by the number of months remaining before the month in which said installment becomes delinquent.  When the actual amount of the applicable Tax Increase is known, the amount of such equal monthly advance payments shall be adjusted as required to provide the funds needed to pay the applicable Tax Increase.  If the amount collected by Lessor is insufficient to pay the Tax Increase when due, Lessee shall pay Lessor, upon demand, such additional sums as are necessary to pay such obligations.  Advance payments may be intermingled with other moneys of Lessor and shall not bear interest.  In the event of a Breach by Lessee in the performance of its obligations under this Lease, then any such advance payments may be treated by Lessor as an additional Security Deposit.

(b) **Additional Improvements.**  Notwithstanding anything to the contrary in this Paragraph 10.2, Lessee shall pay to Lessor upon demand therefor the entirety of any increase in Real Property Taxes assessed by reason of Alterations or Utility Installations placed upon the Premises by Lessee or at Lessee's request or by reason of any alterations or improvements to the Premises made by Lessor subsequent to the execution of this Lease by the Parties.

10.3     **Joint Assessment.**  If the Premises are not separately assessed, Lessee's liability shall be an equitable proportion of the Tax Increase for all of the land and improvements included within the tax parcel assessed, such proportion to be conclusively determined by Lessor from the respective valuations assigned in the assessor's work sheets or such other information as may be reasonably available.

10.4     **Personal Property Taxes.**  Lessee shall pay, prior to delinquency, all taxes assessed against and levied upon Lessee Owned Alterations, Utility Installations, Trade Fixtures, furnishings, equipment and all personal property of Lessee.  When possible, Lessee shall cause its Lessee Owned Alterations and Utility Installations, Trade Fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Lessor.  If any of Lessee's said property shall be assessed with Lessor's real property, Lessee shall pay Lessor the taxes attributable to Lessee's property within 10 days after receipt of a written statement setting forth the taxes applicable to Lessee's property.

11.     **Utilities and Services.**  Lessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon.  If any such services are not separately metered or billed to Lessee, Lessee shall pay a reasonable proportion, to be determined by Lessor, of all charges jointly metered or billed.  There shall be no abatement of rent and Lessor shall not be liable in any respect whatsoever for the inadequacy, stoppage, interruption or discontinuance of any utility or service due to riot, strike, labor dispute, breakdown, accident, repair or other cause beyond Lessor's reasonable control or in cooperation with governmental request or directions.

12.     **Assignment and Subletting.**

12.1     **Lessor's Consent Required.**

(a)  Lessee shall not voluntarily or by operation of law assign, transfer, mortgage or encumber (collectively, **"assign or assignment"**) or sublet all or any part of Lessee's interest in this Lease or in the Premises without Lessor's prior written consent.

(b)  Unless Lessee is a corporation and its stock is publicly traded on a national stock exchange, a change in the control of Lessee shall constitute an assignment requiring consent.  The transfer, on a cumulative basis, of 25% or more of the voting control of Lessee shall constitute a change in control for this purpose.

(c)  The involvement of Lessee or its assets in any transaction, or series of transactions (by way of merger, sale, acquisition, financing, transfer, leveraged buy-out or otherwise), whether or not a formal assignment or hypothecation of this Lease or Lessee's assets occurs, which results or will result in a reduction of the Net Worth of Lessee by an amount greater than 25% of such Net Worth as it was represented at the time of the execution of this Lease or at the time of the most recent assignment to which Lessor has consented, or as it exists immediately prior to said transaction or transactions constituting such reduction, whichever was or is greater, shall be considered an assignment of this Lease to which Lessor may withhold its consent.  **"Net Worth of Lessee"** shall mean the net worth of Lessee (excluding any guarantors) established under generally accepted accounting principles.

(d)  An assignment or subletting without consent shall, at Lessor's option, be a Default curable after notice per Paragraph 13.1(d), or a noncurable Breach without the necessity of any notice and grace period.  If Lessor elects to treat such unapproved assignment or subletting as a noncurable Breach, Lessor may either: (i) terminate this Lease, or (ii) upon 30 days written notice, increase the monthly Base Rent to 110% of the Base Rent then in effect.  Further, in the event of such Breach and rental adjustment, (i) the purchase price of any option to purchase the Premises held by Lessee shall be subject to similar adjustment to 110% of the price previously in effect, and (ii) all fixed and non-fixed rental adjustments scheduled during the remainder of the Lease term shall be increased to 110% of the scheduled adjusted rent.

(e)  Lessee's remedy for any breach of Paragraph 12.1 by Lessor shall be limited to compensatory damages and/or injunctive relief.

(f)  Lessor may reasonably withhold consent to a proposed assignment or subletting if Lessee is in Default at the time consent is requested.

(g)  Notwithstanding the foregoing, allowing a de minimis portion of the Premises, ie. 20 square feet or less, to be used by a third party vendor in connection with the installation of a vending machine or payphone shall not constitute a subletting.

12.2     **Terms and Conditions Applicable to Assignment and Subletting.**

(a)  Regardless of Lessor's consent, no assignment or subletting shall:  (i) be effective without the express written assumption by such assignee or sublessee of the obligations of Lessee under this Lease, (ii) release Lessee of any obligations hereunder, or (iii) alter the primary liability of Lessee for the payment of Rent or for the performance of any other obligations to be performed by Lessee.

(b)  Lessor may accept Rent or performance of Lessee's obligations from any person other than Lessee pending approval or disapproval of an assignment.  Neither a delay in the approval or disapproval of such assignment nor the acceptance of Rent or performance shall constitute a waiver or estoppel of Lessor's right to exercise its remedies for Lessee's Default or Breach.

(c)  Lessor's consent to any assignment or subletting shall not constitute a consent to any subsequent assignment or subletting.

(d)  In the event of any Default or Breach by Lessee, Lessor may proceed directly against Lessee, any Guarantors or anyone else responsible for the performance of Lessee's obligations under this Lease, including any assignee or sublessee, without first exhausting Lessor's remedies against any other person or entity responsible therefor to Lessor, or any security held by Lessor.

(e)  Each request for consent to an assignment or subletting shall be in writing, accompanied by information relevant to Lessor's determination as to the financial and operational responsibility and appropriateness of the proposed assignee or sublessee, including but not limited to the intended use and/or required modification of the Premises, if any, together with a fee of $500 as consideration for Lessor's considering and processing said request.  Lessee agrees to provide Lessor with such other or additional information and/or documentation as may be reasonably requested. (See also Paragraph 36)

(f)  Any assignee of, or sublessee under, this Lease shall, by reason of accepting such assignment, entering into such sublease, or

PAGE 7 OF 13

INITIALS                                                                                                                    INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                               FORM STG-20-07/14E

entering into possession of the Premises or, if earlier, upon the date specified in a written notice given to Lessee, to conform and comply with each and every term, covenant, condition and obligation herein to be observed or performed by Lessee during the term of said assignment or sublease, other than such obligations as are contrary to or inconsistent with provisions of an assignment or sublease to which Lessor has specifically consented to in writing.

(g) Lessor's consent to any assignment or subletting shall not transfer to the assignee or sublessee any Option granted to the original Lessee by this Lease unless such transfer is specifically consented to by Lessor in writing. (See Paragraph 39.2)

12.3    **Additional Terms and Conditions Applicable to Subletting.** The following terms and conditions shall apply to any subletting by Lessee of all or any part of the Premises and shall be deemed included in all subleases under this Lease whether or not expressly incorporated therein.

(a) Lessee hereby assigns and transfers to Lessor all of Lessee's interest in all Rent payable on any sublease, and Lessor may collect such Rent and apply same toward Lessee's obligations under this Lease; provided, however, that until a Breach shall occur in the performance of Lessee's obligations, Lessee may collect said Rent. In the event that the amount collected by Lessor exceeds Lessee's then outstanding obligations any such excess shall be refunded to Lessee. Lessor shall not, by reason of the foregoing or any assignment of such sublease, nor by reason of the collection of Rent, be deemed liable to the sublessee for any failure of Lessee to perform and comply with any of Lessee's obligations to such sublessee. Lessee hereby irrevocably authorizes and directs any such sublessee, upon receipt of a written notice from Lessor stating that a Breach exists in the performance of Lessee's obligations under this Lease, to pay to Lessor all Rent due and to become due under the sublease. Sublessee shall rely upon any such notice from Lessor and shall pay all Rents to Lessor without any obligation or right to inquire as to whether such Breach exists, notwithstanding any claim from Lessee to the contrary.

(b) In the event of a Breach by Lessee, Lessor may, at its option, require sublessee to attorn to Lessor, in which event Lessor shall undertake the obligations of the sublessor under such sublease from the time of the exercise of said option to the expiration of such sublease; provided, however, Lessor shall not be liable for any prepaid rents or security deposit paid by such sublessee to such sublessor or for any prior Defaults or Breaches of such sublessor.

(c) Any matter requiring the consent of the sublessor under a sublease shall also require the consent of Lessor.

(d) No sublessee shall further assign or sublet all or any part of the Premises without Lessor's prior written consent.

(e) Lessor shall deliver a copy of any notice of Default or Breach by Lessee to the sublessee, who shall have the right to cure the Default of Lessee within the grace period, if any, specified in such notice. The sublessee shall have a right of reimbursement and offset from and against Lessee for any such Defaults cured by the sublessee.

13.    **Default; Breach; Remedies.**

13.1    **Default; Breach.** A **"Default"** is defined as a failure by the Lessee to comply with or perform any of the terms, covenants, conditions or Rules and Regulations under this Lease. A **"Breach"** is defined as the occurrence of one or more of the following Defaults, and the failure of Lessee to cure such Default within any applicable grace period:

(a) The abandonment of the Premises; or the vacating of the Premises without providing a commercially reasonable level of security, or where the coverage of the property insurance described in Paragraph 8.3 is jeopardized as a result thereof, or without providing reasonable assurances to minimize potential vandalism.

(b) The failure of Lessee to make any payment of Rent or any Security Deposit required to be made by Lessee hereunder, whether to Lessor or to a third party, when due, to provide reasonable evidence of insurance or surety bond, or to fulfill any obligation under this Lease which endangers or threatens life or property, where such failure continues for a period of 3 business days following written notice to Lessee.

(c) The failure of Lessee to allow Lessor and/or its agents access to the Premises or the commission of waste, act or acts constituting public or private nuisance, and/or an illegal activity on the Premises by Lessee, where such actions continue for a period of 3 business days following written notice to Lessee. In the event that Lessee commits waste, a nuisance or an illegal activity a second time then, the Lessor may elect to treat such conduct as a non-curable Breach rather than a Default.

(d) The failure by Lessee to provide (i) reasonable written evidence of compliance with Applicable Requirements, (ii) the service contracts, (iii) the rescission of an unauthorized assignment or subletting, (iv) an Estoppel Certificate or financial statements, (v) a required subordination, (vi) evidence concerning any guaranty and/or Guarantor, (vii) any document requested under Paragraph 42, (viii) material safety data sheets (MSDS), or (ix) any other documentation or information which Lessor may reasonably require of Lessee under the terms of this Lease, where any such failure continues for a period of 10 days following written notice to Lessee.

(e) A Default by Lessee as to the terms, covenants, conditions or provisions of this Lease, or of the rules adopted under Paragraph 40 hereof, other than those described in subparagraphs 13.1(a), (b), (c) or (d), above, where such Default continues for a period of 30 days after written notice; provided, however, that if the nature of Lessee's Default is such that more than 30 days are reasonably required for its cure, then it shall not be deemed to be a Breach if Lessee commences such cure within said 30 day period and thereafter diligently prosecutes such cure to completion.

(f) The occurrence of any of the following events: (i) the making of any general arrangement or assignment for the benefit of creditors; (ii) becoming a **"debtor"** as defined in 11 U.S.C. §101 or any successor statute thereto (unless, in the case of a petition filed against Lessee, the same is dismissed within 60 days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where possession is not restored to Lessee within 30 days; or (iv) the attachment, execution or other judicial seizure of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where such seizure is not discharged within 30 days; provided, however, in the event that any provision of this subparagraph (e) is contrary to any applicable law, such provision shall be of no force or effect, and shall not affect the validity of the remaining provisions.

(g) The discovery that any financial statement of Lessee or of any Guarantor given to Lessor was materially false.

(h) If the performance of Lessee's obligations under this Lease is guaranteed: (i) the death of a Guarantor, (ii) the termination of a Guarantor's liability with respect to this Lease other than in accordance with the terms of such guaranty, (iii) a Guarantor's becoming insolvent or the subject of a bankruptcy filing, (iv) a Guarantor's refusal to honor the guaranty, or (v) a Guarantor's breach of its guaranty obligation on an anticipatory basis, and Lessee's failure, within 60 days following written notice of any such event, to provide written alternative assurance or security, which, when coupled with the then existing resources of Lessee, equals or exceeds the combined financial resources of Lessee and the Guarantors that existed at the time of execution of this Lease.

13.2    **Remedies.** If Lessee fails to perform any of its affirmative duties or obligations, within 10 days after written notice (or in case of an emergency, without notice), Lessor may, at its option, perform such duty or obligation on Lessee's behalf, including but not limited to the obtaining of reasonably required bonds, insurance policies, or governmental licenses, permits or approvals. Lessee shall pay to Lessor an amount equal to 115% of the costs and expenses incurred by Lessor in such performance upon receipt of an invoice therefor. In the event of a Breach, Lessor may, with or without further notice or demand, and without limiting Lessor in the exercise of any right or remedy which Lessor may have by reason of such Breach:

(a) Terminate Lessee's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Lessee shall immediately surrender possession to Lessor. In such event Lessor shall be entitled to recover from Lessee: (i) the unpaid Rent which had been earned at the time of termination; (ii) the worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Lessee proves could have been reasonably avoided; (iii) the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the Lessee proves could be reasonably avoided; and (iv) any other amount necessary to compensate Lessor for all the detriment proximately caused by the Lessee's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, including but not limited to the cost of recovering possession of the Premises, expenses of reletting, including necessary renovation and alteration of the Premises, reasonable attorneys' fees, and that portion of any leasing commission paid by Lessor in connection with this Lease applicable to the unexpired term of this Lease. The worth at the time of award of the amount referred to in provision (iii) of the immediately preceding sentence shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of the District within which the Premises are located at the time of award plus one percent. Efforts by Lessor to mitigate damages caused by Lessee's Breach of this Lease shall not waive Lessor's right to recover any damages to which Lessor is otherwise entitled. If termination of this Lease is obtained through the provisional remedy of unlawful detainer, Lessor shall have the right to recover in such proceeding any unpaid Rent and damages as are recoverable therein, or Lessor may reserve the right to recover all or any part thereof in a separate suit. If a notice and grace period required under Paragraph 13.1 was not previously given, a notice to pay rent or quit, or to perform or quit given to Lessee under the unlawful detainer statute shall also constitute the notice required by Paragraph 13.1. In such case, the applicable grace period required by Paragraph 13.1 and the unlawful detainer statute shall run concurrently, and the failure of Lessee to cure the Default within the greater of the two such grace periods shall constitute both an unlawful detainer and a Breach of this Lease entitling Lessor to the remedies provided for in this Lease and/or by said statute.

(b) Continue the Lease and Lessee's right to possession and recover the Rent as it becomes due, in which event Lessor may sublet or assign, subject only to reasonable limitations. Acts of maintenance, efforts to relet, and/or the appointment of a receiver to protect the Lessor's interests, shall not constitute a termination of the Lessee's right to possession.

(c) Pursue any other remedy now or hereafter available under the laws or judicial decisions of the state wherein the Premises are located. The expiration or termination of this Lease and/or the termination of Lessee's right to possession shall not relieve Lessee from liability under any indemnity provisions of this Lease as to matters occurring or accruing during the term hereof or by reason of Lessee's occupancy of the Premises.

13.3    **Inducement Recapture.** Any agreement for free or abated rent or other charges, or for the giving or paying by Lessor to or for Lessee of any cash or other bonus, inducement or consideration for Lessee's entering into this Lease, all of which concessions are hereinafter referred

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

to as "**Inducement Provisions,**" shall be deemed a part of this Lease, but shall be deemed modified or deleted to the extent required to give effect to all of the terms, covenants and conditions of this Lease. Upon Breach of this Lease by Lessee, any such Inducement Provision shall automatically be deemed deleted from this Lease and of no further force or effect, and any rent, other charge, bonus, inducement or consideration theretofore abated, given or paid by Lessor under such an inducement Provision shall be immediately due and payable by Lessee to Lessor; notwithstanding any subsequent cure of said Breach by Lessee. The acceptance by Lessor of rent or the cure of the Breach which initiated the operation of this paragraph shall not be deemed a waiver by Lessor of the provisions of this paragraph unless specifically so stated in writing by Lessor at the time of such acceptance.

13.4   **Late Charges.**   Lessee hereby acknowledges that late payment by Lessee of Rent will cause Lessor to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed upon Lessor by any Lender. Accordingly, if any Rent shall not be received by Lessor within 5 days after such amount shall be due, then, without any requirement for notice to Lessee, Lessee shall immediately pay to Lessor a one-time late charge equal to 10% of each such overdue amount or $100, whichever is greater. The Parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lessor will incur by reason of such late payment. Acceptance of such late charge by Lessor shall in no event constitute a waiver of Lessee's Default or Breach with respect to such overdue amount, nor prevent the exercise of any of the other rights and remedies granted hereunder.  In the event that a late charge is payable hereunder, whether or not collected, for 3 consecutive installments of Base Rent, then notwithstanding any provision of this Lease to the contrary, Base Rent shall, at Lessor's option, become due and payable quarterly in advance.

13.5   **Interest.**  Any monetary payment due Lessor hereunder, other than late charges, not received by Lessor, when due shall bear interest from the 31st day after it was due. The interest ("**Interest**") charged shall be computed at the rate of 10% per annum but shall not exceed the maximum rate allowed by law.  Interest is payable in addition to the potential late charge provided for in Paragraph 13.4.

13.6   **Breach by Lessor.**

(a) **Notice of Breach.** Lessor shall not be deemed in breach of this Lease unless Lessor fails within a reasonable time to perform an obligation required to be performed by Lessor.  For purposes of this Paragraph, a reasonable time shall in no event be less than 30 days after receipt by Lessor, and any Lender whose name and address shall have been furnished Lessee in writing for such purpose, of written notice specifying wherein such obligation of Lessor has not been performed; provided, however, that if the nature of Lessor's obligation is such that more than 30 days are reasonably required for its performance, then Lessor shall not be in breach if performance is commenced within such 30 day period and thereafter diligently pursued to completion.

(b) **Performance by Lessee on Behalf of Lessor.** In the event that neither Lessor nor Lender cures said breach within 30 days after receipt of said notice, or if having commenced said cure they do not diligently pursue it to completion, then Lessee may elect to cure said breach at Lessee's expense and offset from Rent the actual and reasonable cost to perform such cure, provided however, that such offset shall not exceed an amount equal to the greater of one month's Base Rent or the Security Deposit, reserving Lessee's right to seek reimbursement from Lessor for any such expense in excess of such offset. Lessee shall document the cost of said cure and supply said documentation to Lessor.

14.   **Condemnation.**  If the Premises or any portion thereof are taken under the power of eminent domain or sold under the threat of the exercise of said power (collectively "**Condemnation**"), this Lease shall terminate as to the part taken as of the date the condemning authority takes title or possession, whichever first occurs.  If more than 10% of the Building, or more than 25% of that portion of the Premises not occupied by any building, is taken by Condemnation, Lessee may, at Lessee's option, to be exercised in writing within 10 days after Lessor shall have given Lessee written notice of such taking (or in the absence of such notice, within 10 days after the condemning authority shall have taken possession) terminate this Lease as of the date the condemning authority takes such possession.  If Lessee does not terminate this Lease in accordance with the foregoing, this Lease shall remain in full force and effect as to the portion of the Premises remaining, except that the Base Rent shall be reduced in proportion to the reduction in utility of the Premises caused by such Condemnation.  Condemnation awards and/or payments shall be the property of Lessor, whether such award shall be made as compensation for diminution in value of the leasehold, the value of the part taken, or for severance damages; provided, however, that Lessee shall be entitled to any compensation paid by the condemnor for Lessee's relocation expenses, loss of business goodwill and/or Trade Fixtures, without regard to whether or not this Lease is terminated pursuant to the provisions of this Paragraph.  All Alterations and Utility Installations made to the Premises by Lessee, for purposes of Condemnation only, shall be considered the property of the Lessee and Lessee shall be entitled to any and all compensation which is payable therefor.  In the event that this Lease is not terminated by reason of the Condemnation, Lessor shall repair any damage to the Premises caused by such Condemnation.

15.   **Brokerage Fees.**

15.1   **Additional Commission.**  In addition to the payments owed pursuant to Paragraph 1.9 above, and unless Lessor and the Brokers otherwise agree in writing, Lessor agrees that: (a) if Lessee exercises any Option, (b) if Lessee or anyone affiliated with Lessee acquires any rights to the Premises or other premises owned by Lessor and located within the same Project, if any, within which the Premises is located, (c) if Lessee remains in possession of the Premises, with the consent of Lessor, after the expiration of this Lease, or (d) if Base Rent is increased, whether by agreement or operation of an escalation clause herein, then,  Lessor shall pay Brokers a fee in accordance with the fee schedule of the Brokers in effect at the time the Lease was executed.

15.2   **Assumption of Obligations.**  Any buyer or transferee of Lessor's interest in this Lease shall be deemed to have assumed Lessor's obligation hereunder. Brokers shall be third party beneficiaries of the provisions of Paragraphs 1.9, 15, 22 and 31.  If Lessor fails to pay to Brokers any amounts due as and for brokerage fees pertaining to this Lease when due, then such amounts shall accrue Interest. In addition, if Lessor fails to pay any amounts to Lessee's Broker when due, Lessee's Broker may send written notice to Lessor and Lessee of such failure and if Lessor fails to pay such amounts within 10 days after said notice, Lessee shall pay said monies to its Broker and offset such amounts against Rent.  In addition, Lessee's Broker shall be deemed to be a third party beneficiary of any commission agreement entered into by and/or between Lessor and Lessor's Broker for the limited purpose of collecting any brokerage fee owed.

15.3   **Representations and Indemnities of Broker Relationships.**  Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder (other than the Brokers, if any) in connection with this Lease, and that no one other than said named Brokers is entitled to any commission or finder's fee in connection herewith.  Lessee and Lessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

16.   **Estoppel Certificates.**

(a) Each Party (as "**Responding Party**") shall within 10 days after written notice from the other Party (the "**Requesting Party**") execute, acknowledge and deliver to the Requesting Party a statement in writing in form similar to the then most current "**Estoppel Certificate**" form published by the AIR Commercial Real Estate Association, plus such additional information, confirmation and/or statements as may be reasonably requested by the Requesting Party.

(b) If the Responding Party shall fail to execute or deliver the Estoppel Certificate within such 10 day period, the Requesting Party may execute an Estoppel Certificate stating that: (i) the Lease is in full force and effect without modification except as may be represented by the Requesting Party, (ii) there are no uncured defaults in the Requesting Party's performance, and (iii) if Lessor is the Requesting Party, not more than one month's rent has been paid in advance. Prospective purchasers and encumbrancers may rely upon the Requesting Party's Estoppel Certificate, and the Responding Party shall be estopped from denying the truth of the facts contained in said Certificate.  In addition, Lessee acknowledges that any failure on its part to provide such an Estoppel Certificate will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain.  Accordingly, should the Lessee fail to execute and/or deliver a requested Estoppel Certificate in a timely fashion the monthly Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater for remainder of the Lease. The Parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/costs that Lessor will incur by reason of Lessee's failure to provide the Estoppel Certificate.  Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to the failure to provide the Estoppel Certificate nor prevent the exercise of any of the other rights and remedies granted hereunder.

(c) If Lessor desires to finance, refinance, or sell the Premises, or any part thereof, Lessee and all Guarantors shall within 10 days after written notice from Lessor deliver to any potential lender or purchaser designated by Lessor such financial statements as may be reasonably required by such lender or purchaser, including but not limited to Lessee's financial statements for the past 3 years.  All such financial statements shall be received by Lessor and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

17.   **Definition of Lessor.**  The term "**Lessor**" as used herein shall mean the owner or owners at the time in question of the fee title to the Premises, or, if this is a sublease, of the Lessee's interest in the prior lease. In the event of a transfer of Lessor's title or interest in the Premises or this Lease, Lessor shall deliver to the transferee or assignee (in cash or by credit) any unused Security Deposit held by Lessor. Upon such transfer or assignment and delivery of the Security Deposit, as aforesaid, the prior Lessor shall be relieved of all liability with respect to the obligations and/or covenants under this Lease thereafter to be performed by the Lessor. Subject to the foregoing, the obligations and/or covenants in this Lease to be performed by the Lessor shall be binding only upon the Lessor as hereinabove defined.

18.   **Severability.**  The invalidity of any provision of this Lease, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

19.   **Days.**  Unless otherwise specifically indicated to the contrary, the word "days" as used in this Lease shall mean and refer to calendar days.

**PAGE 9 OF 13**

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

20.    **Limitation on Liability.**    The obligations of Lessor under this Lease shall not constitute personal obligations of Lessor or its partners, members, directors, officers or shareholders, and Lessee shall look to the Premises, and to no other assets of Lessor, for the satisfaction of any liability of Lessor with respect to this Lease, and shall not seek recourse against Lessor's partners, members, directors, officers or shareholders, or any of their personal assets for such satisfaction.

21.    **Time of Essence.**    Time is of the essence with respect to the performance of all obligations to be performed or observed by the Parties under this Lease.

22.    **No Prior or Other Agreements; Broker Disclaimer.**    This Lease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective.  Lessor and Lessee each represents and warrants to the Brokers that it has made, and is relying solely upon, its own investigation as to the nature, quality, character and financial responsibility of the other Party to this Lease and as to the use, nature, quality and character of the Premises.  Brokers have no responsibility with respect thereto or with respect to any default or breach hereof by either Party.

23.    **Notices.**

23.1    **Notice Requirements.**    All notices required or permitted by this Lease or applicable law shall be in writing and may be delivered in person (by hand or by courier) or may be sent by regular, certified or registered mail or U.S. Postal Service Express Mail, with postage prepaid, or by facsimile transmission, or by email, and shall be deemed sufficiently given if served in a manner specified in this Paragraph 23.  The addresses noted adjacent to a Party's signature on this Lease shall be that Party's address for delivery or mailing of notices.  Either Party may by written notice to the other specify a different address for notice, except that upon Lessee's taking possession of the Premises, the Premises shall constitute Lessee's address for notice.  A copy of all notices to Lessor shall be concurrently transmitted to such party or parties at such addresses as Lessor may from time to time hereafter designate in writing.

23.2    **Date of Notice.**    Any notice sent by registered or certified mail, return receipt requested, shall be deemed given on the date of delivery shown on the receipt card, or if no delivery date is shown, the postmark thereon.  If sent by regular mail the notice shall be deemed given 72 hours after the same is addressed as required herein and mailed with postage prepaid.  Notices delivered by United States Express Mail or overnight courier that guarantees next day delivery shall be deemed given 24 hours after delivery of the same to the Postal Service or courier.  Notices delivered by hand, or transmitted by facsimile transmission or by email shall be deemed delivered upon actual receipt.  If notice is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

24.    **Waivers.**

(a)    No waiver by Lessor of the Default or Breach of any term, covenant or condition hereof by Lessee, shall be deemed a waiver of any other term, covenant or condition hereof, or of any subsequent Default or Breach by Lessee of the same or of any other term, covenant or condition hereof.  Lessor's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to, or approval of, any subsequent or similar act by Lessee, or be construed as the basis of an estoppel to enforce the provision or provisions of this Lease requiring such consent.

(b)    The acceptance of Rent by Lessor shall not be a waiver of any Default or Breach by Lessee.  Any payment by Lessee may be accepted by Lessor on account of moneys or damages due Lessor, notwithstanding any qualifying statements or conditions made by Lessee in connection therewith, which such statements and/or conditions shall be of no force or effect whatsoever unless specifically agreed to in writing by Lessor at or before the time of deposit of such payment.

(c)    THE PARTIES AGREE THAT THE TERMS OF THIS LEASE SHALL GOVERN WITH REGARD TO ALL MATTERS RELATED THERETO AND HEREBY WAIVE THE PROVISIONS OF ANY PRESENT OR FUTURE STATUTE TO THE EXTENT THAT SUCH STATUTE IS INCONSISTENT WITH THIS LEASE.

25.    **Disclosures Regarding The Nature of a Real Estate Agency Relationship.**

(a)    When entering into a discussion with a real estate agent regarding a real estate transaction, a Lessor or Lessee should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction.  Lessor and Lessee acknowledge being advised by the Brokers in this transaction, as follows:

(i)    **Lessor's Agent.**  A Lessor's agent under a listing agreement with the Lessor acts as the agent for the Lessor only.  A Lessor's agent or subagent has the following affirmative obligations:  To the Lessor:  A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Lessor.  To the Lessee and the Lessor:  a. Diligent exercise of reasonable skills and care in performance of the agent's duties.  b. A duty of honest and fair dealing and good faith.  c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties.  An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(ii)    **Lessee's Agent.**  An agent can agree to act as agent for the Lessee only.  In these situations, the agent is not the Lessor's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Lessor.  An agent acting only for a Lessee has the following affirmative obligations.  To the Lessee:  A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Lessee.  To the Lessee and the Lessor:  a. Diligent exercise of reasonable skills and care in performance of the agent's duties.  b. A duty of honest and fair dealing and good faith.  c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties.  An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(iii)    **Agent Representing Both Lessor and Lessee.**  A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Lessor and the Lessee in a transaction, but only with the knowledge and consent of both the Lessor and the Lessee. In a dual agency situation, the agent has the following affirmative obligations to both the Lessor and the Lessee: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Lessor or the Lessee.  b. Other duties to the Lessor and the Lessee as stated above in subparagraphs (i) or (ii). In representing both Lessor and Lessee, the agent may not without the express permission of the respective Party, disclose to the other Party that the Lessor will accept rent in an amount less than that indicated in the listing or that the Lessee is willing to pay a higher rent than that offered. The above duties of the agent in a real estate transaction do not relieve a Lessor or Lessee from the responsibility to protect their own interests. Lessor and Lessee should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(b)    Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this Lease may be brought against Broker more than one year after the Start Date and that the liability (including court costs and attorneys' fees), of any Broker with respect to any such lawsuit and/or legal proceeding shall not exceed the fee received by such Broker pursuant to this Lease; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

(c)    Lessor and Lessee agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

26.    **No Right To Holdover.**    Lessee has no right to retain possession of the Premises or any part thereof beyond the expiration or termination of this Lease.  In the event that Lessee holds over, then the Base Rent shall be increased to 150% of the Base Rent applicable immediately preceding the expiration or termination.  Holdover Base Rent shall be calculated on monthly basis.  Nothing contained herein shall be construed as consent by Lessor to any holding over by Lessee.

27.    **Cumulative Remedies.**    No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

28.    **Covenants and Conditions; Construction of Agreement.**    All provisions of this Lease to be observed or performed by Lessee are both covenants and conditions.  In construing this Lease, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Lease.  Whenever required by the context, the singular shall include the plural and vice versa.  This Lease shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

29.    **Binding Effect; Choice of Law.**    This Lease shall be binding upon the Parties, their personal representatives, successors and assigns and be governed by the laws of the State in which the Premises are located. Any litigation between the Parties hereto concerning this Lease shall be initiated in the county in which the Premises are located.

30.    **Subordination; Attornment; Non-Disturbance.**

30.1    **Subordination.**    This Lease and any Option granted hereby shall be subject and subordinate to any ground lease, mortgage, deed of trust, or other hypothecation or security device (collectively, **"Security Device"**), now or hereafter placed upon the Premises, to any and all advances made on the security thereof, and to all renewals, modifications, and extensions thereof.  Lessee agrees that the holders of any such Security Devices (in this Lease together referred to as **"Lender"**) shall have no liability or obligation to perform any of the obligations of Lessor under this Lease.  Any Lender may elect to have this Lease and/or any Option granted hereby superior to the lien of its Security Device  by giving written notice thereof to Lessee, whereupon this Lease and such Options shall be deemed prior to such Security Device, notwithstanding the relative dates of the documentation or recordation thereof.

**PAGE 10 OF 13**

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION    **FORM STG-20-07/14E**

30.2    **Attornment.** In the event that Lessor transfers title to the Premises, or the Premises are acquired by another upon the foreclosure or termination of a Security Device to which this Lease is subordinated (i) Lessee shall, subject to the non-disturbance provisions of Paragraph 30.3, attorn to such new owner, and upon request, enter into a new lease, containing all of the terms and provisions of this Lease, with such new owner for the remainder of the term hereof, or, at the election of the new owner, this Lease will automatically become a new lease between Lessee and such new owner, and (ii) Lessor shall thereafter be relieved of any further obligations hereunder and such new owner shall assume all of Lessor's obligations, except that such new owner shall not: (a) be liable for any act or omission of any prior lessor or with respect to events occurring prior to acquisition of ownership; (b) be subject to any offsets or defenses which Lessee might have against any prior lessor,  (c) be bound by prepayment of more than one month's rent, or (d) be liable for the return of any security deposit paid to any prior lessor which was not paid or credited to such new  owner.

30.3    **Non-Disturbance.**  With respect to Security Devices entered into by Lessor after the execution of this Lease, Lessee's subordination of this Lease shall be subject to receiving a commercially reasonable non-disturbance agreement (a **"Non-Disturbance Agreement"**) from the Lender which Non-Disturbance Agreement provides that Lessee's possession of the Premises, and this Lease, including any options to extend the term hereof, will not be disturbed so long as Lessee is not in Breach hereof and attorns to the record owner of the Premises.  Further, within 60 days after the execution of this Lease, Lessor shall, if requested by Lessee, use its commercially reasonable efforts to obtain a Non-Disturbance Agreement from the holder of any pre-existing Security Device which is secured by the Premises.  In the event that Lessor is unable to provide the Non-Disturbance Agreement within said 60 days, then Lessee may, at Lessee's option, directly contact Lender and attempt to negotiate for the execution and delivery of a Non-Disturbance Agreement.

30.4    **Self-Executing.**  The agreements contained in this Paragraph 30 shall be effective without the execution of any further documents; provided, however, that, upon written request from Lessor or a Lender in connection with a sale, financing or refinancing of the Premises, Lessee and Lessor shall execute such further writings as may be reasonably required to separately document any subordination, attornment and/or Non-Disturbance Agreement provided for herein.

31.    **Attorney's Fees.** If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees.  Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment.  The term, **"Prevailing Party"** shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.  In addition, Lessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach ($200 is a reasonable minimum per occurrence for such services and consultation).

32.    **Lessor's Access; Showing Premises; Repairs.**  Lessor and Lessor's agents shall have the right to enter the Premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable prior notice for the purpose of showing the same to prospective purchasers, lenders, or tenants, and making such alterations, repairs, improvements or additions to the Premises as Lessor may deem necessary or desirable and the erecting, using and maintaining of utilities, services, pipes and conduits through the Premises and/or other premises as long as there is no material adverse effect to Lessee's use of the Premises.  All such activities shall be without abatement of rent or liability to Lessee.

33.    **Auctions.**  Lessee shall not conduct, nor permit to be conducted, any auction upon the Premises without Lessor's prior written consent. Lessor shall not be obligated to exercise any standard of reasonableness in determining whether to permit an auction.

34.    **Signs.**  Lessor may place on the Premises ordinary "For Sale" signs at any time and ordinary "For Lease" signs during the last 6 months of the term hereof.  Except for ordinary "for sublease" signs, Lessee shall not place any sign upon the Premises without Lessor's prior written consent. All signs must comply with all Applicable Requirements.

35.    **Termination; Merger.**  Unless specifically stated otherwise in writing by Lessor, the voluntary or other surrender of this Lease by Lessee, the mutual termination or cancellation hereof, or a termination hereof by Lessor for Breach by Lessee, shall automatically terminate any sublease or lesser estate in the Premises; provided, however, that Lessor may elect to continue any one or all existing subtenancies.  Lessor's failure within 10 days following any such event to elect to the contrary by written notice to the holder of any such lesser interest, shall constitute Lessor's election to have such event constitute the termination of such interest.

36.    **Consents.**  Except as otherwise provided herein, wherever in this Lease the consent of a Party is required to an act by or for the other Party, such consent shall not be unreasonably withheld or delayed.  Lessor's actual reasonable costs and expenses (including but not limited to architects', attorneys', engineers' and other consultants' fees) incurred in the consideration of, or response to, a request by Lessee for any Lessor consent, including but not limited to consents to an assignment, a subletting or the presence or use of a Hazardous Substance, shall be paid by Lessee upon receipt of an invoice and supporting documentation therefor.  Lessor's consent to any act, assignment or subletting shall not constitute an acknowledgment that no Default or Breach by Lessee of this Lease exists, nor shall such consent be deemed a waiver of any then existing Default or Breach, except as may be otherwise specifically stated in writing by Lessor at the time of such consent.  The failure to specify herein any particular condition to Lessor's consent shall not preclude the imposition by Lessor at the time of consent of such further or other conditions as are then reasonable with reference to the particular matter for which consent is being given.  In the event that either Party disagrees with any determination made by the other hereunder and reasonably requests the reasons for such determination, the determining party shall furnish its reasons in writing and in reasonable detail within 10 business days following such request.

37.    **Guarantor.**

37.1    **Execution.**  The Guarantors, if any, shall each execute a guaranty in the form most recently published by the AIR Commercial Real Estate Association.

37.2    **Default.**  It shall constitute a Default of the Lessee if any Guarantor fails or refuses, upon request to provide:  (a) evidence of the execution of the guaranty, including the authority of the party signing on Guarantor's behalf to obligate Guarantor, and in the case of a corporate Guarantor, a certified copy of a resolution of its board of directors authorizing the making of such guaranty, (b) current financial statements, (c) an Estoppel Certificate, or (d) written confirmation that the guaranty is still in effect.

38.    **Quiet Possession.**  Subject to payment by Lessee of the Rent and performance of all of the covenants, conditions and provisions on Lessee's part to be observed and performed under this Lease, Lessee shall have quiet possession and quiet enjoyment of the Premises during the term hereof.

39.    **Options.**  If Lessee is granted any Option, as defined below, then the following provisions shall apply:

39.1    **Definition.**  "Option" shall mean:  (a) the right to extend or reduce the term of or renew this Lease or to extend or reduce the term of or renew any lease that Lessee has on other property of Lessor; (b) the right of first refusal or first offer to lease either the Premises or other property of Lessor; (c) the right to purchase, the right of first offer to purchase or the right of first refusal to purchase the Premises or other property of Lessor.

39.2    **Options Personal To Original Lessee.**  Any Option granted to Lessee in this Lease is personal to the original **Lessee**, and cannot be assigned or exercised by anyone other than said original Lessee and only while the original Lessee is in full possession of the Premises and, if requested by Lessor, with Lessee certifying that Lessee has no intention of thereafter assigning or subletting.

39.3    **Multiple Options.**  In the event that Lessee has any multiple Options to extend or renew this Lease, a later Option cannot be exercised unless the prior Options have been validly exercised.

39.4    **Effect of Default on Options.**

(a) Lessee shall have no right to exercise an Option:  (i) during the period commencing with the giving of any notice of Default and continuing until said Default is cured, (ii) during the period of time any Rent is unpaid (without regard to whether notice thereof is given Lessee), (iii) during the time Lessee is in Breach of this Lease, or (iv) in the event that Lessee has been given 3 or more notices of separate Default, whether or not the Defaults are cured, during the 12 month period immediately preceding the exercise of the Option.

(b) The period of time within which an Option may be exercised shall not be extended or enlarged by reason of Lessee's inability to exercise an Option because of the provisions of Paragraph 39.4(a).

(c) An Option shall terminate and be of no further force or effect, notwithstanding Lessee's due and timely exercise of the Option, if, after such exercise and prior to the commencement of the extended term or completion of the purchase, (i) Lessee fails to pay Rent for a period of 30 days after such Rent becomes due (without any necessity of Lessor to give notice thereof), or (ii) if Lessee commits a Breach of this Lease.

40.    **Multiple Buildings.**  If the Premises are a part of a group of buildings controlled by Lessor, Lessee agrees that it will abide by and conform to all reasonable rules and regulations which Lessor may make from time to time for the management, safety, and care of said properties, including the care and cleanliness of the grounds and including the parking, loading and unloading of vehicles, and to cause its employees, suppliers, shippers, customers, contractors and invitees to so abide and conform.  Lessee also agrees to pay its fair share of common expenses incurred in connection with such rules and regulations.

41.    **Security Measures.**  Lessee hereby acknowledges that the Rent payable to Lessor hereunder does not include the cost of guard service or other security measures, and that Lessor shall have no obligation whatsoever to provide same.  Lessee assumes all responsibility for the protection of the Premises, Lessee, its agents and invitees and their property from the acts of third parties.

42.    **Reservations.**  Lessor reserves to itself the right, from time to time, to grant, without the consent or joinder of Lessee, such easements, rights and dedications that Lessor deems necessary, and to cause the recordation of parcel maps and restrictions, so long as such easements, rights,

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

dedications, maps and restrictions do not prohibit such intended use of the Premises, and (ii) Lessee agrees to sign any documents reasonably requested by Lessor to effectuate any such easement rights, dedication, map or restrictions.

43.    **Performance Under Protest.**  If at any time a dispute shall arise as to any amount or sum of money to be paid by one Party to the other under the provisions hereof, the Party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said Party to institute suit for recovery of such sum.  If it shall be adjudged that there was no legal obligation on the part of said Party to pay such sum or any part thereof, said Party shall be entitled to recover such sum or so much thereof as it was not legally required to pay. A Party who does not initiate suit for the recovery of sums paid "under protest" within 6 months shall be deemed to have waived its right to protest such payment.

44.    **Authority; Multiple Parties; Execution.**

(a)    If either Party hereto is a corporation, trust, limited liability company,  partnership, or similar entity, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on its behalf. Each Party shall, within 30 days after request, deliver to the other Party satisfactory evidence of such authority.

(b)    If this Lease is executed by more than one person or entity as "Lessee", each such person or entity shall be jointly and severally liable hereunder. It is agreed that any one of the named Lessees shall be empowered to execute any amendment to this Lease, or other document ancillary thereto and bind all of the named Lessees, and Lessor may rely on the same as if all of the named Lessees had executed such document.

(c)    This Lease may be executed by the Parties in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

45.    **Conflict.**  Any conflict between the printed provisions of this Lease and typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

46.    **Offer.**  Preparation of this Lease by either Party or their agent and submission of same to the other Party shall not be deemed an offer to lease to the other Party. This Lease is not intended to be binding until executed and delivered by all Parties hereto.

47.    **Amendments.** This Lease may be modified only in writing, signed by the Parties in interest at the time of the modification.  As long as they do not materially change Lessee's obligations hereunder, Lessee agrees to make such reasonable non-monetary modifications to this Lease as may be reasonably required by a Lender in connection with the obtaining of normal financing or refinancing of the Premises.

48.    **Waiver of Jury Trial.**   THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

49.    **Arbitration of Disputes.**  An Addendum requiring the Arbitration of disputes between the Parties and/or Brokers arising out of this Lease ☐ is ☒ is not  attached to this Lease.

50.    **Accessibility; Americans with Disabilities Act.**

(a)    The Premises ☒ have not undergone an inspection by a Certified Access Specialist (CASp). ☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises met all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq. ☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises did not meet all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq.

(b)    Since compliance with the Americans with Disabilities Act (ADA) is dependent upon Lessee's specific use of the Premises, Lessor makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation.  In the event that Lessee's use of the Premises requires modifications or additions to the Premises in order to be in ADA compliance, Lessee agrees to make any such necessary modifications and/or additions at Lessee's expense.

LESSOR AND LESSEE HAVE CAREFULLY READ AND REVIEWED THIS LEASE AND EACH TERM AND PROVISION CONTAINED HEREIN, AND BY THE EXECUTION OF THIS LEASE SHOW THEIR INFORMED AND VOLUNTARY CONSENT THERETO. THE PARTIES HEREBY AGREE THAT, AT THE TIME THIS LEASE IS EXECUTED, THE TERMS OF THIS LEASE ARE COMMERCIALLY REASONABLE AND EFFECTUATE THE INTENT AND PURPOSE OF LESSOR AND LESSEE WITH RESPECT TO THE PREMISES.

ATTENTION:  NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS LEASE OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1. SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS LEASE.

2. RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES.  SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PREMISES, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PREMISES FOR LESSEE'S INTENDED USE.

WARNING:  IF THE PREMISES IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THE LEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PREMISES IS LOCATED.

The parties hereto have executed this Lease at the place and on the dates specified above their respective signatures.

| | |
|---|---|
| Executed at:  Los Angeles | Executed at: |
| On:  1/23/10 | On: |
| By LESSOR: | By LESSEE: |
| Tanager Co., LLC, a California Limited Liability Company | Tak Ye International, Inc., a California Corporation |
| By: _Kenneth S. Millman_ | By: _(signature)_ |
| Name Printed: Kenneth S. Millman | Name Printed: Sain Chen |
| Title: Manager | Title: Manager |
| By: | By: |
| Name Printed: | Name Printed: |
| Title: | Title: |
| Address:  1880 Century Park East, Suite 607 | Address:  3014 Tanager Avenue |
| Los Angeles, California 90067 | Commerce, California 90040 |
| Telephone: (310)  552-2811 | Telephone:  (   ) |
| Facsimile: ( 310  552-2804 | Facsimile: (   ) |
| Email:  kmillman@millcoinv.com | Email: |
| Email:  smillman@millcoinv.com | Email: |
| Federal ID No. | Federal ID No. |

BROKER:                                                      BROKER:

INITIALS                                PAGE 12 OF 13                                INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                FORM STG-20-07/14E

| | |
|---|---|
| Att: _____ | Att: _____ |
| Title: _____ | Title: _____ |
| Address: _____ | Address: _____ |
| _____ | _____ |
| Telephone:(___) _____ | Telephone:(___) _____ |
| Facsimile:(___) _____ | Facsimile:(___) _____ |
| Email: _____ | Email: _____ |
| Federal ID No. _____ | Federal ID No. _____ |
| Broker/Agent BRE License #: _____ | Broker/Agent BRE License #: _____ |
| _____ | _____ |

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you
are utilizing the most current form:  AIR Commercial Real Estate Association,  500 N Brand Blvd, Suite 900, Glendale, CA 91203.
Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.

© Copyright 2001 - By AIR Commercial Real Estate Association.  All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

*CG*

INITIALS

PAGE 13 OF 13

*/h*

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

## ADDENDUM TO STANDARD INDUSTRIAL/COMMERCIAL
## SINGLE-TENANT LEASE – GROSS

Lessor:      Tanager Co., LLC, a California Limited Liability Company
Lessee:      Tak Ye International, Inc., a California Corporation

Premises:    3014 Tanager Avenue, Commerce, California 90040
Dated:       December 15, 2014

51.  Rental Adjustments:          The monthly Base Rent shall be adjusted as follows:

     Months 13-24:  $10,300.00 per month
     Months 25-36:  $10,609.00 per month
     Months 37-48:  $10,927.00 per month
     Months 49-60:  $11,255.00 per month

52.  Rental Abatement:            Notwithstanding anything to the contrary contained in the Lease, the Base Rent shall be abated for March 2018. Lessee shall be responsible for all other expenses as contained in the Lease.

53.  Maintenance/Repairs:         Notwithstanding anything to the contrary contained in Paragraph 7.1, Lessor, subject to Lessee's reimbursement of such costs, shall be responsible for performing maintenance and repair of the landscaping, parking areas, and HVAC systems and also contract for fire sprinkler monitoring including telephone lines needed for servicing said monitoring. Lessee shall, with each monthly payment of rent, reimburse Lessor for all reasonable expenses incurred for said maintenance, repair and monitoring.

54.  Base Real Estate Taxes:      Notwithstanding anything to the contrary contained in Paragraph 10, the base year Real Estate Taxes shall be $11,402.17.

55.  Early Termination Right:     Notwithstanding anything to the contrary contained in the Lease, Lessee shall have one (1) one-time right (the "Termination Right") to terminate the Lease effective as of 11:59:59 p.m. Pacific Standard Time on February 28, 2018 (the "Termination Date"), provided that, as a condition precedent to such early termination: (a) Lessor shall have received written notice (the "Termination Notice") from Lessee on or before August 31, 2017 (the "Outside Termination Notice Date"), stating that Lessee intends to terminate the Lease pursuant to the terms of this Section; and (b) Lessee shall cure any default under the Lease. Provided that Lessee performs all of the foregoing in accordance with the terms of this Section, the Lease shall automatically terminate and be of no further force or effect (except as set forth below) as of the Termination Date, and Lessor and Lessee shall thereafter be relieved of their respective obligations under the Lease; provided, however, and notwithstanding anything to the contrary contained in the Lease, Lessor shall have all the rights and remedies with respect to any obligation of Lessee under the Lease that accrues on or prior to the Termination Date and is not satisfied by Lessee on or prior to the Termination Date (e.g., Lessee's obligations regarding indemnity, insurance, maintenance and repair, surrender of the Premises and with respect to Lessee's payment of any Rent; without limiting the generality of the forgoing, such payment obligation of Lessee shall specifically include the payment of any amounts owed in connection with any future reconciliation of Common Area Operating Expenses in accordance with the terms of the Lease), and with respect to any obligations of Lessee that expressly survive the expiration or earlier termination of the Lease. In the event Lessee exercises the Termination Right in accordance with the terms herein, Lessee shall vacate the Premises and surrender and deliver exclusive

Initials                                    Initials

possession thereof to Lessor in accordance with the terms of the Lease. The Termination Right shall expire and be of no further force or effect in the event Lessee fails to deliver the Termination Notice to Lessor by the applicable Outside Termination Notice Date, time being of the essence with respect thereto. In the event Lessee exercises the Termination Right in accordance with the terms of this Section but retains possession of the Premises or any part thereof after the Termination Date, then, in addition to all other rights and remedies Lessor may have pursuant to the Lease and at law and equity, Lessee shall be deemed a holdover tenant and the provisions of Paragraph 26 of the Lease shall apply. The rights contained in this section shall be personal to the Named Lessee only and may only be exercised by the Named Lessee if the Named Lessee occupies the entire Premises at all times prior to the Termination Date (and may not be exercised by any assignee, sublessee or other transferee of or successor to the Named Lessee's interest in the Lease or to the Premises).



initials



initials

AIR COMMERCIAL REAL ESTATE ASSOCIATION
# GUARANTY OF LEASE

WHEREAS, Tanager Co., LLC, a California Limited Liability Company _____ , hereinafter "Lessor", and Tak Ye International, Inc., a California Corporation _____ , hereinafter "Lessee", are about to execute a document entitled "Lease" dated December 15, 2014 _____ concerning the premises commonly known as 3014 Tanager Avenue, Commerce, California 90040 _____

wherein Lessor will lease the premises to Lessee, and

WHEREAS Johnny Chek and Sain Chek, jointly and severally

hereinafter "Guarantors" have a financial interest in Lessee, and

WHEREAS, Lessor would not execute the Lease if Guarantors did not execute and deliver to Lessor this Guarantee of Lease.

NOW THEREFORE, in consideration of the execution of the foregoing Lease by Lessor and as a material inducement to Lessor to execute said Lease, Guarantors hereby jointly, severally, unconditionally and irrevocably guarantee the prompt payment by Lessee of all rents and all other sums payable by Lessee under said Lease and the faithful and prompt performance by Lessee of each and every one of the terms, conditions and covenants of said Lease to be kept and performed by Lessee.

It is specifically agreed that the terms of the foregoing Lease may be modified by agreement between Lessor and Lessee, or by a course of conduct, and said Lease may be assigned by Lessor or any assignee of Lessor without consent or notice to Guarantors and that this Guaranty shall guarantee the performance of said Lease as so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor to enforce any of the rights or remedies of the Lessor under said Lease, whether pursuant to the terms thereof or at law or in equity.

No notice of default need be given to Guarantors, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Lessee and/or against Guarantors following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease or at law or in equity.

Lessor shall have the right to proceed against Guarantors hereunder following any breach or default by Lessee without first proceeding against Lessee and without previous notice to or demand upon either Lessee or Guarantors.

Guarantors hereby waive (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty or the Lease, (d) any right to require the Lessor to proceed against the Lessee or any other Guarantor or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default any security deposit or other security it may hold under the Lease, (f) any right to require Lessor to proceed under any other remedy Lessor may have before proceeding against Guarantors, (g) any right of subrogation.

Guarantors do hereby subrogate all existing or future indebtedness of Lessee to Guarantors to the obligations owed to Lessor under the Lease and this Guaranty.

If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property for all of the obligations hereunder.

The obligations of Lessee under the Lease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantors hereunder to do and provide the same.

The term "Lessor" refers to and means the Lessor named in the Lease and also Lessor's successors and assigns. So long as Lessor's interest in the Lease, the leased premises or the rents, issues and profits therefrom, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantors of the Lessor's interest shall affect the continuing obligation of Guarantors under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment and their successors and assigns.

The term "Lessee" refers to and means the Lessee named in the Lease and also Lessee's successors and assigns.

In the event any action be brought by said Lessor against Guarantors hereunder to enforce the obligation of Guarantors hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the court.

If this Form has been filled in, it has been prepared for submission to your attorney for his approval. No representation or recommendation is made by the AIR Commercial Real Estate Association, the real estate broker or its agents or employees as to the legal sufficiency, legal effect, or tax consequences of this Form or the transaction relating thereto.

Executed at: Tak Ye International
On: 1/8/15
Address: 3014 Tanager Ave
Commerce, CA 90040

"GUARANTORS"

©1996 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM GR-1-12/96E

# FIRST AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL
# SINGLE-TENANT LEASE GROSS

**THIS FIRST AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE GROSS** dated, for reference purposes only as of February 10, 2020 (this "First Amendment"), is entered into by and between **TANAGER CO., LLC**, a California Limited Liability Company ("Lessor") and **TAK YE INTERNATIONAL, INC.** a California Corporation ("Lessee") with reference to the following:

## R E C I T A L S

**WHEREAS**, Lessor and Lessee entered into that certain Standard Industrial/Commercial Single-Lessee Lease Gross dated, for reference purposes only, as of December 15, 2015 (the "Lease"), by and between Lessor, as lessor, and Lessee, as lessee, for the lease of that certain premises consisting of approximately 17,875 rentable square feet of building located at 3014 Tanager Avenue, Commerce, California, as more particularly described in the Lease. All capitalized terms used herein, and not otherwise defined herein, shall have the meanings ascribed to such terms in the Lease; and

**WHEREAS**, Lessor and Lessee desire to amend the Lease in order to, among other things, extend the Term of the Lease and provide for the rent and other terms applicable in connection with such extension, all upon the terms and provisions set forth in this First Amendment.

**NOW, THEREFORE**, in consideration of the forgoing Recitals, which are incorporated herein by this reference, for the mutual promises that are contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree as follows:

1.     **Extension of Term.** Notwithstanding anything to the contrary contained in the Lease, Lessor and Lessee agree that the Term shall hereby be extended for a period of sixty (60) months ("Extended Term") commencing on March 1, 2020 and ending on February 28, 2025.

2.     **Base Rent for the Extended Term**. Notwithstanding anything to the contrary contained in the Lease, Base Rent during the Extended Term shall be $15,195.00 per month due and payable on the first day of each month. The Base Rent shall be subject to a three percent (3%) increase on each anniversary date of the Extended Term, as follows:

- March 1, 2021:     $15,650.85
- March 1, 2022:     $16,120.38
- March 1, 2023:     $16,603.99
- March 1, 2024:     $17,192.11

**3.      Rent Abatement.**  Provided that Lessee is not in Default under the terms of the Lease and this First Amendment, Lessee's Base Rent for May 2020 shall be abated.

**4.      Lessee's Estoppel**.  Lessee hereby certifies and acknowledges that, as of the date of Lessee's execution of this First Amendment: (a) Lessor is not in default in any respect under the Lease; (b) Lessee does not have any defenses to its obligations under the Lease and (c) there are no offsets against Rent.  Lessee acknowledges and agrees that: (i) the representations herein set forth constitute a material consideration to Lessor in entering into this First Amendment; (ii) such representations are being made by Lessee for the purposes of inducing Lessor to enter into this First Amendment and (iii) Lessor is relying on such representations in entering into this First Amendment.

**5.      Confidentiality**.  Lessor and Lessee hereby agree to keep the terms of the Lease and this First Amendment and the negotiation of the Lease and this First Amendment confidential, and neither party shall disseminate or disclose such information to third parties except with each party's financial, legal and space planning advisors and consultants in connection with the negotiation and documentation of this First Amendment.

**6.      Entire Agreement.**  This First Amendment contains the entire agreement and understanding between the parties concerning the subject matter of this First Amendment and supersedes all prior agreements, terms, understandings, conditions, representations and warranties, whether written or oral, concerning the matters that are the subject of this First Amendment.  Wherever possible, each term of this First Amendment shall be interpreted in such a manner as to be valid under applicable laws, rules, regulations and court authority, but if, notwithstanding the foregoing, any term of this First Amendment is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining terms of this First Amendment shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**7.      Ratification.**  Lessor and Lessee hereby ratify and confirm their respective rights and obligations under the Lease. In the event of any conflict between the terms of the Lease and the terms of this First Amendment, the terms of this First Amendment shall control.

**8.      Successors and Assigns.**  This First Amendment shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and assigns.

**9.      Headings.**  The headings to sections of this First Amendment are for convenient reference only and shall not be used in interpreting this First Amendment.

**10.      Counterparts.**  This First Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

11.     **Representations and Indemnities of Broker Relationships.** Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder in connection with this Lease, and that no one is entitled to any commission or finder's fee in connection herewith. Lessee and Lessor do hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses attorneys' fees reasonably incurred with respect thereto.

**IN WITNESS WHEREOF**, Lessor and Lessee have caused their duly authorized representatives to execute this First Amendment as of the date first above written.

**LESSOR:**

**TANAGER CO., LLC**

By: _____

Name:  Kenneth S. Millman
Title:  Manager

**LESSEE:**

**TAK YE INTERNATIONAL, INC.**
a California Corporation

By: _____

Name: Kin Wa Chek
Title:  President

## SECOND AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL
## SINGLE-TENANT LEASE GROSS

**THIS SECOND AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL
SINGLE-TENANT LEASE GROSS** (this "**Second Amendment**") is made as of May 15, 2020
by and between **TANAGER CO., LLC**, a California Limited Liability Company ("Lessor") and
**TAK YE INTERNATIONAL, INC.** a California Corporation ("Lessee").

### RECITALS

**WHEREAS**, Lessor and Lessee are parties to that certain Standard
Industrial/Commercial  Single-Tenant Lease Gross dated as of December 15, 2015 (the
"**Original Lease**") between Lessor and Lessee, as amended by that certain First Amendment to
Standard Industrial/Commercial  Single-Tenant Lease Gross dated as of February 10, 2020 (the
"**First Amendment**"; the Original Lease as amended by the First Amendment is hereinafter
referred to as the "**Lease**") between Lessor and Lessee for the lease of certain premises (the
"**Premises**") located at 3014 Tanager Avenue, Commerce, California (the "**Building**"),
containing approximately 17,875 rentable square feet, as more particularly described in the
Lease.

**WHEREAS**, Lessor and Lessee desire by this Second Amendment to amend the Lease in
order to (i) provide for a Deferred Base Rent (as hereinafter defined).

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and
for other good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, Lessor and Lessee agree that the Lease is amended as follows:

1.    **Definitions**.  Capitalized terms used herein and not otherwise defined herein
shall have the meanings ascribed to such terms in the Lease.  Unless the context clearly indicates
otherwise, all references to the "Lease" in the Lease and in this Second Amendment shall
hereinafter be deemed to refer to the Lease, as amended hereby.

2.    **Deferral of Rent**. Provided that no Breach by Lessee occurs under the Lease and
subject to Section 3 below, Lessee shall be entitled to defer $12,000.00 of Lessee's monthly
installments of Rent (the "**Deferred Rent**") for the period (the "**Deferral Period**") commencing
on May 1, 2020 and expiring on June 30, 2020 such that during the Deferral Period Lessee shall
pay $3,496.50 per month in Rent and Common Area Charges due under the Lease during the
Deferral Period.   During the Deferral Period, Lessee's Share of Common Area Operating
Expenses (which shall include increases above the Base Real Property Taxes and Insurance Cost
Increases) shall remain payable in full as set forth in the Lease.  Upon the occurrence of a Breach
by Lessee, in addition to any rights and remedies available to Lessor under the Lease, at law or in
equity, (a) all deferral of Base Rent shall cease, (b) the Rent payable by Lessee during the
remainder of the Deferral Period shall revert to the full Rent that would otherwise be payable
under the Lease in the absence of this Second Amendment, and (c) Lessee shall pay Lessor upon
demand all Rent previously deferred under this Section 2.

1

3.      **Repayment of Deferred Rent**. Commencing on January 1, 2021, in addition to, and not in lieu of, all Rent for which Lessee is responsible under the Lease, Lessee shall repay the Deferred Rent over the following twelve (12) months (i.e., from January 1, 2021 through December 31, 2021) (the "**Deferral Repayment Period**"), in twelve (12) equal monthly installments, payable on the first day of each month and due concurrently with Lessee's payments of Rent. Notwithstanding the foregoing to the contrary, Lessee shall have the right at any time prior to the end of the Deferral Repayment Period, to accelerate its repayment of the Deferred Rent by paying off the outstanding amount of Deferred Rent in full or making monthly payments in excess of the monthly installments of Deferred Rent, provided that Lessee notifies Lessor in writing (at the time it delivers such payment) that the same is intended as a "payment in full" for, or as excess funds to be applied toward, the outstanding amount of Deferred Rent.

4.      **Confidentiality**. Lessee understands and agrees that the granting of the deferral of Rent to Lessee hereunder is highly confidential and that neither Lessee nor any of its officers, directors, employees, representatives or agents shall disclose to any party (a) the fact that Lessor has granted any rental concessions to Lessee, or (b) any information regarding the type or amount of such rental concessions (collectively, the "**Confidential Information**"). Notwithstanding anything to the contrary set forth in this Section 4, Lessee may disclose the Confidential Information to its attorneys, financial advisors and accountants for the purpose of preparing tax returns or other governmentally required information or documents, or for business planning; provided, that, Lessee informs such recipients of the confidential nature of the Confidential Information and takes responsibility for such persons or entities not disclosing the Confidential Information to any other person or entity, other than as required by law.

5.      **Lessee's Estoppel**. Lessee hereby certifies and acknowledges that, as of the date of the mutual execution of this Second Amendment, (a) Lessor is not in default in any respect under the Lease; (b) Lessee does not have any defenses to its obligations under the Lease; (c) there are no offsets against Rent; and (d) Lessor has completed any improvements and paid any allowances required to be constructed or paid by Lessor in accordance with the terms of the Lease. Lessee acknowledges and agrees that: (i) the representations herein set forth constitute a material consideration to Lessor in entering into this Second Amendment; (ii) such representations are being made by Lessee for purposes of inducing Lessor to enter into this Second Amendment; and (iii) Lessor is relying on such representations in entering into this Second Amendment.

6.      **Entire Agreement**. This Second Amendment contains the entire agreement and understanding between the parties concerning the subject matter of this Second Amendment and supersedes all prior agreements, terms, understandings, conditions, representations and warranties, whether written or oral, concerning the matters that are the subject of this Second Amendment. Wherever possible, each term of this Second Amendment shall be interpreted in such a manner as to be valid under applicable laws, rules, regulations and court authority, but if, notwithstanding the foregoing, any term of this Second Amendment is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining terms of this Second

2

Amendment shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.    **Effect of Amendment**. Except as expressly modified herein, the Lease is and shall remain in full force and effect according to the terms thereof including the Guaranty of Lease. In the event of any conflict between the terms and conditions of the Lease, on the one hand, and the terms and conditions of this Second Amendment, on the other hand, the terms and conditions of this Second Amendment shall control. Notwithstanding the foregoing to the contrary, whether or not expressly modified by this Second Amendment, the provisions of the Lease are amended to the extent necessary to give effect to the purpose and intent of this Second Amendment.

8.    **Headings**.    The headings to sections of this Second Amendment are for convenient reference only and shall not be used in interpreting this Second Amendment.

9.    **Counterparts.**    This Second Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

[Signature Page Follows]

3

**IN WITNESS WHEREOF**, Lessor and Lessee have caused their duly authorized representatives to execute this Second Amendment as of the date first above written.

**LESSOR**:

**TANAGER CO., LLC,**
a California limited liability company

By: _____

Name: _____

Title: _____

**LESSEE**:

**TAK YE INTERNATIONAL, INC.,**
a California Corporation

By: _____

Name: Kin Wa Chek

Title: CEO

4

### THIRD AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE GROSS

**THIS THIRD AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE GROSS** dated, for reference purposes only as of February 24, 2025 (this "Third Amendment"), is entered into by and between **TANAGER CO., LLC,** a California Limited Liability Company ("Lessor") and **TAK YE INTERNATIONAL, INC.** a California Corporation ("Lessee") with reference to the following:

### R E C I T A L S

**WHEREAS,** Lessor and Lessee are parties to that certain Standard Industrial/Commercial Single-Tenant Lease Gross dated as of December 15, 2015 (the "**Original Lease**") between Lessor and Lessee, as amended by that certain First Amendment to Standard Industrial/Commercial Single-Tenant Lease Gross dated as of February 10, 2020 (the "**First Amendment**", as futher amended by that certain Second Amendment to Standard Industrial/Commercial Single-Tenant Lease Gross dated as of May 15, 2020 (the "**Second Amendment**"); the Original Lease as amended by the First Amendment and Second Amendment is hereinafter referred to as the "**Lease**" between Lessor and Lessee for the lease of certain premises (the "**Premises**") located at 3014 Tanager Avenue, Commerce, California (the "**Building**"), containing approximately 17,875 rentable square feet, as more particularly described in the Lease.

**WHEREAS**, Lessor and Lessee desire to amend the Lease in order to, among other things, extend the Term of the Lease and provide for the rent and other terms applicable in connection with such extension, all upon the terms and provisions set forth in this Third Amendment.

**NOW, THEREFORE**, in consideration of the forgoing Recitals, which are incorporated herein by this reference, for the mutual promises that are contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree as follows:

1.    **Extension of Term.**  Notwithstanding anything to the contrary contained in the Lease, Lessor and Lessee agree that the Term shall hereby be extended for a period of forty-eight (48) months ("Extended Term") commencing on March 1, 2025 and ending on February 28, 2029.

2.    **Base Rent for the Extended Term**.  Notwithstanding anything to the contrary contained in the Lease, Base Rent during the Extended Term shall be $19,662.50 per month due and payable on the first day of each month. The Base Rent shall be subject to a four percent (4%) increase on each anniversary date of the Extended Term, as follows:

- March 1, 2026:    $20,449.00
- March 1, 2027:    $21,266.96
- March 1, 2028:    $22,117.64

3.  **Security Deposit**. Lessor acknowledges that it is currently holding a Security Deposit in the amount of $28,712.76.

4.  **Lessee's Estoppel.** Lessee hereby certifies and acknowledges that, as of the date of Lessee's execution of this Third Amendment: (a) Lessor is not in default in any respect under the Lease; (b) Lessee does not have any defenses to its obligations under the Lease and (c) there are no offsets against Rent. Lessee acknowledges and agrees that: (i) the representations herein set forth constitute a material consideration to Lessor in entering into this Third Amendment; (ii) such representations are being made by Lessee for the purposes of inducing Lessor to enter into this Third Amendment and (iii) Lessor is relying on such representations in entering into this Third Amendment.

5.  **Confidentiality**. Lessor and Lessee hereby agree to keep the terms of the Lease and this Third Amendment and the negotiation of the Lease and this Third Amendment confidential, and neither party shall disseminate or disclose such information to third parties except with each party's financial, legal and space planning advisors and consultants in connection with the negotiation and documentation of this Third Amendment.

6.  **Entire Agreement.** This Third Amendment contains the entire agreement and understanding between the parties concerning the subject matter of this Third Amendment and supersedes all prior agreements, terms, understandings, conditions, representations and warranties, whether written or oral, concerning the matters that are the subject of this Third Amendment. Wherever possible, each term of this Third Amendment shall be interpreted in such a manner as to be valid under applicable laws, rules, regulations and court authority, but if, notwithstanding the foregoing, any term of this Third Amendment is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining terms of this Third Amendment shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.  **Ratification.** Lessor and Lessee hereby ratify and confirm their respective rights and obligations under the Lease. In the event of any conflict between the terms of the Lease and the terms of this Third Amendment, the terms of this Third Amendment shall control.

8.  **Successors and Assigns.** This Third Amendment shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and assigns.

9.  **Headings.** The headings to sections of this Third Amendment are for convenient reference only and shall not be used in interpreting this Third Amendment.

10.    **Counterparts.** This Third Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

11.    **Representations and Indemnities of Broker Relationships.** Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder in connection with this Lease, and that no one is entitled to any commission or finder's fee in connection herewith. Lessee and Lessor do hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses attorneys' fees reasonably incurred with respect thereto.

**IN WITNESS WHEREOF**, Lessor and Lessee have caused their duly authorized representatives to execute this Third Amendment as of the date Third above written.

**LESSOR:**

**TANAGER CO., LLC**

By:  _____

Name:  Samantha Millman
Title:  Manager

**LESSEE:**

**TAK YE INTERNATIONAL, INC.**
a California Corporation

By:  _____

Name:  Kin Wa Chek
Title:  President

**EXHIBIT B**

**Secretary of State**
Statement of No Change
(Limited Liability Company)

**LLC-12NC**

21-C99895

# FILED

In the office of the Secretary of State
of the State of California

JUN 14, 2021

*This Space For Office Use Only*

**IMPORTANT — Read instructions before completing this form.  This form may be used only if a complete Statement of Information has been filed previously and there has been no change.**

**Filing Fee − $20.00**

**Copy Fee −** $1.00;
Certification Fee - $5.00 plus copy fee

---

1.  **Limited Liability Company Name** (Enter the **exact** name of the LLC as it is recorded with the California Secretary of State.  Note: If you registered in California using an alternate name, see instructions.)

TANAGER CO., LLC

---

| 2.  **12-Digit Secretary of State File Number** | 3.  **State, Foreign Country or Place of Organization** (only if formed outside of California) |
|---|---|
| 200519910041 | CALIFORNIA |

---

4.  **No Change Statement** (Do not alter the No Change Statement.  If there has been any change, please complete a Statement of Information (Form LLC-12).)

*There has been no change in any of the information contained in the previous complete Statement of Information filed with the California Secretary of State.*

---

5.   The information contained herein is true and correct.

| 06/14/2021 | Kenneth Millman | Manager | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

---

**Return Address (Optional)**   (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document, enter the name of a person or company and the mailing address. This information will become public when filed. (SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

2017 California Secretary of State
www.sos.ca.gov/business/be

**EXHIBIT C**

David M. Cohen, Esq. (SBN: 160535)
    david@davidcohen-law.com
DAVID M. COHEN, A Professional Law Corporation
21021 Ventura Blvd., Suite 330
Woodland Hills, California 91364
Telephone: (818) 855-5905
Facsimile: (818) 855-5915

Attorneys for Plaintiff Tanager Co., LLC, a California
limited liability company

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/15/2025 11:39 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| Tanager Co., LLC, a California limited liability company, | Case No. 25STCV20894 |
| Plaintiff, | **VERIFIED COMPLAINT FOR UNLAWFUL DETAINER** |
| vs. | [Unlimited Jurisdiction] |
| Tak Ye International, Inc., a California corporation; and DOES 1 through 10, inclusive, | |
| Defendant. | |

Tanager Co., LLC, a California limited liability company ("Plaintiff") alleges as follows:

## CAUSE OF ACTION FOR UNLAWFUL DETAINER

(Against All Defendants)

**A.    The Parties.**

1.    At all times mentioned herein, Plaintiff is and was a California limited liability company, lawfully doing business in the State of California, County of Los Angeles.

2.    Plaintiff is informed and believes that, at all times mentioned herein, defendant Tak Ye International, Inc. (collectively with the below described DOE defendants, "Defendants") is and was a California corporation doing business in the State of California, County Los Angeles.

3.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff, who

Case No.

1  therefore sues such Defendants by such fictitious names.  Plaintiff alleges, on information and

2  belief, that defendants Does 1 through 10, inclusive, are in some manner in possession of the

3  Premises set forth herein and/or responsible and/or liable for the damages and/or action alleged

4  herein.  Plaintiff will amend this Complaint to show and/or add the true names and capacities of

5  such fictitiously named defendants when the same has been ascertained.

6        4.      Plaintiff alleges on information and belief that at all times mentioned herein, each of

7  the Defendants was and now is the agent, servant, employee, representative and/or alter ego of each

8  of the other Defendants, and in doing the things hereinafter mentioned, was acting within the scope

9  of his/her authority as such agent, servant, employee, representative and/or alter ego, with the

10  permission and consent of the remaining defendants.

11  **B.    <u>The Lease</u>.**

12        5.      On or about December 15, 2015, Plaintiff, as Landlord, and Defendants, as Tenant,

13  entered into a written Standard Industrial/Commercial Single-Tenant Lease – Gross (as amended

14  on February 10, 2020, May 15, 2020, and February 24, 2025, the "Lease") whereby Defendants

15  leased the premises located at 3014 Tanager Ave., Commerce, CA 90040 (the "Premises").  A true

16  and correct copy of the Lease is attached hereto as Exhibit "A" and is incorporated herein by this

17  reference.

18        6.      Plaintiff currently is the owner of the Premises and hold all of the right, title and

19  interest of the Lessor under the Lease.

20        7.      The Lease at Article 31 provides that the prevailing party in any litigation under the

21  Lease shall be entitled to recover its attorneys' fees and court costs from the losing party.

22        8.      Plaintiff has retained the firm of David M. Cohen, A Professional Law Corporation

23  to protect its rights under the Lease, and has incurred and will continue to incur an unascertained

24  amount of reasonable attorneys' fees and costs.  Plaintiff will seek those amounts at the time of

25  trial.

26

27

28

**C.      Non-Payment of Rent/Termination of Lease.**

9.      As more fully set forth in the Lease, Defendants are required during the term of the Lease to pay Rent.  The amounts due on a monthly basis are herein after referred to as "Rent" and currently total $19,934.88.

10.     Notwithstanding the requirements of the Lease, Defendants failed and refused to make all the payments of Rent due under the Lease.

11.     On July 3, 2025, Plaintiff duly and lawfully served a Three (3) Business Day Notice to Pay Rent or Surrender Possession (the "Notice") on Defendants in accordance with the provisions of the Lease and California Code of Civil Procedure Sections 1161, 1161.1 and 1162 by delivery to the Premises and posting it in a conspicuous place, there being no one of suitable age and discretion present to receive it.  A copy of the Notice was mailed that same day via US First Class Mail, postage prepaid, to Defendants at the Premises.  In addition, courtesy copies of the Notice were sent by FedEx to all known addresses that might result in Defendants receiving the Notice.  The Notice required Defendants to pay the sum of $41,863.25, the amount of Rent outstanding under the Lease through July 31, 2025 for the past year, or quit the Premises within three (3) business days after service of the Notice.  The Notice further set forth Plaintiff's election to declare a forfeiture of the Lease.  A true and correct copy of the Notice with its proof of service is attached hereto as Exhibit "B" and incorporated herein by this reference.

12.     More than three (3) business days have elapsed since the service of the Notice, and there was no lawful tender of the amounts set forth therein.  Defendants are still in possession of the Premises.

13.     Plaintiff is informed and believes that the daily rental value of the Premises totals $655.39 per day.

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1.      For immediate restitution and possession of the Premises;

2.      For an order that the Lease is forfeited and terminated;

3.      For an order that Defendants' right to possession of the Premises has been terminated;

1    4.    For past due Rent totaling $41,863.25, and damages according to proof but in no

2   case less than $655.39 per day for each day Defendants continue in possession of the Premises

3   from August 1, 2025 up to the time of Judgment;

4    5.    For attorneys' fees and costs of suit incurred herein; and

5    6.    For such other and further relief as the Court deems just and proper.

6   Dated:  July 15, 2025                    DAVID M. COHEN, A Professional Law Corporation

7

8                                  By:  _____

9                                       David M. Cohen
                                        Attorneys for Plaintiff Tanager Co., LLC,
10                                       a California limited liability company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR UNLAWFUL DETAINER                                    Case No.

6224.001

1

## **VERIFICATION**

2          I have read the foregoing **VERIFIED COMPLAINT FOR UNLAWFUL DETAINER**

3   and know its contents.  The matters stated in it are true to the best of my own knowledge except as
to those matters which are stated on information and belief, and as to those matters I believe them

4   to be true.

5   (Check applicable paragraph)

6   ____    I am a party to this action.

7

8     _X_  I the Manager of Tanager Co., LLC, a California limited liability company, a party to this
action, and am authorized to make this verification for and on its behalf, and I make this

9   verification for that reason.  I have responsibility for the day-to-day operations of the premises
which are the subject of the pending unlawful detainer action.

10

11   ____    I am one of the attorneys for plaintiff.  Such party is absent from the county of aforesaid
where such attorneys have their office, and I make this verification for and on its behalf, and I

12   make this verification for that reason.

13

14          I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

15          Executed on July 15, 2025, at Los Angeles, California

16

17   _____

18   Kenneth Millman

19

20

21

22

23

24

25

26

27

28

6224.001

EXHIBIT A

EXHIBIT B



## AIR COMMERCIAL REAL ESTATE ASSOCIATION
# STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE -- GROSS
### (DO NOT USE THIS FORM FOR MULTI-TENANT BUILDINGS)

1.      **Basic Provisions ("Basic Provisions").**
    1.1     **Parties:** This Lease ("**Lease**"), dated for reference purposes only * December 15, 2015                                ,
is made by and between    Tanager Co., LLC, a California Limited Liability Company
_____ ("**Lessor**")
and   Tak Ye International, Inc., a California Corporation
_____ ("**Lessee**"),
(collectively the "**Parties**," or individually a "**Party**").
    1.2     **Premises:** That certain real property, including all improvements therein or to be provided by Lessor under the terms of this Lease,
and commonly known as   3014 Tanager Avenue, Commerce
located in the County of   Los Angeles                                , State of    California                                 ,
and generally described as (describe briefly the nature of the property and, if applicable, the "**Project**", if the property is located within a Project)
  an approximately 17,875 square foot industrial building situated on approximately 32,234 square feet of land

_____
_____ ("**Premises**"). (See also Paragraph 2)
    1.3     **Term:** five (5)        years and        0        months ("**Original Term**") commencing    March 1, 2015
("**Commencement Date**") and ending    February 28, 2020                                     ("**Expiration Date**").
(See also Paragraph 3)
    1.4     **Early Possession:** If the Premises are available Lessee may have non-exclusive possession of the Premises commencing
February 16, 2015                                     ("**Early Possession Date**"). (See also Paragraphs 3.2 and 3.3)
    1.5     **Base Rent:** $ 10,000.00       per month ("**Base Rent**"), payable on the first (1st)
day of each month commencing April 1, 2015
_____ . (See also Paragraph 4)
☒ If this box is checked, there are provisions in this Lease for the Base Rent to be adjusted. See Paragraph    51
    1.6     **Base Rent and Other Monies Paid Upon Execution:**
        (a)     **Base Rent:** $ 5,000.00                for the period March 1, 2015 - March 31, 2015 (One-half of the
Base Rent for March 2015 has been abated.)
        (b)     **Security Deposit:** $ 28,712.76 (existing)          ("**Security Deposit**"). (See also Paragraph 5)
        (c)     **Association Fees:** $_____   for the period _____
        (d)     **Other:** $_____   for _____
_____ .
        (e)     **Total Due Upon Execution of this Lease:** $ 5,000.00
    1.7     **Agreed Use:**  warehousing and distribution of food related products.
_____
_____ (See also Paragraph 6)
    1.8     **Insuring Party:** Lessor is the "**Insuring Party**". The annual "**Base Premium**" is $ 2,002.20       (See also Paragraph 8)
    1.9     **Real Estate Brokers:** (See also Paragraph 15 and 25)
        **(a) Representation:** The following real estate brokers (the "**Brokers**") and brokerage relationships exist in this transaction (check
applicable boxes):
☐ _____ represents Lessor exclusively ("**Lessor's Broker**");
☐ _____ represents Lessee exclusively ("**Lessee's Broker**"); or
☐ _____ represents both Lessor and Lessee ("**Dual Agency**").
        **(b) Payment to Brokers:** Upon execution and delivery of this Lease by both Parties, Lessor shall pay to the Brokers the brokerage
fee agreed to in a separate written agreement (or if there is no such agreement, the sum of _____ or _____ % of the total Base
Rent) for the brokerage services rendered by the Brokers.
    1.10    **Guarantor.** The obligations of the Lessee under this Lease are to be guaranteed by _____ Sain Chek
_____ ("**Guarantor**"). (See also Paragraph 37)
    1.11    **Attachments.** Attached hereto are the following, all of which constitute a part of this Lease:
☒ an Addendum consisting of Paragraphs       51       through       55       ;
☐ a plot plan depicting the Premises;
☐ a current set of the Rules and Regulations;
☐ a Work Letter;
☐ a energy disclosure addendum is attached;
☒ other (specify): Guaranty of Lease
_____
_____ .

**INITIALS**                    PAGE 1 OF 13                    **INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM STG-20-07/14E

2.    **Premises.**

2.1    **Letting.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Lease. While the approximate square footage of the Premises may have been used in the marketing of the Premises for purposes of comparison, the Base Rent stated herein is NOT tied to square footage and is not subject to adjustment should the actual size be determined to be different. **Note: Lessee is advised to verify the actual size prior to executing this Lease.**

2.2    **Condition.** Lessor shall deliver the Premises to Lessee broom clean and free of debris on the Commencement Date or the Early Possession Date, whichever first occurs ("**Start Date**"), and, so long as the required service contracts described in Paragraph 7.1(b) below are obtained by Lessee and in effect within thirty days following the Start Date, warrants that the existing electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ("**HVAC**"), loading doors, sump pumps, if any, and all other such elements in the Premises, other than those constructed by Lessee, shall be in good operating condition on said date and that the surface and structural elements of the roof, bearing walls and foundation of any buildings on the Premises (the "**Building**") shall be free of material defects, and that the Unit does not contain hazardous levels of any mold or fungi defined as toxic under applicable state or federal law. If a non-compliance with said warranty exists as of the Start Date, or if one of such systems or elements should malfunction or fail within the appropriate warranty period, Lessor shall, as Lessor's sole obligation with respect to such matter, except as otherwise provided in this Lease, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, malfunction or failure, rectify same at Lessor's expense. The warranty periods shall be as follows: (i) 6 months as to the HVAC systems, and (ii) 30 days as to the remaining systems and other elements of the Building. If Lessee does not give Lessor the required notice within the appropriate warranty period, correction of any such non-compliance, malfunction or failure shall be the obligation of Lessee at Lessee's sole cost and expense, except for the roof, foundations, and bearing walls which are handled as provided in paragraph 7. Lessor also warrants, that unless otherwise specified in writing, Lessor is unaware of (i) any recorded Notices of Default affecting the Premise; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

2.3    **Compliance.** Lessor warrants that to the best of its knowledge the improvements on the Premises comply with the building codes, applicable laws, covenants or restrictions of record, regulations, and ordinances ("**Applicable Requirements**") that were in effect at the time that each improvement, or portion thereof, was constructed. Said warranty does not apply to the use to which Lessee will put the Premises, modifications which may be required by the Americans with Disabilities Act or any similar laws as a result of Lessee's use (see Paragraph 50), or to any Alterations or Utility Installations (as defined in Paragraph 7.3(a)) made or to be made by Lessee. **NOTE: Lessee is responsible for determining whether or not the Applicable Requirements, and especially the zoning, are appropriate for Lessee's intended use, and acknowledges that past uses of the Premises may no longer be allowed.** If the Premises do not comply with said warranty, Lessor shall, except as otherwise provided, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, rectify the same at Lessor's expense. If Lessee does not give Lessor written notice of a non-compliance with this warranty within 6 months following the Start Date, correction of that non-compliance shall be the obligation of Lessee at Lessee's sole cost and expense. If the Applicable Requirements are hereafter changed so as to require during the term of this Lease the construction of an addition to or an alteration of the Premises and/or Building, the remediation of any Hazardous Substance, or the reinforcement or other physical modification of the Unit, Premises and/or Building ("**Capital Expenditure**"), Lessor and Lessee shall allocate the cost of such work as follows:

(a) Subject to Paragraph 2.3(c) below, if such Capital Expenditures are required as a result of the specific and unique use of the Premises by Lessee as compared with uses by tenants in general, Lessee shall be fully responsible for the cost thereof, provided, however that if such Capital Expenditure is required during the last 2 years of this Lease and the cost thereof exceeds 6 months' Base Rent, Lessee may instead terminate this Lease unless Lessor notifies Lessee, in writing, within 10 days after receipt of Lessee's termination notice that Lessor has elected to pay the difference between the actual cost thereof and an amount equal to 6 months' Base Rent. If Lessee elects termination, Lessee shall immediately cease the use of the Premises which requires such Capital Expenditure and deliver to Lessor written notice specifying a termination date at least 90 days thereafter. Such termination date shall, however, in no event be earlier than the last day that Lessee could legally utilize the Premises without commencing such Capital Expenditure.

(b) If such Capital Expenditure is not the result of the specific and unique use of the Premises by Lessee (such as, governmentally mandated seismic modifications), then Lessor shall pay for such Capital Expenditure and Lessee shall only be obligated to pay, each month during the remainder of the term of this Lease or any extension thereof, on the date on which the Base Rent is due, an amount equal to 1/144th of the portion of such costs reasonably attributable to the Premises. Lessee shall pay Interest on the balance but may prepay its obligation at any time. If, however, such Capital Expenditure is required during the last 2 years of this Lease or if Lessor reasonably determines that it is not economically feasible to pay its share thereof, Lessor shall have the option to terminate this Lease upon 90 days prior written notice to Lessee unless Lessee notifies Lessor, in writing, within 10 days after receipt of Lessor's termination notice that Lessee will pay for such Capital Expenditure. If Lessor does not elect to terminate, and fails to tender its share of any such Capital Expenditure, Lessee may advance such funds and deduct same, with Interest, from Rent until Lessor's share of such costs have been fully paid. If Lessee is unable to finance Lessor's share, or if the balance of the Rent due and payable for the remainder of this Lease is not sufficient to fully reimburse Lessee on an offset basis, Lessee shall have the right to terminate this Lease upon 30 days written notice to Lessor.

(c) Notwithstanding the above, the provisions concerning Capital Expenditures are intended to apply only to non-voluntary, unexpected, and new Applicable Requirements. If the Capital Expenditures are instead triggered by Lessee as a result of an actual or proposed change in use, change in intensity of use, or modification to the Premises then, and in that event, Lessee shall either: (i) immediately cease such changed use or intensity of use and/or take such other steps as may be necessary to eliminate the requirement for such Capital Expenditure, or (ii) complete such Capital Expenditure at its own expense. Lessee shall not, however, have any right to terminate this Lease.

2.4    **Acknowledgements.** Lessee acknowledges that: (a) it has been given an opportunity to inspect and measure the Premises, (b) it has been advised by Lessor and/or Brokers to satisfy itself with respect to the size and condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Lessee's intended use, (c) Lessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises, (d) it is not relying on any representation as to the size of the Premises made by Brokers or Lessor, (e) the square footage of the Premises was not material to Lessee's decision to lease the Premises and pay the Rent stated herein, and (f) neither Lessor, Lessor's agents, nor Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this Lease. In addition, Lessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Lessee's ability to honor the Lease or suitability to occupy the Premises, and (ii) it is Lessor's sole responsibility to investigate the financial capability and/or suitability of all proposed tenants.

2.5    **Lessee as Prior Owner/Occupant.** The warranties made by Lessor in Paragraph 2 shall be of no force or effect if immediately prior to the Start Date Lessee was the owner or occupant of the Premises. In such event, Lessee shall be responsible for any necessary corrective work.

3.    **Term.**

3.1    **Term.** The Commencement Date, Expiration Date and Original Term of this Lease are as specified in Paragraph 1.3.

3.2    **Early Possession.** Any provision herein granting Lessee Early Possession of the Premises is subject to and conditioned upon the Premises being available for such possession prior to the Commencement Date. Any grant of Early Possession only conveys a non-exclusive right to occupy the Premises. If Lessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such Early Possession. All other terms of this Lease (including but not limited to the obligations to pay Real Property Taxes and insurance premiums and to maintain the Premises) shall be in effect during such period. Any such Early Possession shall not affect the Expiration Date.

3.3    **Delay In Possession.** Lessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises to Lessee by the Commencement Date. If, despite said efforts, Lessor is unable to deliver possession by such date, Lessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or change the Expiration Date. Lessee shall not, however, be obligated to pay Rent or perform its other obligations until Lessor delivers possession of the Premises and any period of rent abatement that Lessee would otherwise have enjoyed shall run from the date of delivery of possession and continue for a period equal to what Lessee would otherwise have enjoyed under the terms hereof, but minus any days of delay caused by the acts or omissions of Lessee. If possession is not delivered within 60 days after the Commencement Date, as the same may be extended under the terms of any Work Letter executed by Parties, Lessee may, at its option, by notice in writing within 10 days after the end of such 60 day period, cancel this Lease, in which event the Parties shall be discharged from all obligations hereunder. If such written notice is not received by Lessor within said 10 day period, Lessee's right to cancel shall terminate. If possession of the Premises is not delivered within 120 days after the Commencement Date, this Lease shall terminate unless other agreements are reached between Lessor and Lessee, in writing.

3.4    **Lessee Compliance.** Lessor shall not be required to deliver possession of the Premises to Lessee until Lessee complies with its obligation to provide evidence of insurance (Paragraph 8.5). Pending delivery of such evidence, Lessee shall be required to perform all of its obligations under this Lease from and after the Start Date, including the payment of Rent, notwithstanding Lessor's election to withhold possession pending receipt of such evidence of insurance. Further, if Lessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Lessor may elect to withhold possession until such conditions are satisfied.

**PAGE 2 OF 13**

INITIALS

INITIALS

4.    **Rent.**

4.1.    **Rent Defined.**  All monetary obligations of Lessee to Lessor under the terms of this Lease (except for the Security Deposit) are deemed to be rent ("**Rent**").

4.2    **Payment.**  . Lessee shall cause payment of Rent to be received by Lessor in lawful money of the United States, without offset or deduction (except as specifically permitted in this Lease), on or before the day on which it is due. All monetary amounts shall be rounded to the nearest whole dollar. In the event that any invoice prepared by Lessor is inaccurate such inaccuracy shall not constitute a waiver and Lessee shall be obligated to pay the amount set forth in this Lease.  Rent for any period during the term hereof which is for less than one full calendar month shall be prorated based upon the actual number of days of said month. Payment of Rent shall be made to Lessor at its address stated herein or to such other persons or place as Lessor may from time to time designate in writing. Acceptance of a payment which is less than the amount then due shall not be a waiver of Lessor's rights to the balance of such Rent, regardless of Lessor's endorsement of any check so stating.  In the event that any check, draft, or other instrument of payment given by Lessee to Lessor is dishonored for any reason, Lessee agrees to pay to Lessor the sum of $25 in addition to any Late Charge and Lessor, at its option, may require all future payments to be made by Lessee to be by cashier's check.  Payments will be applied first to accrued late charges and attorney's fees, second to accrued interest, then to Base Rent, Insurance and Real Property Taxes, and any remaining amount to any other outstanding charges or costs.

4.3    **Association Fees.**  In addition to the Base Rent, Lessee shall pay to Lessor each month an amount equal to any owner's association or condominium fees levied or assessed against the Premises. Said monies shall be paid at the same time and in the same manner as the Base Rent.

5.    **Security Deposit.**  Lessee shall deposit with Lessor upon  execution hereof the Security Deposit as security for Lessee's faithful performance of its obligations under this Lease. If Lessee fails to pay Rent, or otherwise Defaults under this Lease, Lessor may use, apply or retain all or any portion of said Security Deposit for the payment of any amount already due Lessor, for Rents which will be due in the future, and/ or to reimburse or compensate Lessor for any liability, expense, loss or damage which Lessor may suffer or incur by reason thereof.  If Lessor uses or applies all or any portion of the Security Deposit, Lessee shall within 10 days after written request therefor deposit monies with Lessor sufficient to restore said Security Deposit to the full amount required by this Lease. If the Base Rent increases during the term of this Lease, Lessee shall, upon written request from Lessor, deposit additional monies with Lessor so that the total amount of the Security Deposit shall at all times bear the same proportion to the increased Base Rent as the initial Security Deposit bore to the initial Base Rent.  Should the Agreed Use be amended to accommodate a material change in the business of Lessee or to accommodate a sublessee or assignee, Lessor shall have the right to increase the Security Deposit to the extent necessary, in Lessor's reasonable judgment, to account for any increased wear and tear that the Premises may suffer as a result thereof.  If a change in control of Lessee occurs during this Lease and following such change the financial condition of Lessee is, in Lessor's reasonable judgment, significantly reduced, Lessee shall deposit such additional monies with Lessor as shall be sufficient to cause the Security Deposit to be at a commercially reasonable level based on such change in financial condition.  Lessor shall not be required to keep the Security Deposit separate from its general accounts. Within 90 days after the expiration or termination of this Lease, Lessor shall return that portion of the Security Deposit not used or applied by Lessor. No part of the Security Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any monies to be paid by Lessee under this Lease.

6.    **Use.**

6.1    **Use.**  Lessee shall use and occupy the Premises only for the Agreed Use, or any other legal use which is reasonably comparable thereto, and for no other purpose. Lessee shall not use or permit the use of the Premises in a manner that is unlawful, creates damage, waste or a nuisance, or that disturbs occupants of or causes damage to neighboring premises or properties. Other than guide, signal and seeing eye dogs, Lessee shall not keep or allow in the Premises any pets, animals, birds, fish, or reptiles. Lessor shall not unreasonably withhold or delay its consent to any written request for a modification of the Agreed Use, so long as the same will not impair the structural integrity of the improvements on the Premises or the mechanical or electrical systems therein, and/or is not significantly more burdensome to the Premises.  If Lessor elects to withhold consent, Lessor shall within 7 days after such request give written notification of same, which notice shall include an explanation of Lessor's objections to the change in the Agreed Use.

6.2    **Hazardous Substances.**

(a) **Reportable Uses Require Consent.**  The term "**Hazardous Substance**" as used in this Lease shall mean any product, substance, or waste whose presence, use, manufacture, disposal, transportation, or release, either by itself or in combination with other materials expected to be on the Premises, is either: (i) potentially injurious to the public health, safety or welfare, the environment or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for potential liability of Lessor to any governmental agency or third party under any applicable statute or common law theory. Hazardous Substances shall include, but not be limited to, hydrocarbons, petroleum, gasoline, and/or crude oil or any products, by-products or fractions thereof.  Lessee shall not engage in any activity in or on the Premises which constitutes a Reportable Use of Hazardous Substances without the express prior written consent of Lessor and timely compliance (at Lessee's expense) with all Applicable Requirements. "**Reportable Use**" shall mean (i) the installation or use of any above or below ground storage tank, (ii) the generation, possession, storage, use, transportation, or disposal of a Hazardous Substance that requires a permit from, or with respect to which a report, notice, registration or business plan is required to be filed with, any governmental authority, and/or (iii) the presence at the Premises of a Hazardous Substance with respect to which any Applicable Requirements requires that a notice be given to persons entering or occupying the Premises or neighboring properties. Notwithstanding the foregoing,  Lessee may use any ordinary and customary materials reasonably required to be used in the normal course of the Agreed  Use, ordinary office supplies (copier toner, liquid paper, glue, etc.) and common household cleaning materials, so long as such use is in compliance with all Applicable Requirements, is not a Reportable Use, and does not expose the Premises or neighboring property to any meaningful risk of contamination or damage or expose Lessor to any liability therefor.  In addition, Lessor may condition its consent to any Reportable Use upon receiving such additional assurances as Lessor reasonably deems necessary to protect itself, the public, the Premises and/or the environment against damage, contamination, injury and/or liability, including, but not limited to, the installation (and removal on or before Lease expiration or termination) of protective modifications (such as concrete encasements) and/or increasing the Security Deposit.

(b) **Duty to Inform Lessor.**  If Lessee knows, or has reasonable cause to believe, that a Hazardous Substance has come to be located in, on, under or about the Premises, other than as previously consented to by Lessor, Lessee shall immediately give written notice of such fact to Lessor, and provide Lessor with a copy of any report, notice, claim or other documentation which it has concerning the presence of such Hazardous Substance.

(c) **Lessee Remediation.**  Lessee shall not cause or permit any Hazardous Substance to be spilled or released in, on, under, or about the Premises (including through the plumbing or sanitary sewer system) and shall promptly, at Lessee's expense, comply with all Applicable Requirements and take all investigatory and/or remedial action reasonably recommended, whether or not formally ordered or required, for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises or neighboring properties, that was caused or materially contributed to by Lessee, or pertaining to or involving any Hazardous Substance brought onto the Premises during the term of this Lease, by or for Lessee, or any third party.

(d) **Lessee Indemnification.**  Lessee shall indemnify,  defend and hold Lessor, its agents, employees, lenders and ground lessor, if any, harmless from and against any and all loss of rents and/or damages, liabilities, judgments, claims, expenses, penalties, and attorneys' and consultants' fees arising out of or involving any Hazardous Substance brought onto the Premises by or for Lessee, or any third party (provided, however, that Lessee shall have no liability under this Lease with respect to underground migration of any Hazardous Substance under the Premises from adjacent properties not caused or contributed to by Lessee).  Lessee's obligations shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or suffered by Lessee, and the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease.  **No termination, cancellation or release agreement entered into by Lessor and Lessee shall release Lessee from its obligations under this Lease with respect to Hazardous Substances, unless specifically so agreed by Lessor in writing at the time of such agreement.**

(e) **Lessor Indemnification.**  Except as otherwise provided in paragraph 8.7, Lessor and its successors and assigns shall indemnify, defend, reimburse and hold Lessee, its employees and lenders, harmless from and against any and all environmental damages, including the cost of remediation, which result from Hazardous Substances which existed on the Premises prior to Lessee's occupancy or which are caused by the gross negligence or willful misconduct of Lessor, its agents or employees. Lessor's obligations, as and when required by the Applicable Requirements, shall include, but not be limited to, the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease.

(f) **Investigations and Remediations.**  Lessor shall retain the responsibility and pay for any investigations or remediation measures required by governmental entities having jurisdiction with respect to the existence of Hazardous Substances on the Premises prior to Lessee's occupancy, unless such remediation measure is required as a result of Lessee's use (including "Alterations", as defined in paragraph 7.3(a) below) of the Premises, in which event Lessee shall be responsible for such payment. Lessee shall cooperate fully in any such activities at the request of Lessor, including allowing Lessor and Lessor's agents to have reasonable access to the Premises at reasonable times in order to carry out Lessor's investigative and remedial responsibilities.

(g) **Lessor Termination Option.**  If a Hazardous Substance Condition (see Paragraph 9.1(e)) occurs during the term of this Lease, unless Lessee is legally responsible therefor (in which case Lessee shall make the investigation and remediation thereof required by the Applicable

**INITIALS**                                                                                                    **INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                      FORM STG-20-07/14E

Requirements and this Lease shall continue in full force and effect, but subject to Lessor's rights under Paragraph 6.2(d) and Paragraph 13), Lessor may, at Lessor's option, either (i) investigate and remediate such Hazardous Substance Condition, if required, as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (ii) if the estimated cost to remediate such condition exceeds 12 times the then monthly Base Rent or $100,000, whichever is greater, give written notice to Lessee, within 30 days after receipt by Lessor of knowledge of the occurrence of such Hazardous Substance Condition, of Lessor's desire to terminate this Lease as of the date 60 days following the date of such notice.  In the event Lessor elects to give a termination notice, Lessee may, within 10 days thereafter, give written notice to Lessor of Lessee's commitment to pay the amount by which the cost of the remediation of such Hazardous Substance Condition exceeds an amount equal to 12 times the then monthly Base Rent or $100,000, whichever is greater.  Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days following such commitment.  In such event, this Lease shall continue in full force and effect, and Lessor shall proceed to make such remediation as soon as reasonably possible after the required funds are available.  If Lessee does not give such notice and provide the required funds or assurance thereof within the time provided, this Lease shall terminate as of the date specified in Lessor's notice of termination.

6.3    **Lessee's Compliance with Applicable Requirements.**  Except as otherwise provided in this Lease, Lessee shall, at Lessee's sole expense, fully, diligently and in a timely manner, materially comply with all Applicable Requirements, the requirements of any applicable fire insurance underwriter or rating bureau, and the recommendations of Lessor's engineers and/or consultants which relate in any manner to the such Requirements, without regard to whether such Requirements are now in effect or become effective after the Start Date.  Lessee shall, within 10 days after receipt of Lessor's written request, provide Lessor with copies of all permits and other documents, and other information evidencing Lessee's compliance with any Applicable Requirements specified by Lessor, and shall immediately upon receipt, notify Lessor in writing (with copies of any documents involved) of any threatened or actual claim, notice, citation, warning, complaint or report pertaining to or involving the failure of Lessee or the Premises to comply with any Applicable Requirements. Likewise, Lessee shall immediately give written notice to Lessor of: (i) any water damage to the Premises and any suspected seepage, pooling, dampness or other condition conducive to the production of mold; or (ii) any mustiness or other odors that might indicate the presence of mold in the Premises. In addition, Lessee shall provide Lessor with copies of its business license, certificate of occupancy and/or any similar document within 10 days of the receipt of a written request therefor.

6.4    **Inspection; Compliance.**  Lessor and Lessor's **"Lender"** (as defined in Paragraph 30) and consultants shall have the right to enter into Premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable notice, for the purpose of inspecting the condition of the Premises and for verifying compliance by Lessee with this Lease. The cost of any such inspections shall be paid by Lessor, unless a violation of Applicable Requirements, or a Hazardous Substance Condition (see paragraph 9.1) is found to exist or be imminent, or the inspection is requested or ordered by a governmental authority.  In such case, Lessee shall upon request reimburse Lessor for the cost of such inspection, so long as such inspection is reasonably related to the violation or contamination.  In addition, Lessee shall provide copies of all relevant material safety data sheets (**MSDS**) to Lessor within 10 days of the receipt of a written request therefor.

7.    **Maintenance; Repairs; Utility Installations; Trade Fixtures and Alterations.**

7.1    **Lessee's Obligations.**

(a) **In General.**  Subject to the provisions of Paragraph 2.2 (Condition), 2.3 (Compliance), 6.3 (Lessee's Compliance with Applicable Requirements), 7.2 (Lessor's Obligations), 9 (Damage or Destruction), and 14 (Condemnation), Lessee shall, at Lessee's sole expense, keep the Premises, Utility Installations (intended for Lessee's exclusive use, no matter where located), and Alterations in good order, condition and repair (whether or not the portion of the Premises requiring repairs, or the means of repairing the same, are reasonably or readily accessible to Lessee, and whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of such portion of the Premises), including, but not limited to, all equipment or facilities, such as plumbing, HVAC equipment, electrical, lighting facilities, boilers, pressure vessels, fire protection system, fixtures, walls (interior and exterior), ceilings, floors, windows, doors, plate glass, skylights, landscaping, driveways, parking lots, fences, retaining walls, signs, sidewalks and parkways located in, on, or adjacent to the Premises. Lessee is also responsible for keeping the roof and roof drainage clean and free of debris. Lessor shall keep the surface and structural elements of the roof, foundations, and bearing walls in good repair (see paragraph 7.2). Lessee, in keeping the Premises in good order, condition and repair, shall exercise and perform good maintenance practices, specifically including the procurement and maintenance of the service contracts required by Paragraph 7.1(b) below. Lessee's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all improvements thereon or a part thereof in good order, condition and state of repair.  Lessee shall, during the term of this Lease, keep the exterior appearance of the Building in a first-class condition (including, e.g. graffiti removal) consistent with the exterior appearance of other similar facilities of comparable age and size in the vicinity, including, when necessary, the exterior repainting of the Building.

(b) **Service Contracts.**  Lessee shall, at Lessee's sole expense, procure and maintain contracts, with copies to Lessor, in customary form and substance for, and with contractors specializing and experienced in the maintenance of the following equipment and improvements, if any, if and when installed on the Premises: (i) HVAC equipment, (ii) boiler, and pressure vessels, (iii) fire extinguishing systems, including fire alarm and/or smoke detection, (iv) landscaping and irrigation systems, and (v) clarifiers.  However, Lessor reserves the right, upon notice to Lessee, to procure and maintain any or all of such service contracts, and Lessee shall reimburse Lessor, upon demand, for the cost thereof.

(c) **Failure to Perform.**  If Lessee fails to perform Lessee's obligations under this Paragraph 7.1, Lessor may enter upon the Premises after 10 days' prior written notice to Lessee (except in the case of an emergency, in which case no notice shall be required), perform such obligations on Lessee's behalf, and put the Premises in good order, condition and repair, and Lessee shall promptly pay to Lessor a sum equal to 115% of the cost thereof.

(d) **Replacement.**  Subject to Lessee's indemnification of Lessor as set forth in Paragraph 8.7 below, and without relieving Lessee of liability resulting from Lessee's failure to exercise and perform good maintenance practices, if an item described in Paragraph 7.1(b) cannot be repaired other than at a cost which is in excess of 50% of the cost of replacing such item, then such item shall be replaced by Lessor, and the cost thereof shall be prorated between the Parties and Lessee shall only be obligated to pay, each month during the remainder of the term of this Lease, on the date on which Base Rent is due, an amount equal to the product of multiplying the cost of such replacement by a fraction, the numerator of which is one, and the denominator of which is 144 (ie. 1/144th of the cost per month).  Lessee shall pay Interest on the unamortized balance but may prepay its obligation at any time.

7.2    **Lessor's Obligations.**  Subject to the provisions of Paragraphs 2.2 (Condition), 2.3 (Compliance), 9 (Damage or Destruction) and 14 (Condemnation), it is intended by the Parties hereto that Lessor have no obligation, in any manner whatsoever, to repair and maintain the Premises, or the equipment therein, all of which obligations are intended to be that of the Lessee, except for the surface and structural elements of the roof, foundations and bearing walls, the repair of which shall be the responsibility of Lessor upon receipt of written notice that such a repair is necessary.  It is the intention of the Parties that the terms of this Lease govern the respective obligations of the Parties as to maintenance and repair of the Premises, and they expressly waive the benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease.

7.3    **Utility Installations; Trade Fixtures; Alterations.**

(a) **Definitions.**  The term **"Utility Installations"** refers to all floor and window coverings, air and/or vacuum lines, power panels, electrical distribution, security and fire protection systems, communication cabling, lighting fixtures, HVAC equipment, plumbing, and fencing in or on the Premises. The term **"Trade Fixtures"** shall mean Lessee's machinery and equipment that can be removed without doing material damage to the Premises. The term **"Alterations"** shall mean any modification of the improvements, other than Utility Installations or Trade Fixtures, whether by addition or deletion.  **"Lessee Owned Alterations and/or Utility Installations"** are defined as Alterations and/or Utility Installations made by Lessee that are not yet owned by Lessor pursuant to Paragraph 7.4(a).

(b) **Consent.**  Lessee shall not make any Alterations or Utility Installations to the Premises without Lessor's prior written consent. Lessee may, however, make non-structural Alterations or Utility Installations to the interior of the Premises (excluding the roof) without such consent but upon notice to Lessor, as long as they are not visible from the outside, do not involve puncturing, relocating or removing the roof or any existing walls, will not affect the electrical, plumbing, HVAC, and/or life safety systems, and the cumulative cost thereof during this Lease as extended does not exceed a sum equal to 3 month's Base Rent in the aggregate or a sum equal to one month's Base Rent  in any one year.  Notwithstanding the foregoing, Lessee shall not make or permit any roof penetrations and/or install anything on the roof without the prior written approval of Lessor.  Lessor may, as a precondition to granting such approval, require Lessee to utilize a contractor chosen and/or approved by Lessor.  Any Alterations or Utility Installations that Lessee shall desire to make and which require the consent of the Lessor shall be presented to Lessor in written form with detailed plans.  Consent shall be deemed conditioned upon Lessee's: (i) acquiring all applicable governmental permits, (ii) furnishing Lessor with copies of both the permits and the plans and specifications prior to commencement of the work, and (iii) compliance with all conditions of said permits and other Applicable Requirements in a prompt and expeditious manner.  Any Alterations or Utility Installations shall be performed in a workmanlike manner with good and sufficient materials.  Lessee shall promptly upon completion furnish Lessor with as-built plans and specifications.  For work which costs an amount in excess of one month's Base Rent, Lessor may condition its consent upon Lessee providing a lien and completion bond in an amount equal to 150% of the estimated cost of such Alteration or Utility Installation and/or upon Lessee's posting an additional Security Deposit with Lessor.

(c) **Liens; Bonds.**  Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use on the Premises, which claims are or may be secured by any mechanic's or materialmen's lien against the Premises or any interest therein.  Lessee shall give Lessor not less than 10 days notice prior to the commencement of any work in, on or about the Premises, and Lessor shall have the right to post notices of non-responsibility.  If Lessee shall contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense defend and protect itself, Lessor and the Premises against the same and shall pay and satisfy any such adverse judgment that

**INITIALS**           PAGE 4 OF 13          **INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION    FORM STG-20-07/14E

may be rendered thereon before the enforcement thereof. If Lessor shall require, Lessee shall furnish a surety bond in an amount equal to 150% of the amount of such contested lien, claim or demand, indemnifying Lessor against liability for the same. If Lessor elects to participate in any such action, Lessee shall pay Lessor's attorneys' fees and costs.

7.4    **Ownership; Removal; Surrender; and Restoration.**

(a) **Ownership.** Subject to Lessor's right to require removal or elect ownership as hereinafter provided, all Alterations and Utility Installations made by Lessee shall be the property of Lessee, but considered a part of the Premises. Lessor may, at any time, elect in writing to be the owner of all or any specified part of the Lessee Owned Alterations and Utility Installations. Unless otherwise instructed per paragraph 7.4(b) hereof, all Lessee Owned Alterations and Utility Installations shall, at the expiration or termination of this Lease, become the property of Lessor and be surrendered by Lessee with the Premises.

(b) **Removal.** By delivery to Lessee of written notice from Lessor not earlier than 90 and not later than 30 days prior to the end of the term of this Lease, Lessor may require that any or all Lessee Owned Alterations or Utility Installations be removed by the expiration or termination of this Lease. Lessor may require the removal at any time of all or any part of any Lessee Owned Alterations or Utility Installations made without the required consent.

(c) **Surrender; Restoration.** Lessee shall surrender the Premises by the Expiration Date or any earlier termination date, with all of the improvements, parts and surfaces thereof broom clean and free of debris, and in good operating order, condition and state of repair, ordinary wear and tear excepted. "Ordinary wear and tear" shall not include any damage or deterioration that would have been prevented by good maintenance practice. Notwithstanding the foregoing, if this Lease is for 12 months or less. then Lessee shall surrender the Premises in the same condition as delivered to Lessee on the Start Date with NO allowance for ordinary wear and tear. Lessee shall repair any damage occasioned by the installation, maintenance or removal of Trade Fixtures, Lessee owned Alterations and/or Utility Installations, furnishings, and equipment as well as the removal of any storage tank installed by or for Lessee. Lessee shall remove from the Premises any and all Hazardous Substances brought onto the Premises by or for Lessee, or any third party (except Hazardous Substances which were deposited via underground migration from areas outside of the Premises) to the level specified in Applicable Requirements. Trade Fixtures shall remain the property of Lessee and shall be removed by Lessee. Any personal property of Lessee not removed on or before the Expiration Date or any earlier termination date shall be deemed to have been abandoned by Lessee and may be disposed of or retained by Lessor as Lessor may desire. The failure by Lessee to timely vacate the Premises pursuant to this Paragraph 7.4(c) without the express written consent of Lessor shall constitute a holdover under the provisions of Paragraph 26 below.

8.    **Insurance; Indemnity.**

8.1    **Payment of Premium Increases.**

(a) Lessee shall pay to Lessor any insurance cost increase ("**Insurance Cost Increase**") occurring during the term of this Lease. Insurance Cost Increase is defined as any increase in the actual cost of the insurance required under Paragraph 8.2(b), 8.3(a) and 8.3(b), over and above the Base Premium as hereinafter defined calculated on an annual basis. Insurance Cost Increase shall include but not be limited to increases resulting from the nature of Lessee's occupancy, any act or omission of Lessee, requirements of the holder of mortgage or deed of trust covering the Premises, increased valuation of the Premises and/or a premium rate increase. The parties are encouraged to fill in the Base Premium in paragraph 1.8 with a reasonable premium for the Required Insurance based on the Agreed Use of the Premises. If the parties fail to insert a dollar amount in Paragraph 1.8, then the Base Premium shall be the lowest annual premium reasonably obtainable for the Required Insurance as of the commencement of the Original Term for the Agreed Use of the Premises. In no event, however, shall Lessee be responsible for any portion of the increase in the premium cost attributable to liability insurance carried by Lessor under Paragraph 8.2(b) in excess of $2,000,000 per occurrence.

(b) Lessee shall pay any such Insurance Cost Increase to Lessor within 30 days after receipt by Lessee of a copy of the premium statement or other reasonable evidence of the amount due. If the insurance policies maintained hereunder cover other property besides the Premises, Lessor shall also deliver to Lessee a statement of the amount of such Insurance Cost Increase attributable only to the Premises showing in reasonable detail the manner in which such amount was computed. Premiums for policy periods commencing prior to, or extending beyond the term of this Lease, shall be prorated to correspond to the term of this Lease.

8.2    **Liability Insurance.**

(a) **Carried by Lessee.** Lessee shall obtain and keep in force a Commercial General Liability policy of insurance protecting Lessee and Lessor as an additional insured against claims for bodily injury, personal injury and property damage based upon or arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $1,000,000 per occurrence with an annual aggregate of not less than $2,000,000. Lessee shall add Lessor as an additional insured by means of an endorsement at least as broad as the Insurance Service Organization's "Additional Insured-Managers or Lessors of Premises" Endorsement. The policy shall not contain any intra-insured exclusions as between insured persons or organizations, but shall include coverage for liability assumed under this Lease as an "**insured contract**" for the performance of Lessee's indemnity obligations under this Lease. The limits of said insurance shall not, however, limit the liability of Lessee nor relieve Lessee of any obligation hereunder. Lessee shall provide an endorsement on its liability policy(ies) which provides that its insurance shall be primary to and not contributory with any similar insurance carried by Lessor, whose insurance shall be considered excess insurance only.

(b) **Carried by Lessor.** Lessor shall maintain liability insurance as described in Paragraph 8.2(a), in addition to, and not in lieu of, the insurance required to be maintained by Lessee. Lessee shall not be named as an additional insured therein.

8.3    **Property Insurance - Building, Improvements and Rental Value.**

(a) **Building and Improvements.** The Insuring Party shall obtain and keep in force a policy or policies in the name of Lessor, with loss payable to Lessor, any ground-lessor, and to any Lender insuring loss or damage to the Premises. The amount of such insurance shall be equal to the full insurable replacement cost of the Premises, as the same shall exist from time to time, or the amount required by any Lender, but in no event more than the commercially reasonable and available insurable value thereof. Lessee Owned Alterations and Utility Installations, Trade Fixtures, and Lessee's personal property shall be insured by Lessee not by Lessor. If the coverage is available and commercially appropriate, such policy or policies shall insure against all risks of direct physical loss or damage (except the perils of flood and/or earthquake unless required by a Lender or included in the Base Premium), including coverage for debris removal and the enforcement of any Applicable Requirements requiring the upgrading, demolition, reconstruction or replacement of any portion of the Premises as the result of a covered loss. Said policy or policies shall also contain an agreed valuation provision in lieu of any coinsurance clause, waiver of subrogation, and inflation guard protection causing an increase in the annual property insurance coverage amount by a factor of not less than the adjusted U.S. Department of Labor Consumer Price Index for All Urban Consumers for the city nearest to where the Premises are located. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $5,000 per occurrence, and Lessee shall be liable for such deductible amount in the event of an Insured Loss.

(b) **Rental Value.** The Insuring Party shall obtain and keep in force a policy or policies in the name of Lessor with loss payable to Lessor and any Lender, insuring the loss of the full Rent for one year with an extended period of indemnity for an additional 180 days ("**Rental Value Insurance**"). Said insurance shall contain an agreed valuation provision in lieu of any coinsurance clause, and the amount of coverage shall be adjusted annually to reflect the projected Rent otherwise payable by Lessee, for the next 12 month period. Lessee shall be liable for any deductible amount in the event of such loss.

(c) **Adjacent Premises.** If the Premises are part of a larger building, or of a group of buildings owned by Lessor which are adjacent to the Premises, the Lessee shall pay for any increase in the premiums for the property insurance of such building or buildings if said increase is caused by Lessee's acts, omissions, use or occupancy of the Premises.

8.4    **Lessee's Property; Business Interruption Insurance; Worker's Compensation Insurance.**

(a) **Property Damage.** Lessee shall obtain and maintain insurance coverage on all of Lessee's personal property, Trade Fixtures, and Lessee Owned Alterations and Utility Installations. Such insurance shall be full replacement cost coverage with a deductible of not to exceed $1,000 per occurrence. The proceeds from any such insurance shall be used by Lessee for the replacement of personal property, Trade Fixtures and Lessee Owned Alterations and Utility Installations.

(b) **Business Interruption.** Lessee shall obtain and maintain loss of income and extra expense insurance in amounts as will reimburse Lessee for direct or indirect loss of earnings attributable to all perils commonly insured against by prudent lessees in the business of Lessee or attributable to prevention of access to the Premises as a result of such perils.

(c) **Worker's Compensation Insurance.** Lessee shall obtain and maintain Worker's Compensation Insurance in such amount as may be required by Applicable Requirements. Such policy shall include a 'Waiver of Subrogation' endorsement. Lessee shall provide Lessor with a copy of such endorsement along with the certificate of insurance or copy of the policy required by paragraph 8.5.

(d) **No Representation of Adequate Coverage.** Lessor makes no representation that the limits or forms of coverage of insurance specified herein are adequate to cover Lessee's property, business operations or obligations under this Lease.

8.5    **Insurance Policies.** Insurance required herein shall be by companies maintaining during the policy term a "General Policyholders Rating" of at least A-, VII, as set forth in the most current issue of "Best's Insurance Guide", or such other rating as may be required by a Lender. Lessee shall not do or permit to be done anything which invalidates the required insurance policies. Lessee shall, prior to the Start Date, deliver to Lessor certified copies of policies of such insurance or certificates with copies of the required endorsements evidencing the existence and amounts of the required insurance. No such policy shall be cancelable or subject to modification except after 30 days prior written notice to Lessor. Lessee shall, at least 10 days prior to the expiration of such policies, furnish Lessor with evidence of renewals or "insurance binders" evidencing renewal thereof, or

INITIALS                                                                                                                                    INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                                           FORM STG-20-07/14E

Lessor may order such insurance and charge the cost thereof to Lessee, which amount shall be payable by Lessee to Lessor upon demand. Such policies shall be for a term of at least one year, or the length of the remaining term of this Lease, whichever is less. If either Party shall fail to procure and maintain the insurance required to be carried by it, the other Party may, but shall not be required to, procure and maintain the same.

      8.6     **Waiver of Subrogation.** Without affecting any other rights or remedies, Lessee and Lessor each hereby release and relieve the other, and waive their entire right to recover damages against the other, for loss of or damage to its property arising out of or incident to the perils required to be insured against herein. The effect of such releases and waivers is not limited by the amount of insurance carried or required, or by any deductibles applicable hereto. The Parties agree to have their respective property damage insurance carriers waive any right to subrogation that such companies may have against Lessor or Lessee, as the case may be, so long as the insurance is not invalidated thereby.

      8.7     **Indemnity.** Except for Lessor's gross negligence or willful misconduct, Lessee shall indemnify, protect, defend and hold harmless the Premises, Lessor and its agents, Lessor's master or ground lessor, partners and Lenders, from and against any and all claims, loss of rents and/or damages, liens, judgments, penalties, attorneys' and consultants' fees, expenses and/or liabilities arising out of, involving, or in connection with, the use and/or occupancy of the Premises by Lessee. If any action or proceeding is brought against Lessor by reason of any of the foregoing matters, Lessee shall upon notice defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense. Lessor need not have first paid any such claim in order to be defended or indemnified.

      8.8     **Exemption of Lessor and its Agents from Liability.** Notwithstanding the negligence or breach of this Lease by Lessor or its agents, neither Lessor nor its agents shall be liable under any circumstances for: (i) injury or damage to the person or goods, wares, merchandise or other property of Lessee, Lessee's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, indoor air quality, the presence of mold or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, HVAC or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or upon other portions of the building of which the Premises are a part, or from other sources or places, (ii) any damages arising from any act or neglect of any other tenant of Lessor or from the failure of Lessor or its agents to enforce the provisions of any other lease in the Project, or (iii) injury to Lessee's business or for any loss of income or profit therefrom. Instead, it is intended that Lessee's sole recourse in the event of such damages or injury be to file a claim on the insurance policy(ies) that Lessee is required to maintain pursuant to the provisions of paragraph 8.

      8.9     **Failure to Provide Insurance.** Lessee acknowledges that any failure on its part to obtain or maintain the insurance required herein will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain. Accordingly, for any month or portion thereof that Lessee does not maintain the required insurance and/or does not provide Lessor with the required binders or certificates evidencing the existence of the required insurance, the Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater. The parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/ costs that Lessor will incur by reason of Lessee's failure to maintain the required insurance. Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to the failure to maintain such insurance, prevent the exercise of any of the other rights and remedies granted hereunder, nor relieve Lessor of its obligation to maintain the insurance specified in this Lease.

**9.**     **Damage or Destruction.**

      9.1     **Definitions.**

          (a) **"Premises Partial Damage"** shall mean damage or destruction to the improvements on the Premises, other than Lessee Owned Alterations and Utility Installations, which can reasonably be repaired in 6 months or less from the date of the damage or destruction. Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

          (b) **"Premises Total Destruction"** shall mean damage or destruction to the Premises, other than Lessee Owned Alterations and Utility Installations and Trade Fixtures, which cannot reasonably be repaired in 6 months or less from the date of the damage or destruction. Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

          (c) **"Insured Loss"** shall mean damage or destruction to improvements on the Premises, other than Lessee Owned Alterations and Utility Installations and Trade Fixtures, which was caused by an event required to be covered by the insurance described in Paragraph 8.3(a), irrespective of any deductible amounts or coverage limits involved.

          (d) **"Replacement Cost"** shall mean the cost to repair or rebuild the improvements owned by Lessor at the time of the occurrence to their condition existing immediately prior thereto, including demolition, debris removal and upgrading required by the operation of Applicable Requirements, and without deduction for depreciation.

          (e) **"Hazardous Substance Condition"** shall mean the occurrence or discovery of a condition involving the presence of, or a contamination by, a Hazardous Substance, in, on, or under the Premises which requires restoration.

      9.2     **Partial Damage - Insured Loss.** If a Premises Partial Damage that is an Insured Loss occurs, then Lessor shall, at Lessor's expense, repair such damage (but not Lessee's Trade Fixtures or Lessee Owned Alterations and Utility Installations) as soon as reasonably possible and this Lease shall continue in full force and effect; provided, however, that Lessee shall, at Lessor's election, make the repair of any damage or destruction the total cost to repair of which is $10,000 or less, and, in such event, Lessor shall make any applicable insurance proceeds available to Lessee on a reasonable basis for that purpose. Notwithstanding the foregoing, if the required insurance was not in force or the insurance proceeds are not sufficient to effect such repair, the Insuring Party shall promptly contribute the shortage in proceeds (except as to the deductible which is Lessee's responsibility) as and when required to complete said repairs. In the event, however, such shortage was due to the fact that, by reason of the unique nature of the improvements, full replacement cost insurance coverage was not commercially reasonable and available, Lessor shall have no obligation to pay for the shortage in insurance proceeds or to fully restore the unique aspects of the Premises unless Lessee provides Lessor with the funds to cover same, or adequate assurance thereof, within 10 days following receipt of written notice of such shortage and request therefor. If Lessor receives said funds or adequate assurance thereof within said 10 day period, the party responsible for making the repairs shall complete them as soon as reasonably possible and this Lease shall remain in full force and effect. If such funds or assurance are not received, Lessor may nevertheless elect by written notice to Lessee within 10 days thereafter to: (i) make such restoration and repair as is commercially reasonable with Lessor paying any shortage in proceeds, in which case this Lease shall remain in full force and effect, or (ii) have this Lease terminate 30 days thereafter. Lessee shall not be entitled to reimbursement of any funds contributed by Lessee to repair any such damage or destruction. Premises Partial Damage due to flood or earthquake shall be subject to Paragraph 9.3, notwithstanding that there may be some insurance coverage, but the net proceeds of any such insurance shall be made available for the repairs if made by either Party.

      9.3     **Partial Damage - Uninsured Loss.** If a Premises Partial Damage that is not an Insured Loss occurs, unless caused by a negligent or willful act of Lessee (in which event Lessee shall make the repairs at Lessee's expense), Lessor may either: (i) repair such damage as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (ii) terminate this Lease by giving written notice to Lessee within 30 days after receipt by Lessor of knowledge of the occurrence of such damage. Such termination shall be effective 60 days following the date of such notice. In the event Lessor elects to terminate this Lease, Lessee shall have the right within 10 days after receipt of the termination notice to give written notice to Lessor of Lessee's commitment to pay for the repair of such damage without reimbursement from Lessor. Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days after making such commitment. In such event this Lease shall continue in full force and effect, and Lessor shall proceed to make such repairs as soon as reasonably possible after the required funds are available. If Lessee does not make the required commitment, this Lease shall terminate as of the date specified in the termination notice.

      9.4     **Total Destruction.** Notwithstanding any other provision hereof, if a Premises Total Destruction occurs, this Lease shall terminate 60 days following such Destruction. If the damage or destruction was caused by the gross negligence or willful misconduct of Lessee, Lessor shall have the right to recover Lessor's damages from Lessee, except as provided in Paragraph 8.6.

      9.5     **Damage Near End of Term.** If at any time during the last 6 months of this Lease there is damage for which the cost to repair exceeds one month's Base Rent, whether or not an Insured Loss, Lessor may terminate this Lease effective 60 days following the date of occurrence of such damage by giving a written termination notice to Lessee within 30 days after the date of occurrence of such damage. Notwithstanding the foregoing, if Lessee at that time has an exercisable option to extend this Lease or to purchase the Premises, then Lessee may preserve this Lease by, (a) exercising such option and (b) providing Lessor with any shortage in insurance proceeds (or adequate assurance thereof) needed to make the repairs on or before the earlier of (i) the date which is 10 days after Lessee's receipt of Lessor's written notice purporting to terminate this Lease, or (ii) the day prior to the date upon which such option expires. If Lessee duly exercises such option during such period and provides Lessor with funds (or adequate assurance thereof) to cover any shortage in insurance proceeds, Lessor shall, at Lessor's commercially reasonable expense, repair such damage as soon as reasonably possible and this Lease shall continue in full force and effect. If Lessee fails to exercise such option and provide such funds or assurance during such period, then this Lease shall terminate on the date specified in the termination notice and Lessee's option shall be extinguished.

      9.6     **Abatement of Rent; Lessee's Remedies.**

          (a) **Abatement.** In the event of Premises Partial Damage or Premises Total Destruction or a Hazardous Substance Condition for which Lessee is not responsible under this Lease, the Rent payable by Lessee for the period required for the repair, remediation or restoration of such damage shall be abated in proportion to the degree to which Lessee's use of the Premises is impaired, but not to exceed the proceeds received from

PAGE 6 OF 13

**INITIALS**                                           **INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION          FORM STG-20-07/14E

the Rental Value insurance. All other obligations of Lessee hereunder shall be performed by Lessee, and Lessor shall have no liability for any such damage, destruction, remediation, repair or restoration except as provided herein.

(b) **Remedies.** If Lessor is obligated to repair or restore the Premises and does not commence, in a substantial and meaningful way, such repair or restoration within 90 days after such obligation shall accrue, Lessee may, at any time prior to the commencement of such repair or restoration, give written notice to Lessor and to any Lenders of which Lessee has actual notice, of Lessee's election to terminate this Lease on a date not less than 60 days following the giving of such notice. If Lessee gives such notice and such repair or restoration is not commenced within 30 days thereafter, this Lease shall terminate as of the date specified in said notice. If the repair or restoration is commenced within such 30 days, this Lease shall continue in full force and effect. **"Commence"** shall mean either the unconditional authorization of the preparation of the required plans, or the beginning of the actual work on the Premises, whichever first occurs.

9.7    **Termination; Advance Payments.** Upon termination of this Lease pursuant to Paragraph 6.2(g) or Paragraph 9, an equitable adjustment shall be made concerning advance Base Rent and any other advance payments made by Lessee to Lessor. Lessor shall, in addition, return to Lessee so much of Lessee's Security Deposit as has not been, or is not then required to be, used by Lessor.

10.    **Real Property Taxes.**

10.1    **Definition.** As used herein, the term **"Real Property Taxes"** shall include any form of assessment; real estate, general, special, ordinary or extraordinary, or rental levy or tax (other than inheritance, personal income or estate taxes); improvement bond; and/or license fee imposed upon or levied against any legal or equitable interest of Lessor in the Premises or the Project, Lessor's right to other income therefrom, and/or Lessor's business or leasing, by any authority having the direct or indirect power to tax and where the funds are generated with reference to the Building address and where the proceeds so generated are to be applied by the city, county or other local taxing authority of a jurisdiction within which the Premises are located. Real Property Taxes shall also include any tax, fee, levy, assessment or charge, or any increase therein: (i) imposed by reason of events occurring during the term of this Lease, including but not limited to, a change in the ownership of the Premises, and (ii) levied or assessed on machinery or equipment provided by Lessor to Lessee pursuant to this Lease.

10.2

(a) **Payment of Taxes.** Lessor shall pay the Real Property Taxes applicable to the Premises provided, however, that Lessee shall pay to Lessor the amount, if any, by which Real Property Taxes applicable to the Premises increase over the fiscal tax year during which the Commencement Date Occurs ("Tax Increase"). Payment of any such Tax Increase shall be made by Lessee to Lessor within 30 days after receipt of Lessor's written statement setting forth the amount due and computation thereof. If any such taxes shall cover any period of time prior to or after the expiration or termination of this Lease, Lessee's share of such taxes shall be prorated to cover only that portion of the tax bill applicable to the period that this Lease is in effect. In the event Lessee incurs a late charge on any Rent payment, Lessor may estimate the current Real Property Taxes, and require that the Tax Increase be paid in advance to Lessor by Lessee monthly in advance with the payment of the Base Rent. Such monthly payment shall be an amount equal to the amount of the estimated installment of the Tax Increase divided by the number of months remaining before the month in which said installment becomes delinquent. When the actual amount of the applicable Tax Increase is known, the amount of such equal monthly advance payments shall be adjusted as required to provide the funds needed to pay the applicable Tax Increase. If the amount collected by Lessor is insufficient to pay the Tax Increase when due, Lessee shall pay Lessor, upon demand, such additional sums as are necessary to pay such obligations. Advance payments may be intermingled with other moneys of Lessor and shall not bear interest. In the event of a Breach by Lessee in the performance of its obligations under this Lease, then any such advance payments may be treated by Lessor as an additional Security Deposit.

(b) **Additional Improvements.** Notwithstanding anything to the contrary in this Paragraph 10.2, Lessee shall pay to Lessor upon demand therefor the entirety of any increase in Real Property Taxes assessed by reason of Alterations or Utility Installations placed upon the Premises by Lessee or at Lessee's request or by reason of any alterations or improvements to the Premises made by Lessor subsequent to the execution of this Lease by the Parties.

10.3    **Joint Assessment.** If the Premises are not separately assessed, Lessee's liability shall be an equitable proportion of the Tax Increase for all of the land and improvements included within the tax parcel assessed, such proportion to be conclusively determined by Lessor from the respective valuations assigned in the assessor's work sheets or such other information as may be reasonably available.

10.4    **Personal Property Taxes.** Lessee shall pay, prior to delinquency, all taxes assessed against and levied upon Lessee Owned Alterations, Utility Installations, Trade Fixtures, furnishings, equipment and all personal property of Lessee. When possible, Lessee shall cause its Lessee Owned Alterations and Utility Installations, Trade Fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Lessor. If any of Lessee's said property shall be assessed with Lessor's real property, Lessee shall pay Lessor the taxes attributable to Lessee's property within 10 days after receipt of a written statement setting forth the taxes applicable to Lessee's property.

11.    **Utilities and Services.** Lessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon. If any such services are not separately metered or billed to Lessee, Lessee shall pay a reasonable proportion, to be determined by Lessor, of all charges jointly metered or billed. There shall be no abatement of rent and Lessor shall not be liable in any respect whatsoever for the inadequacy, stoppage, interruption or discontinuance of any utility or service due to riot, strike, labor dispute, breakdown, accident, repair or other cause beyond Lessor's reasonable control or in cooperation with governmental request or directions.

12.    **Assignment and Subletting.**

12.1    **Lessor's Consent Required.**

(a) Lessee shall not voluntarily or by operation of law assign, transfer, mortgage or encumber (collectively, **"assign or assignment"**) or sublet all or any part of Lessee's interest in this Lease or in the Premises without Lessor's prior written consent.

(b) Unless Lessee is a corporation and its stock is publicly traded on a national stock exchange, a change in the control of Lessee shall constitute an assignment requiring consent. The transfer, on a cumulative basis, of 25% or more of the voting control of Lessee shall constitute a change in control for this purpose.

(c) The involvement of Lessee or its assets in any transaction, or series of transactions (by way of merger, sale, acquisition, financing, transfer, leveraged buy-out or otherwise), whether or not a formal assignment or hypothecation of this Lease or Lessee's assets occurs, which results or will result in a reduction of the Net Worth of Lessee by an amount greater than 25% of such Net Worth as it was represented at the time of the execution of this Lease or at the time of the most recent assignment to which Lessor has consented, or as it exists immediately prior to said transaction or transactions constituting such reduction, whichever was or is greater, shall be considered an assignment of this Lease to which Lessor may withhold its consent. **"Net Worth of Lessee"** shall mean the net worth of Lessee (excluding any guarantors) established under generally accepted accounting principles.

(d) An assignment or subletting without consent shall, at Lessor's option, be a Default curable after notice per Paragraph 13.1(d), or a noncurable Breach without the necessity of any notice and grace period. If Lessor elects to treat such unapproved assignment or subletting as a noncurable Breach, Lessor may either: (i) terminate this Lease, or (ii) upon 30 days written notice, increase the monthly Base Rent to 110% of the Base Rent then in effect. Further, in the event of such Breach and rental adjustment, (i) the purchase price of any option to purchase the Premises held by Lessee shall be subject to similar adjustment to 110% of the price previously in effect, and (ii) all fixed and non-fixed rental adjustments scheduled during the remainder of the Lease term shall be increased to 110% of the scheduled adjusted rent.

(e) Lessee's remedy for any breach of Paragraph 12.1 by Lessor shall be limited to compensatory damages and/or injunctive relief.

(f) Lessor may reasonably withhold consent to a proposed assignment or subletting if Lessee is in Default at the time consent is requested.

(g) Notwithstanding the foregoing, allowing a de minimis portion of the Premises, ie. 20 square feet or less, to be used by a third party vendor in connection with the installation of a vending machine or payphone shall not constitute a subletting.

12.2    **Terms and Conditions Applicable to Assignment and Subletting.**

(a) Regardless of Lessor's consent, no assignment or subletting shall:  (i) be effective without the express written assumption by such assignee or sublessee of the obligations of Lessee under this Lease, (ii) release Lessee of any obligations hereunder, or (iii) alter the primary liability of Lessee for the payment of Rent or for the performance of any other obligations to be performed by Lessee.

(b) Lessor may accept Rent or performance of Lessee's obligations from any person other than Lessee pending approval or disapproval of an assignment. Neither a delay in the approval or disapproval of such assignment nor the acceptance of Rent or performance shall constitute a waiver or estoppel of Lessor's right to exercise its remedies for Lessee's Default or Breach.

(c) Lessor's consent to any assignment or subletting shall not constitute a consent to any subsequent assignment or subletting.

(d) In the event of any Default or Breach by Lessee, Lessor may proceed directly against Lessee, any Guarantors or anyone else responsible for the performance of Lessee's obligations under this Lease, including any assignee or sublessee, without first exhausting Lessor's remedies against any other person or entity responsible therefor to Lessor, or any security held by Lessor.

(e) Each request for consent to an assignment or subletting shall be in writing, accompanied by information relevant to Lessor's determination as to the financial and operational responsibility and appropriateness of the proposed assignee or sublessee, including but not limited to the intended use and/or required modification of the Premises, if any, together with a fee of $500 as consideration for Lessor's considering and processing said request.  Lessee agrees to provide Lessor with such other and additional information and/or documentation as may be reasonably requested. (See also Paragraph 36)

(f) Any assignee of, or sublessee under, this Lease shall, by reason of accepting such assignment, entering into such sublease, or

INITIALS                                                                                                                    INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                          FORM STG-20-07/14E

entering into possession of the Premises or any portion thereof, be deemed to have assented and agreed to conform and comply with each and every term, covenant, condition and obligation herein to be observed or performed by Lessee during the term of said assignment or sublease, other than such obligations as are contrary to or inconsistent with provisions of an assignment or sublease to which Lessor has specifically consented to in writing

(g) Lessor's consent to any assignment or subletting shall not transfer to the assignee or sublessee any Option granted to the original Lessee by this Lease unless such transfer is specifically consented to by Lessor in writing. (See Paragraph 39.2)

12.3    **Additional Terms and Conditions Applicable to Subletting.**  The following terms and conditions shall apply to any subletting by Lessee of all or any part of the Premises and shall be deemed included in all subleases under this Lease whether or not expressly incorporated therein:

(a) Lessee hereby assigns and transfers to Lessor all of Lessee's interest in all Rent payable on any sublease, and Lessor may collect such Rent and apply same toward Lessee's obligations under this Lease; provided, however, that until a Breach shall occur in the performance of Lessee's obligations, Lessee may collect said Rent.  In the event that the amount collected by Lessor exceeds Lessee's then outstanding obligations any such excess shall be refunded to Lessee. Lessor shall not, by reason of the foregoing or any assignment of such sublease, nor by reason of the collection of Rent, be deemed liable to the sublessee for any failure of Lessee to perform and comply with any of Lessee's obligations to such sublessee.  Lessee hereby irrevocably authorizes and directs any such sublessee, upon receipt of a written notice from Lessor stating that a Breach exists in the performance of Lessee's obligations under this Lease, to pay to Lessor all Rent due and to become due under the sublease.  Sublessee shall rely upon any such notice from Lessor and shall pay all Rents to Lessor without any obligation or right to inquire as to whether such Breach exists, notwithstanding any claim from Lessee to the contrary.

(b) In the event of a Breach by Lessee, Lessor may, at its option, require sublessee to attorn to Lessor, in which event Lessor shall undertake the obligations of the sublessor under such sublease from the time of the exercise of said option to the expiration of such sublease; provided, however, Lessor shall not be liable for any prepaid rents or security deposit paid by such sublessee to such sublessor or for any prior Defaults or Breaches of such sublessor.

(c) Any matter requiring the consent of the sublessor under a sublease shall also require the consent of Lessor.

(d) No sublessee shall further assign or sublet all or any part of the Premises without Lessor's prior written consent.

(e) Lessor shall deliver a copy of any notice of Default or Breach by Lessee to the sublessee, who shall have the right to cure the Default of Lessee within the grace period, if any, specified in such notice.  The sublessee shall have a right of reimbursement and offset from and against Lessee for any such Defaults cured by the sublessee.

13.    **Default; Breach; Remedies.**

13.1    **Default; Breach.**  A **"Default"** is defined as a failure by the Lessee to comply with or perform any of the terms, covenants, conditions or Rules and Regulations under this Lease.  A **"Breach"** is defined as the occurrence of one or more of the following Defaults, and the failure of Lessee to cure such Default within any applicable grace period:

(a) The abandonment of the Premises; or the vacating of the Premises without providing a commercially reasonable level of security, or where the coverage of the property insurance described in Paragraph 8.3 is jeopardized as a result thereof, or without providing reasonable assurances to minimize potential vandalism.

(b) The failure of Lessee to make any payment of Rent or any Security Deposit required to be made by Lessee hereunder, whether to Lessor or to a third party, when due, to provide reasonable evidence of insurance or surety bond, or to fulfill any obligation under this Lease which endangers or threatens life or property, where such failure continues for a period of 3 business days following written notice to Lessee.

(c) The failure of Lessee to allow Lessor and/or its agents access to the Premises or the commission of waste, act or acts constituting public or private nuisance, and/or an illegal activity on the Premises by Lessee, where such actions continue for a period of 3 business days following written notice to Lessee.  In the event that Lessee commits waste, a nuisance or an illegal activity a second time then, the Lessor may elect to treat such conduct as a non-curable Breach rather than a Default.

(d) The failure by Lessee to provide (i) reasonable written evidence of compliance with Applicable Requirements, (ii) the service contracts, (iii) the rescission of an unauthorized assignment or subletting, (iv) an Estoppel Certificate or financial statements, (v) a requested subordination, (vi) evidence concerning any guaranty and/or Guarantor, (vii) any document requested under Paragraph 42, (viii) material safety data sheets (MSDS), or (ix) any other documentation or information which Lessor may reasonably require of Lessee under the terms of this Lease, where any such failure continues for a period of 10 days following written notice to Lessee.

(e) A Default by Lessee as to the terms, covenants, conditions or provisions of this Lease, or of the rules adopted under Paragraph 40 hereof, other than those described in subparagraphs 13.1(a), (b), (c) or (d), above, where such Default continues for a period of 30 days after written notice; provided, however, that if the nature of Lessee's Default is such that more than 30 days are reasonably required for its cure, then it shall not be deemed to be a Breach if Lessee commences such cure within said 30 day period and thereafter diligently prosecutes such cure to completion.

(f) The occurrence of any of the following events: (i) the making of any general arrangement or assignment for the benefit of creditors; (ii) becoming a **"debtor"** as defined in 11 U.S.C. §101 or any successor statute thereto (unless, in the case of a petition filed against Lessee, the same is dismissed within 60 days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where possession is not restored to Lessee within 30 days; or (iv) the attachment, execution or other judicial seizure of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where such seizure is not discharged within 30 days; provided, however, in the event that any provision of this subparagraph (e) is contrary to any applicable law, such provision shall be of no force or effect, and not affect the validity of the remaining provisions.

(g) The discovery that any financial statement of Lessee or of any Guarantor given to Lessor was materially false.

(h) If the performance of Lessee's obligations under this Lease is guaranteed: (i) the death of a Guarantor, (ii) the termination of a Guarantor's liability with respect to this Lease other than in accordance with the terms of such guaranty, (iii) a Guarantor's becoming insolvent or the subject of a bankruptcy filing, (iv) a Guarantor's refusal to honor the guaranty, or (v) a Guarantor's breach of its guaranty obligation on an anticipatory basis, and Lessee's failure, within 60 days following written notice of any such event, to provide written alternative assurance or security, which, when coupled with the then existing resources of Lessee, equals or exceeds the combined financial resources of Lessee and the Guarantors that existed at the time of execution of this Lease.

13.2    **Remedies.**  If Lessee fails to perform any of its affirmative duties or obligations, within 10 days after written notice (or in case of an emergency, without notice), Lessor may, at its option, perform such duty or obligation on Lessee's behalf, including but not limited to the obtaining of reasonably required bonds, insurance policies, or governmental licenses, permits or approvals.  Lessee shall pay to Lessor an amount equal to 115% of the costs and expenses incurred by Lessor in such performance upon receipt of an invoice therefor.  In the event of a Breach, Lessor may, with or without further notice or demand, and without limiting Lessor in the exercise of any right or remedy which Lessor may have by reason of such Breach:

(a) Terminate Lessee's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Lessee shall immediately surrender possession to Lessor.  In such event Lessor shall be entitled to recover from Lessee: (i) the unpaid Rent which had been earned at the time of termination; (ii) the worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Lessee proves could have been reasonably avoided; (iii) the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the Lessee proves could be reasonably avoided; and (iv) any other amount necessary to compensate Lessor for all the detriment proximately caused by the Lessee's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, including but not limited to the cost of recovering possession of the Premises, expenses of reletting, including necessary renovation and alteration of the Premises, reasonable attorneys' fees, and that portion of any leasing commission paid by Lessor in connection with this Lease applicable to the unexpired term of this Lease.  The worth at the time of award of the amount referred to in provision (iii) of the immediately preceding sentence shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of the District within which the Premises are located at the time of award plus one percent.  Efforts by Lessor to mitigate damages caused by Lessee's Breach of this Lease shall not waive Lessor's right to recover any damages to which Lessor is otherwise entitled.  If termination of this Lease is obtained through the provisional remedy of unlawful detainer, Lessor shall have the right to recover in such proceeding any unpaid Rent and damages as are recoverable therein, or Lessor may reserve the right to recover all or any part thereof in a separate suit.  If a notice and grace period required under Paragraph 13.1 was not previously given, a notice to pay rent or quit, or to perform or quit given to Lessee under the unlawful detainer statute shall also constitute the notice required by Paragraph 13.1.  In such case, the applicable grace period required by Paragraph 13.1 and the unlawful detainer statute shall run concurrently, and the failure of Lessee to cure the Default within the greater of the two such grace periods shall constitute both an unlawful detainer and a Breach of this Lease entitling Lessor to the remedies provided for in this Lease and/or by said statute.

(b) Continue the Lease and Lessee's right to possession and recover the Rent as it becomes due, in which event Lessee may sublet or assign, subject only to reasonable limitations.  Acts of maintenance, efforts to relet, and/or the appointment of a receiver to protect the Lessor's interests, shall not constitute a termination of the Lessee's right to possession.

(c) Pursue any other remedy now or hereafter available under the laws or judicial decisions of the state wherein the Premises are located.  The expiration or termination of this Lease and/or the termination of Lessee's right to possession shall not relieve Lessee from liability under any indemnity provisions of this Lease as to matters occurring or accruing during the term hereof or by reason of Lessee's occupancy of the Premises.

13.3    **Inducement Recapture.**  Any agreement for free or abated rent or other charges, or for the giving or paying by Lessor to or for Lessee of any cash or other bonus, inducement or consideration for Lessee's entering into this Lease, all of which concessions are hereinafter referred

**PAGE 8 OF 13**

**INITIALS**

**INITIALS**

to as "**Inducement Provisions**," shall be deemed conditioned upon Lessee's full and faithful performance of all of the terms, covenants and conditions of this Lease. Upon Breach of this Lease by Lessee, any such Inducement Provision shall automatically be deemed deleted from this Lease and of no further force or effect, and any rent, other charge, bonus, inducement or consideration theretofore abated, given or paid by Lessor under such an inducement Provision shall be immediately due and payable by Lessee to Lessor, notwithstanding any subsequent cure of said Breach by Lessee. The acceptance by Lessor of rent or the cure of the Breach which initiated the operation of this paragraph shall not be deemed a waiver by Lessor of the provisions of this paragraph unless specifically so stated in writing by Lessor at the time of such acceptance.

13.4    **Late Charges.** Lessee hereby acknowledges that late payment by Lessee of Rent will cause Lessor to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed upon Lessor by any Lender. Accordingly, if any Rent shall not be received by Lessor within 5 days after such amount shall be due, then, without any requirement for notice to Lessee, Lessee shall immediately pay to Lessor a one-time late charge equal to 10% of each such overdue amount or $100, whichever is greater. The Parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lessor will incur by reason of such late payment. Acceptance of such late charge by Lessor shall in no event constitute a waiver of Lessee's Default or Breach with respect to such overdue amount, nor prevent the exercise of any of the other rights and remedies granted hereunder. In the event that a late charge is payable hereunder, whether or not collected, for 3 consecutive installments of Base Rent, then notwithstanding any provision of this Lease to the contrary, Base Rent shall, at Lessor's option, become due and payable quarterly in advance.

13.5    **Interest.** Any monetary payment due Lessor hereunder, other than late charges, not received by Lessor, when due shall bear interest from the 31st day after it was due. The interest ("**Interest**") charged shall be computed at the rate of 10% per annum but shall not exceed the maximum rate allowed by law. Interest is payable in addition to the potential late charge provided for in Paragraph 13.4.

13.6    **Breach by Lessor.**

(a) **Notice of Breach.** Lessor shall not be deemed in breach of this Lease unless Lessor fails within a reasonable time to perform an obligation required to be performed by Lessor. For purposes of this Paragraph, a reasonable time shall in no event be less than 30 days after receipt by Lessor, and any Lender whose name and address shall have been furnished Lessee in writing for such purpose, of written notice specifying wherein such obligation of Lessor has not been performed; provided, however, that if the nature of Lessor's obligation is such that more than 30 days are reasonably required for its performance, then Lessor shall not be in breach if performance is commenced within such 30 day period and thereafter diligently pursued to completion.

(b) **Performance by Lessee on Behalf of Lessor.** In the event that neither Lessor nor Lender cures said breach within 30 days after receipt of said notice, or if having commenced said cure they do not diligently pursue it to completion, then Lessee may elect to cure said breach at Lessee's expense and offset from Rent the actual and reasonable cost to perform such cure, provided however, that such offset shall not exceed an amount equal to the greater of one month's Base Rent or the Security Deposit, reserving Lessee's right to seek reimbursement from Lessor for any such expense in excess of such offset. Lessee shall document the cost of said cure and supply said documentation to Lessor.

14.    **Condemnation.** If the Premises or any portion thereof are taken under the power of eminent domain or sold under the threat of the exercise of said power (collectively "**Condemnation**"), this Lease shall terminate as to the part taken as of the date the condemning authority takes title or possession, whichever first occurs. If more than 10% of the Building, or more than 25% of that portion of the Premises not occupied by any building, is taken by Condemnation, Lessee may, at Lessee's option, to be exercised in writing within 10 days after Lessor shall have given Lessee written notice of such taking (or in the absence of such notice, within 10 days after the condemning authority shall have taken possession) terminate this Lease as of the date the condemning authority takes such possession. If Lessee does not terminate this Lease in accordance with the foregoing, this Lease shall remain in full force and effect as to the portion of the Premises remaining, except that the Base Rent shall be reduced in proportion to the reduction in utility of the Premises caused by such Condemnation. Condemnation awards and/or payments shall be the property of Lessor, whether such award shall be made as compensation for diminution in value of the leasehold, the value of the part taken, or for severance damages; provided, however, that Lessee shall be entitled to any compensation paid by the condemnor for Lessee's relocation expenses, loss of business goodwill and/or Trade Fixtures, without regard to whether or not this Lease is terminated pursuant to the provisions of this Paragraph. All Alterations and Utility Installations made to the Premises by Lessee, for purposes of Condemnation only, shall be considered the property of the Lessee and Lessee shall be entitled to any and all compensation which is payable therefor. In the event that this Lease is not terminated by reason of the Condemnation, Lessor shall repair any damage to the Premises caused by such Condemnation.

15.    **Brokerage Fees.**

15.1    **Additional Commission.** In addition to the payments owed pursuant to Paragraph 1.9 above, and unless Lessor and the Brokers otherwise agree in writing, Lessor agrees that: (a) if Lessee exercises any Option, (b) if Lessee or anyone affiliated with Lessee acquires any rights to the Premises or other premises owned by Lessor and located within the same Project, if any, within which the Premises is located, (c) if Lessee remains in possession of the Premises, with the consent of Lessor, after the expiration of this Lease, or (d) if Base Rent is increased, whether by agreement or operation of an escalation clause herein, then, Lessor shall pay Brokers a fee in accordance with the fee schedule of the Brokers in effect at the time the Lease was executed.

15.2    **Assumption of Obligations.** Any buyer or transferee of Lessor's interest in this Lease shall be deemed to have assumed Lessor's obligation hereunder. Brokers shall be third party beneficiaries of the provisions of Paragraphs 1.9, 15, 22 and 31. If Lessor fails to pay to Brokers any amounts due as and for brokerage fees pertaining to this Lease when due, then such amounts shall accrue Interest. In addition, if Lessor fails to pay any amounts to Lessee's Broker when due, Lessee's Broker may send written notice to Lessor and Lessee of such failure and if Lessor fails to pay such amounts within 10 days after said notice, Lessee shall pay said monies to its Broker and offset such amounts against Rent. In addition, Lessee's Broker shall be deemed to be a third party beneficiary of any commission agreement entered into by and/or between Lessor and Lessor's Broker for the limited purpose of collecting any brokerage fee owed.

15.3    **Representations and Indemnities of Broker Relationships.** Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder (other than the Brokers, if any) in connection with this Lease, and that no one other than said named Brokers is entitled to any commission or finder's fee in connection herewith. Lessee and Lessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

16.    **Estoppel Certificates.**

(a) Each Party (as "**Responding Party**") shall within 10 days after written notice from the other Party (the "**Requesting Party**") execute, acknowledge and deliver to the Requesting Party a statement in writing in form similar to the then most current "**Estoppel Certificate**" form published by the AIR Commercial Real Estate Association, plus such additional information, confirmation and/or statements as may be reasonably requested by the Requesting Party.

(b) If the Responding Party shall fail to execute or deliver the Estoppel Certificate within such 10 day period, the Requesting Party may execute an Estoppel Certificate stating that: (i) the Lease is in full force and effect without modification except as may be represented by the Requesting Party, (ii) there are no uncured defaults in the Requesting Party's performance, and (iii) if Lessor is the Requesting Party, not more than one month's rent has been paid in advance. Prospective purchasers and encumbrancers may rely upon the Requesting Party's Estoppel Certificate, and the Responding Party shall be estopped from denying the truth of the facts contained in said Certificate. In addition, Lessee acknowledges that any failure on its part to provide such an Estoppel Certificate will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain. Accordingly, should the Lessee fail to execute and/or deliver a requested Estoppel Certificate in a timely fashion the monthly Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater for remainder of the Lease. The Parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/costs that Lessor will incur by reason of Lessee's failure to provide the Estoppel Certificate. Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to the failure to provide the Estoppel Certificate nor prevent the exercise of any of the other rights and remedies granted hereunder.

(c) If Lessor desires to finance, refinance, or sell the Premises, or any part thereof, Lessee and all Guarantors shall within 10 days after written notice from Lessor deliver to any potential lender or purchaser designated by Lessor such financial statements as may be reasonably required by such lender or purchaser, including but not limited to Lessee's financial statements for the past 3 years. All such financial statements shall be received by Lessor and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

17.    **Definition of Lessor.** The term "**Lessor**" as used herein shall mean the owner or owners at the time in question of the fee title to the Premises, or, if this is a sublease, of the Lessee's interest in the prior lease. In the event of a transfer of Lessor's title or interest in the Premises or this Lease, Lessor shall deliver to the transferee or assignee (in cash or by credit) any unused Security Deposit held by Lessor. Upon such transfer or assignment and delivery of the Security Deposit, as aforesaid, the prior Lessor shall be relieved of all liability with respect to the obligations and/or covenants under this Lease thereafter to be performed by the Lessor. Subject to the foregoing, the obligations and/or covenants in this Lease to be performed by the Lessor shall be binding only upon the Lessor as hereinabove defined.

18.    **Severability.** The invalidity of any provision of this Lease, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

19.    **Days.** Unless otherwise specifically indicated to the contrary, the word "days" as used in this Lease shall mean and refer to calendar days.

**PAGE 9 OF 13**

**INITIALS**                                                                                                                        **INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                    FORM STG-20-07/14E

20.    **Limitation on Liability.**  The obligations of Lessor under this Lease shall not constitute personal obligations of Lessor or its partners, members, directors, officers or shareholders, and Lessee shall look to the Premises, and to no other assets of Lessor, for the satisfaction of any liability of Lessor with respect to this Lease, and shall not seek recourse against Lessor's partners, members, directors, officers or shareholders, or any of their personal assets for such satisfaction.

21.    **Time of Essence.**  Time is of the essence with respect to the performance of all obligations to be performed or observed by the Parties under this Lease.

22.    **No Prior or Other Agreements; Broker Disclaimer.**  This Lease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective.  Lessor and Lessee each represents and warrants to the Brokers that it has made, and is relying solely upon, its own investigation as to the nature, quality, character and financial responsibility of the other Party to this Lease and as to the use, nature, quality and character of the Premises.  Brokers have no responsibility with respect thereto or with respect to any default or breach hereof by either Party.

23.    **Notices.**

23.1    **Notice Requirements.**  All notices required or permitted by this Lease or applicable law shall be in writing and may be delivered in person (by hand or by courier) or may be sent by regular, certified or registered mail or U.S. Postal Service Express Mail, with postage prepaid, or by facsimile transmission, or by email, and shall be deemed sufficiently given if served in a manner specified in this Paragraph 23.  The addresses noted adjacent to a Party's signature on this Lease shall be that Party's address for delivery or mailing of notices.  Either Party may by written notice to the other specify a different address for notice, except that upon Lessee's taking possession of the Premises, the Premises shall constitute Lessee's address for notice.  A copy of all notices to Lessor shall be concurrently transmitted to such party or parties at such addresses as Lessor may from time to time hereafter designate in writing.

23.2    **Date of Notice.**  Any notice sent by registered or certified mail, return receipt requested, shall be deemed given on the date of delivery shown on the receipt card, or if no delivery date is shown, the postmark thereon.  If sent by regular mail the notice shall be deemed given 72 hours after the same is addressed as required herein and mailed with postage prepaid.  Notices delivered by United States Express Mail or overnight courier that guarantees next day delivery shall be deemed given 24 hours after delivery of the same to the Postal Service or courier.  Notices delivered by hand, or transmitted by facsimile transmission or by email shall be deemed delivered upon actual receipt.  If notice is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

24.    **Waivers.**

(a)    No waiver by Lessor of the Default or Breach of any term, covenant or condition hereof by Lessee, shall be deemed a waiver of any other term, covenant or condition hereof, or of any subsequent Default or Breach by Lessee of the same or of any other term, covenant or condition hereof.  Lessor's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to, or approval of, any subsequent or similar act by Lessee, or be construed as the basis of an estoppel to enforce the provision or provisions of this Lease requiring such consent.

(b)    The acceptance of Rent by Lessor shall not be a waiver of any Default or Breach by Lessee.  Any payment by Lessee may be accepted by Lessor on account of moneys or damages due Lessor, notwithstanding any qualifying statements or conditions made by Lessee in connection therewith, which such statements and/or conditions shall be of no force or effect whatsoever unless specifically agreed to in writing by Lessor at or before the time of deposit of such payment.

(c)    THE PARTIES AGREE THAT THE TERMS OF THIS LEASE SHALL GOVERN WITH REGARD TO ALL MATTERS RELATED THERETO AND HEREBY WAIVE THE PROVISIONS OF ANY PRESENT OR FUTURE STATUTE TO THE EXTENT THAT SUCH STATUTE IS INCONSISTENT WITH THIS LEASE.

25.    **Disclosures Regarding The Nature of a Real Estate Agency Relationship.**

(a)    When entering into a discussion with a real estate agent regarding a real estate transaction, a Lessor or Lessee should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction.  Lessor and Lessee acknowledge being advised by the Brokers in this transaction, as follows:

(i)    **Lessor's Agent.**  A Lessor's agent under a listing agreement with the Lessor acts as the agent for the Lessor only.  A Lessor's agent or subagent has the following affirmative obligations:  To the Lessor:  A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Lessor.  To the Lessee and the Lessor:  a. Diligent exercise of reasonable skills and care in performance of the agent's duties.  b. A duty of honest and fair dealing and good faith.  c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties.  An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(ii)    **Lessee's Agent.**  An agent can agree to act as agent for the Lessee only.  In these situations, the agent is not the Lessor's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Lessor.  An agent acting only for a Lessee has the following affirmative obligations:  To the Lessee:  A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Lessee.  To the Lessee and the Lessor:  a. Diligent exercise of reasonable skills and care in performance of the agent's duties.  b. A duty of honest and fair dealing and good faith.  c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties.  An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(iii)    **Agent Representing Both Lessor and Lessee.**  A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Lessor and the Lessee in a transaction, but only with the knowledge and consent of both the Lessor and the Lessee.  In a dual agency situation, the agent has the following affirmative obligations to both the Lessor and the Lessee:  a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Lessor or the Lessee.  b. Other duties to the Lessor and the Lessee as stated above in subparagraphs (i) or (ii). In representing both Lessor and Lessee, the agent may not without the express permission of the respective Party, disclose to the other Party that the Lessor will accept rent in an amount less than that indicated in the listing or that the Lessee is willing to pay a higher rent than that offered.  The above duties of the agent in a real estate transaction do not relieve a Lessor or Lessee from the responsibility to protect their own interests.  Lessor and Lessee should carefully read all agreements to assure that they adequately express their understanding of the transaction.  A real estate agent is a person qualified to advise about real estate.  If legal or tax advice is desired, consult a competent professional.

(b)    Brokers have no responsibility with respect to any default or breach hereof by either Party.  The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this Lease may be brought against Broker more than one year after the Start Date and that the liability (including court costs and attorneys' fees), of any Broker with respect to any such lawsuit and/or legal proceeding shall not exceed the fee received by such Broker pursuant to this Lease; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

(c)    Lessor and Lessee agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

26.    **No Right To Holdover.**  Lessee has no right to retain possession of the Premises or any part thereof beyond the expiration or termination of this Lease.  In the event that Lessee holds over, then the Base Rent shall be increased to 150% of the Base Rent applicable immediately preceding the expiration or termination.  Holdover Base Rent shall be calculated on monthly basis.  Nothing contained herein shall be construed as consent by Lessor to any holding over by Lessee.

27.    **Cumulative Remedies.**  No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

28.    **Covenants and Conditions; Construction of Agreement.**  All provisions of this Lease to be observed or performed by Lessee are both covenants and conditions.  In construing this Lease, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Lease.  Whenever required by the context, the singular shall include the plural and vice versa.  This Lease shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

29.    **Binding Effect; Choice of Law.**  This Lease shall be binding upon the Parties, their personal representatives, successors and assigns and be governed by the laws of the State in which the Premises are located.  Any litigation between the Parties hereto concerning this Lease shall be initiated in the county in which the Premises are located.

30.    **Subordination; Attornment; Non-Disturbance.**

30.1    **Subordination.**  This Lease and any Option granted hereby shall be subject and subordinate to any ground lease, mortgage, deed of trust, or other hypothecation or security device (collectively, **"Security Device"**), now or hereafter placed upon the Premises, to any and all advances made on the security thereof, and to all renewals, modifications, and extensions thereof.  Lessee agrees that the holders of any such Security Devices (in this Lease together referred to as **"Lender"**) shall have no liability or obligation to perform any of the obligations of Lessor under this Lease.  Any Lender may elect to have this Lease and/or any Option granted hereby superior to the lien of its Security Device by giving written notice thereof to Lessee, whereupon this Lease and such Options shall be deemed prior to such Security Device, notwithstanding the relative dates of the documentation or recordation thereof.

**PAGE 10 OF 13**

INITIALS

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

30.2    **Attornment.** In the event that Lessor transfers title to the Premises, or the Premises are acquired by another upon the foreclosure or termination of a Security Device to which this Lease is subordinated (i) Lessee shall, subject to the non-disturbance provisions of Paragraph 30.3, attorn to such new owner, and upon request, enter into a new lease, containing all of the terms and provisions of this Lease, with such new owner for the remainder of the term hereof, or, at the election of the new owner, this Lease will automatically become a new lease between Lessee and such new owner, and (ii) Lessor shall thereafter be relieved of any further obligations hereunder and such new owner shall assume all of Lessor's obligations, except that such new owner shall not: (a) be liable for any act or omission of any prior lessor or with respect to events occurring prior to acquisition of ownership; (b) be subject to any offsets or defenses which Lessee might have against any prior lessor, (c) be bound by prepayment of more than one month's rent, or (d) be liable for the return of any security deposit paid to any prior lessor which was not paid or credited to such new owner.

30.3    **Non-Disturbance.** With respect to Security Devices entered into by Lessor after the execution of this Lease, Lessee's subordination of this Lease shall be subject to receiving a commercially reasonable non-disturbance agreement (a **"Non-Disturbance Agreement"**) from the Lender which Non-Disturbance Agreement provides that Lessee's possession of the Premises, and this Lease, including any options to extend the term hereof, will not be disturbed so long as Lessee is not in Breach hereof and attorns to the record owner of the Premises. Further, within 60 days after the execution of this Lease, Lessor shall, if requested by Lessee, use its commercially reasonable efforts to obtain a Non-Disturbance Agreement from the holder of any pre-existing Security Device which is secured by the Premises. In the event that Lessor is unable to provide the Non-Disturbance Agreement within said 60 days, then Lessee may, at Lessee's option, directly contact Lender and attempt to negotiate for the execution and delivery of a Non-Disturbance Agreement.

30.4    **Self-Executing.** The agreements contained in this Paragraph 30 shall be effective without the execution of any further documents; provided, however, that, upon written request from Lessor or a Lender in connection with a sale, financing or refinancing of the Premises, Lessee and Lessor shall execute such further writings as may be reasonably required to separately document any subordination, attornment and/or Non-Disturbance Agreement provided for herein.

31.    **Attorneys' Fees.** If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees . Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term, **"Prevailing Party"** shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred. In addition, Lessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach ($200 is a reasonable minimum per occurrence for such services and consultation).

32.    **Lessor's Access; Showing Premises; Repairs.** Lessor and Lessor's agents shall have the right to enter the Premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable prior notice for the purpose of showing the same to prospective purchasers, lenders, or tenants, and making such alterations, repairs, improvements or additions to the Premises as Lessor may deem necessary or desirable and the erecting, using and maintaining of utilities, services, pipes and conduits through the Premises and/or other premises as long as there is no material adverse effect to Lessee's use of the Premises. All such activities shall be without abatement of rent or liability to Lessee.

33.    **Auctions.** Lessee shall not conduct, nor permit to be conducted, any auction upon the Premises without Lessor's prior written consent. Lessor shall not be obligated to exercise any standard of reasonableness in determining whether to permit an auction.

34.    **Signs.** Lessor may place on the Premises ordinary "For Sale" signs at any time and ordinary "For Lease" signs during the last 6 months of the term hereof. Except for ordinary "for sublease" signs, Lessee shall not place any sign upon the Premises without Lessor's prior written consent. All signs must comply with all Applicable Requirements.

35.    **Termination; Merger.** Unless specifically stated otherwise in writing by Lessor, the voluntary or other surrender of this Lease by Lessee, the mutual termination or cancellation hereof, or a termination hereof by Lessor for Breach by Lessee, shall automatically terminate any sublease or lesser estate in the Premises; provided, however, that Lessor may elect to continue any one or all existing subtenancies. Lessor's failure within 10 days following any such event to elect to the contrary by written notice to the holder of any such lesser interest, shall constitute Lessor's election to have such event constitute the termination of such interest.

36.    **Consents.** Except as otherwise provided herein, wherever in this Lease the consent of a Party is required to an act by or for the other Party, such consent shall not be unreasonably withheld or delayed. Lessor's actual reasonable costs and expenses (including but not limited to architects', attorneys', engineers' and other consultants' fees) incurred in the consideration of, or response to, a request by Lessee for any Lessor consent, including but not limited to consents to an assignment, a subletting or the presence or use of a Hazardous Substance, shall be paid by Lessee upon receipt of an invoice and supporting documentation therefor. Lessor's consent to any act, assignment or subletting shall not constitute an acknowledgment that no Default or Breach by Lessee of this Lease exists, nor shall such consent be deemed a waiver of any then existing Default or Breach, except as may be otherwise specifically stated in writing by Lessor at the time of such consent. The failure to specify herein any particular condition to Lessor's consent shall not preclude the imposition by Lessor at the time of consent of such further or other conditions as are then reasonable with reference to the particular matter for which consent is being given. In the event that either Party disagrees with any determination made by the other hereunder and reasonably requests the reasons for such determination, the determining party shall furnish its reasons in writing and in reasonable detail within 10 business days following such request.

37.    **Guarantor.**

37.1    **Execution.** The Guarantors, if any, shall each execute a guaranty in the form most recently published by the AIR Commercial Real Estate Association.

37.2    **Default.** It shall constitute a Default of the Lessee if any Guarantor fails or refuses, upon request to provide: (a) evidence of the execution of the guaranty, including the authority of the party signing on Guarantor's behalf to obligate Guarantor, and in the case of a corporate Guarantor, a certified copy of a resolution of its board of directors authorizing the making of such guaranty, (b) current financial statements. (c) an Estoppel Certificate, or (d) written confirmation that the guaranty is still in effect.

38.    **Quiet Possession.** Subject to payment by Lessee of the Rent and performance of all of the covenants, conditions and provisions on Lessee's part to be observed and performed under this Lease, Lessee shall have quiet possession and quiet enjoyment of the Premises during the term hereof.

39.    **Options.** If Lessee is granted any Option, as defined below, then the following provisions shall apply:

39.1    **Definition.** "Option" shall mean: (a) the right to extend or reduce the term of or renew this Lease or to extend or reduce the term of or renew any lease that Lessee has on other property of Lessor; (b) the right of first refusal or first offer to lease either the Premises or other property of Lessor; (c) the right to purchase, the right of first offer to purchase or the right of first refusal to purchase the Premises or other property of Lessor.

39.2    **Options Personal To Original Lessee.** Any Option granted to Lessee in this Lease is personal to the original Lessee, and cannot be assigned or exercised by anyone other than said original Lessee and only while the original Lessee is in full possession of the Premises and, if requested by Lessor, with Lessee certifying that Lessee has no intention of thereafter assigning or subletting.

39.3    **Multiple Options.** In the event that Lessee has any multiple Options to extend or renew this Lease, a later Option cannot be exercised unless the prior Options have been validly exercised.

39.4    **Effect of Default on Options.**

(a) Lessee shall have no right to exercise an Option: (i) during the period commencing with the giving of any notice of Default and continuing until said Default is cured, (ii) during the period of time any Rent is unpaid (without regard to whether notice thereof is given Lessee), (iii) during the time Lessee is in Breach of this Lease, or (iv) in the event that Lessee has been given 3 or more notices of separate Default, whether or not the Defaults are cured, during the 12 month period immediately preceding the exercise of the Option.

(b) The period of time within which an Option may be exercised shall not be extended or enlarged by reason of Lessee's inability to exercise an Option because of the provisions of Paragraph 39.4(a).

(c) An Option shall terminate and be of no further force or effect, notwithstanding Lessee's due and timely exercise of the Option, if, after such exercise and prior to the commencement of the extended term or completion of the purchase, (i) Lessee fails to pay Rent for a period of 30 days after such Rent becomes due (without any necessity of Lessor to give notice thereof), or (ii) if Lessee commits a Breach of this Lease.

40.    **Multiple Buildings.** If the Premises are a part of a group of buildings controlled by Lessor, Lessee agrees that it will abide by and conform to all reasonable rules and regulations which Lessor may make from time to time for the management, safety, and care of said properties, including the care and cleanliness of the grounds and including the parking, loading and unloading of vehicles, and to cause its employees, suppliers, shippers, customers, contractors and invitees to so abide and conform. Lessee also agrees to pay its fair share of common expenses incurred in connection with such rules and regulations.

41.    **Security Measures.** Lessee hereby acknowledges that the Rent payable to Lessor hereunder does not include the cost of guard service or other security measures, and that Lessor shall have no obligation whatsoever to provide same. Lessee assumes all responsibility for the protection of the Premises, Lessee, its agents and invitees and their property from the acts of third parties.

42.    **Reservations.** Lessor reserves to itself the right, from time to time, to grant, without the consent or joinder of Lessee, such easements, rights and dedications that Lessor deems necessary, and to cause the recordation of parcel maps and restrictions, so long as such easements, rights,

**INITIALS**

**INITIALS**

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

dedications, maps and restrictions do not unreasonably interfere with the use of the Premises by Lessee. Lessee agrees to sign any documents reasonably requested by Lessor to effectuate any such easement rights, dedication, map or restrictions.

43.    **Performance Under Protest.** If at any time a dispute shall arise as to any amount or sum of money to be paid by one Party to the other under the provisions hereof, the Party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said Party to institute suit for recovery of such sum. If it shall be adjudged that there was no legal obligation on the part of said Party to pay such sum or any part thereof, said Party shall be entitled to recover such sum or so much thereof as it was not legally required to pay. A Party who does not initiate suit for the recovery of sums paid "under protest" within 6 months shall be deemed to have waived its right to protest such payment.

44.    **Authority; Multiple Parties; Execution.**

(a)    If either Party hereto is a corporation, trust, limited liability company, partnership, or similar entity, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on its behalf. Each Party shall, within 30 days after request, deliver to the other Party satisfactory evidence of such authority.

(b)    If this Lease is executed by more than one person or entity as "Lessee", each such person or entity shall be jointly and severally liable hereunder. It is agreed that any one of the named Lessees shall be empowered to execute any amendment to this Lease, or other document ancillary thereto and bind all of the named Lessees, and Lessor may rely on the same as if all of the named Lessees had executed such document.

(c)    This Lease may be executed by the Parties in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

45.    **Conflict.** Any conflict between the printed provisions of this Lease and typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

46.    **Offer.** Preparation of this Lease by either Party or their agent and submission of same to the other Party shall not be deemed an offer to lease to the other Party. This Lease is not intended to be binding until executed and delivered by all Parties hereto.

47.    **Amendments.** This Lease may be modified only in writing, signed by the Parties in interest at the time of the modification. As long as they do not materially change Lessee's obligations hereunder, Lessee agrees to make such reasonable non-monetary modifications to this Lease as may be reasonably required by a Lender in connection with the obtaining of normal financing or refinancing of the Premises.

48.    **Waiver of Jury Trial.    THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.**

49.    **Arbitration of Disputes.** An Addendum requiring the Arbitration of disputes between the Parties and/or Brokers arising out of this Lease ☐ is ☒ is not attached to this Lease.

50.    **Accessibility; Americans with Disabilities Act.**

(a)    The Premises: ☒ have not undergone an inspection by a Certified Access Specialist (CASp). ☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises met all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq. ☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises did not meet all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq.

(b)    Since compliance with the Americans with Disabilities Act (ADA) is dependent upon Lessee's specific use of the Premises, Lessor makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation. In the event that Lessee's use of the Premises requires modifications or additions to the Premises in order to be in ADA compliance, Lessee agrees to make any such necessary modifications and/or additions at Lessee's expense.

**LESSOR AND LESSEE HAVE CAREFULLY READ AND REVIEWED THIS LEASE AND EACH TERM AND PROVISION CONTAINED HEREIN, AND BY THE EXECUTION OF THIS LEASE SHOW THEIR INFORMED AND VOLUNTARY CONSENT THERETO. THE PARTIES HEREBY AGREE THAT, AT THE TIME THIS LEASE IS EXECUTED, THE TERMS OF THIS LEASE ARE COMMERCIALLY REASONABLE AND EFFECTUATE THE INTENT AND PURPOSE OF LESSOR AND LESSEE WITH RESPECT TO THE PREMISES.**

**ATTENTION:** NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS LEASE OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1. SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS LEASE.

2. RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PREMISES, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PREMISES FOR LESSEE'S INTENDED USE.

**WARNING:** IF THE PREMISES IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THE LEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PREMISES IS LOCATED.

The parties hereto have executed this Lease at the place and on the dates specified above their respective signatures.

| | |
|---|---|
| Executed at: Los Angeles | Executed at: |
| On: 1/23/15 | On: |
| By **LESSOR:** | By **LESSEE:** |
| Tanager Co., LLC, a California Limited Liability Company | Tak Ye International, Inc., a California Corporation |
| By: _(signature)_ | By: _(signature)_ |
| Name Printed: Kenneth S. Millman | Name Printed: Sain Chen |
| Title: Manager | Title: Manager |
| By: | By: |
| Name Printed: | Name Printed: |
| Title: | Title: |
| Address: 1880 Century Park East, Suite 607 | Address: 3014 Tanager Avenue |
| Los Angeles, California 90067 | Commerce, California 90040 |
| Telephone: (310) 552-2811 | Telephone: ( ) |
| Facsimile: (310) 552-2804 | Facsimile: ( ) |
| Email: kmillman@millcoinv.com | Email: |
| Email: smillman@millcoinv.com | Email: |
| Federal ID No. | Federal ID No. |

**BROKER:**                                      **BROKER:**

_(initials)_

INITIALS

_(initials)_

INITIALS

©2001 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM STG-20-07/14E

Att: _____          Att: _____
Title: _____          Title: _____
Address: _____          Address: _____
_____       _____
Telephone:(____)_____          Telephone:(____)_____
Facsimile:(____)_____          Facsimile:(____)_____
Email: _____          Email: _____
Federal ID No. _____          Federal ID No. _____
Broker/Agent BRE License #: ____          Broker/Agent BRE License #: ____
_____       _____
_____       _____

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you
are utilizing the most current form:  AIR Commercial Real Estate Association,  500 N Brand Blvd, Suite 900, Glendale, CA 91203.
Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.

© Copyright 2001 - By AIR Commercial Real Estate Association.  All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

## ADDENDUM TO STANDARD INDUSTRIAL/COMMERCIAL
## SINGLE-TENANT LEASE – GROSS

| | |
|---|---|
| Lessor: | Tanager Co., LLC, a California Limited Liability Company |
| Lessee: | Tak Ye International, Inc., a California Corporation |

| | |
|---|---|
| Premises: | 3014 Tanager Avenue, Commerce, California 90040 |
| Dated: | December 15, 2014 |

| | | |
|---|---|---|
| 51. | Rental Adjustments: | The monthly Base Rent shall be adjusted as follows: |

> Months 13-24:  $10,300.00 per month
> Months 25-36:  $10,609.00 per month
> Months 37-48:  $10,927.00 per month
> Months 49-60:  $11,255.00 per month

| | | |
|---|---|---|
| 52. | Rental Abatement: | Notwithstanding anything to the contrary contained in the Lease, the Base Rent shall be abated for March 2018. Lessee shall be responsible for all other expenses as contained in the Lease. |
| 53. | Maintenance/Repairs: | Notwithstanding anything to the contrary contained in Paragraph 7.1, Lessor, subject to Lessee's reimbursement of such costs, shall be responsible for performing maintenance and repair of the landscaping, parking areas, and HVAC systems and also contract for fire sprinkler monitoring including telephone lines needed for servicing said monitoring. Lessee shall, with each monthly payment of rent, reimburse Lessor for all reasonable expenses incurred for said maintenance, repair and monitoring. |
| 54. | Base Real Estate Taxes: | Notwithstanding anything to the contrary contained in Paragraph 10, the base year Real Estate Taxes shall be $11,402.17. |
| 55. | Early Termination Right: | Notwithstanding anything to the contrary contained in the Lease, Lessee shall have one (1) one-time right (the "Termination Right") to terminate the Lease effective as of 11:59:59 p.m. Pacific Standard Time on February 28, 2018 (the "Termination Date"), provided that, as a condition precedent to such early termination: (a) Lessor shall have received written notice (the "Termination Notice") from Lessee on or before August 31, 2017 (the "Outside Termination Notice Date"), stating that Lessee intends to terminate the Lease pursuant to the terms of this Section; and (b) Lessee shall cure any default under the Lease. Provided that Lessee performs all of the foregoing in accordance with the terms of this Section, the Lease shall automatically terminate and be of no further force or effect (except as set forth below) as of the Termination Date, and Lessor and Lessee shall thereafter be relieved of their respective obligations under the Lease; provided, however, and notwithstanding anything to the contrary contained in the Lease, Lessor shall have all the rights and remedies with respect to any obligation of Lessee under the Lease that accrues on or prior to the Termination Date and is not satisfied by Lessee on or prior to the Termination Date (e.g., Lessee's obligations regarding indemnity, insurance, maintenance and repair, surrender of the Premises and with respect to Lessee's payment of any Rent; without limiting the generality of the forgoing, such payment obligation of Lessee shall specifically include the payment of any amounts owed in connection with any future reconciliation of Common Area Operating Expenses in accordance with the terms of the Lease), and with respect to any obligations of Lessee that expressly survive the expiration or earlier termination of the Lease. In the event Lessee exercises the Termination Right in accordance with the terms herein, Lessee shall vacate the Premises and surrender and deliver exclusive |

initials

initials

possession thereof to Lessor in accordance with the terms of the Lease. The Termination Right shall expire and be of no further force or effect in the event Lessee fails to deliver the Termination Notice to Lessor by the applicable Outside Termination Notice Date, time being of the essence with respect thereto. In the event Lessee exercises the Termination Right in accordance with the terms of this Section but retains possession of the Premises or any part thereof after the Termination Date, then, in addition to all other rights and remedies Lessor may have pursuant to the Lease and at law and equity, Lessee shall be deemed a holdover tenant and the provisions of Paragraph 26 of the Lease shall apply. The rights contained in this section shall be personal to the Named Lessee only and may only be exercised by the Named Lessee if the Named Lessee occupies the entire Premises at all times prior to the Termination Date (and may not be exercised by any assignee, sublessee or other transferee of or successor to the Named Lessee's interest in the Lease or to the Premises).

initials

initials



## AIR COMMERCIAL REAL ESTATE ASSOCIATION
# GUARANTY OF LEASE

WHEREAS,  Tanager Co., LLC, a California Limited Liability Company _____ , hereinafter "Lessor", and  Tak Ye International, Inc., a California Corporation _____ , hereinafter "Lessee", are about to execute a document entitled "Lease" dated  December 15, 2014 _____ concerning the premises commonly known as  3014 Tanager Avenue, Commerce, California 90040 _____

wherein Lessor will lease the premises to Lessee, and

WHEREAS  ~~Johnny Chek and~~ Sain Chek, ~~jointly and severally~~

hereinafter "Guarantors" have a financial interest in Lessee, and

WHEREAS, Lessor would not execute the Lease if Guarantors did not execute and deliver to Lessor this Guarantee of Lease.

NOW THEREFORE, in consideration of the execution of the foregoing Lease by Lessor and as a material inducement to Lessor to execute said Lease, Guarantors hereby jointly, severally, unconditionally and irrevocably guarantee the prompt payment by Lessee of all rents and all other sums payable by Lessee under said Lease and the faithful and prompt performance by Lessee of each and every one of the terms, conditions and covenants of said Lease to be kept and performed by Lessee.

It is specifically agreed that the terms of the foregoing Lease may be modified by agreement between Lessor and Lessee, or by a course of conduct, and said Lease may be assigned by Lessor or any assignee of Lessor without consent or notice to Guarantors and that this Guaranty shall guarantee the performance of said Lease as so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor to enforce any of the rights or remedies of the Lessor under said Lease, whether pursuant to the terms thereof or at law or in equity.

No notice of default need be given to Guarantors, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Lessee and/or against Guarantors following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease or at law or in equity.

Lessor shall have the right to proceed against Guarantors hereunder following any breach or default by Lessee without first proceeding against Lessee and without previous notice to or demand upon either Lessee or Guarantors.

Guarantors hereby waive (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty or the Lease, (d) any right to require the Lessor to proceed against the Lessee or any other Guarantor or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default any security deposit or other security it may hold under the Lease, (f) any right to require Lessor to proceed under any other remedy Lessor may have before proceeding against Guarantors, (g) any right of subrogation.

Guarantors do hereby subrogate all existing or future indebtedness of Lessee to Guarantors to the obligations owed to Lessor under the Lease and this Guaranty.

If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property for all of the obligations hereunder.

The obligations of Lessee under the Lease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantors hereunder to do and provide the same.

The term "Lessor" refers to and means the Lessor named in the Lease and also Lessor's successors and assigns.  So long as Lessor's interest in the Lease, the leased premises or the rents, issues and profits therefrom, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantors of the Lessor's interest shall affect the continuing obligation of Guarantors under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment and their successors and assigns.

The term "Lessee" refers to and means the Lessee named in the Lease and also Lessee's successors and assigns.

In the event any action be brought by said Lessor against Guarantors hereunder to enforce the obligation of Guarantors hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the court.

**If this Form has been filled in, it has been prepared for submission to your attorney for his approval.  No representation or recommendation is made by the AIR Commercial Real Estate Association, the real estate broker or its agents or employees as to the legal sufficiency, legal effect, or tax consequences of this Form or the transaction relating thereto.**

Executed at:  _Tak Ye International_
On:  _1/8/15_
Address:  _3014 Tanager AVE_
_Commerce, CA 90040_                              "GUARANTORS"

©1996 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                          FORM GR-1-12/96E

# FIRST AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE GROSS

**THIS FIRST AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE GROSS** dated, for reference purposes only as of February 10, 2020 (this "First Amendment"), is entered into by and between **TANAGER CO., LLC,** a California Limited Liability Company ("Lessor") and **TAK YE INTERNATIONAL, INC.** a California Corporation ("Lessee") with reference to the following:

## R E C I T A L S

**WHEREAS**, Lessor and Lessee entered into that certain Standard Industrial/Commercial Single-Lessee Lease Gross dated, for reference purposes only, as of December 15, 2015 (the "Lease"), by and between Lessor, as lessor, and Lessee, as lessee, for the lease of that certain premises consisting of approximately 17,875 rentable square feet of building located at 3014 Tanager Avenue, Commerce, California, as more particularly described in the Lease. All capitalized terms used herein, and not otherwise defined herein, shall have the meanings ascribed to such terms in the Lease; and

**WHEREAS**, Lessor and Lessee desire to amend the Lease in order to, among other things, extend the Term of the Lease and provide for the rent and other terms applicable in connection with such extension, all upon the terms and provisions set forth in this First Amendment.

**NOW, THEREFORE**, in consideration of the forgoing Recitals, which are incorporated herein by this reference, for the mutual promises that are contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree as follows:

1.      **Extension of Term.**  Notwithstanding anything to the contrary contained in the Lease, Lessor and Lessee agree that the Term shall hereby be extended for a period of sixty (60) months ("Extended Term") commencing on March 1, 2020 and ending on February 28, 2025.

2.      **Base Rent for the Extended Term**.  Notwithstanding anything to the contrary contained in the Lease, Base Rent during the Extended Term shall be $15,195.00 per month due and payable on the first day of each month. The Base Rent shall be subject to a three percent (3%) increase on each anniversary date of the Extended Term, as follows:

- March 1, 2021:      $15,650.85
- March 1, 2022:      $16,120.38
- March 1, 2023:      $16,603.99
- March 1, 2024:      $17,192.11

3.      **Rent Abatement.** Provided that Lessee is not in Default under the terms of the Lease and this First Amendment, Lessee's Base Rent for May 2020 shall be abated.

4.      **Lessee's Estoppel**. Lessee hereby certifies and acknowledges that, as of the date of Lessee's execution of this First Amendment: (a) Lessor is not in default in any respect under the Lease; (b) Lessee does not have any defenses to its obligations under the Lease and (c) there are no offsets against Rent. Lessee acknowledges and agrees that: (i) the representations herein set forth constitute a material consideration to Lessor in entering into this First Amendment; (ii) such representations are being made by Lessee for the purposes of inducing Lessor to enter into this First Amendment and (iii) Lessor is relying on such representations in entering into this First Amendment.

5.      **Confidentiality**. Lessor and Lessee hereby agree to keep the terms of the Lease and this First Amendment and the negotiation of the Lease and this First Amendment confidential, and neither party shall disseminate or disclose such information to third parties except with each party's financial, legal and space planning advisors and consultants in connection with the negotiation and documentation of this First Amendment.

6.      **Entire Agreement.** This First Amendment contains the entire agreement and understanding between the parties concerning the subject matter of this First Amendment and supersedes all prior agreements, terms, understandings, conditions, representations and warranties, whether written or oral, concerning the matters that are the subject of this First Amendment. Wherever possible, each term of this First Amendment shall be interpreted in such a manner as to be valid under applicable laws, rules, regulations and court authority, but if, notwithstanding the foregoing, any term of this First Amendment is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining terms of this First Amendment shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.      **Ratification.** Lessor and Lessee hereby ratify and confirm their respective rights and obligations under the Lease. In the event of any conflict between the terms of the Lease and the terms of this First Amendment, the terms of this First Amendment shall control.

8.      **Successors and Assigns.** This First Amendment shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and assigns.

9.      **Headings.** The headings to sections of this First Amendment are for convenient reference only and shall not be used in interpreting this First Amendment.

10.     **Counterparts.** This First Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

11.     <u>**Representations and Indemnities of Broker Relationships.**</u>  Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder in connection with this Lease, and that no one is entitled to any commission or finder's fee in connection herewith. Lessee and Lessor do hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses attorneys' fees reasonably incurred with respect thereto.

**IN WITNESS WHEREOF**, Lessor and Lessee have caused their duly authorized representatives to execute this First Amendment as of the date first above written.

**LESSOR:**

**TANAGER CO., LLC**

By:  _____

     Name:  Kenneth S. Millman
     Title:   Manager

**LESSEE:**

**TAK YE INTERNATIONAL, INC.**
a California Corporation

By:  _____

     Name:  Kin Wa Chek
     Title:   President

## SECOND AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE GROSS

**THIS SECOND AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL SINGLE-TENANT LEASE GROSS** (this "**Second Amendment**") is made as of May 15, 2020 by and between **TANAGER CO., LLC**, a California Limited Liability Company ("Lessor") and **TAK YE INTERNATIONAL, INC.** a California Corporation ("Lessee").

### RECITALS

**WHEREAS,** Lessor and Lessee are parties to that certain Standard Industrial/Commercial Single-Tenant Lease Gross dated as of December 15, 2015 (the "**Original Lease**") between Lessor and Lessee, as amended by that certain First Amendment to Standard Industrial/Commercial Single-Tenant Lease Gross dated as of February 10, 2020 (the "**First Amendment**"; the Original Lease as amended by the First Amendment is hereinafter referred to as the "**Lease**") between Lessor and Lessee for the lease of certain premises (the "**Premises**") located at 3014 Tanager Avenue, Commerce, California (the "**Building**"), containing approximately 17,875 rentable square feet, as more particularly described in the Lease.

**WHEREAS,** Lessor and Lessee desire by this Second Amendment to amend the Lease in order to (i) provide for a Deferred Base Rent (as hereinafter defined).

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee agree that the Lease is amended as follows:

1.    **Definitions**.    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Lease. Unless the context clearly indicates otherwise, all references to the "Lease" in the Lease and in this Second Amendment shall hereinafter be deemed to refer to the Lease, as amended hereby.

2.    **Deferral of Rent**. Provided that no Breach by Lessee occurs under the Lease and subject to Section 3 below, Lessee shall be entitled to defer $12,000.00 of Lessee's monthly installments of Rent (the "**Deferred Rent**") for the period (the "**Deferral Period**") commencing on May 1, 2020 and expiring on June 30, 2020 such that during the Deferral Period Lessee shall pay $3,496.50 per month in Rent and Common Area Charges due under the Lease during the Deferral Period.    During the Deferral Period, Lessee's Share of Common Area Operating Expenses (which shall include increases above the Base Real Property Taxes and Insurance Cost Increases) shall remain payable in full as set forth in the Lease. Upon the occurrence of a Breach by Lessee, in addition to any rights and remedies available to Lessor under the Lease, at law or in equity, (a) all deferral of Base Rent shall cease, (b) the Rent payable by Lessee during the remainder of the Deferral Period shall revert to the full Rent that would otherwise be payable under the Lease in the absence of this Second Amendment, and (c) Lessee shall pay Lessor upon demand all Rent previously deferred under this Section 2.

1

3.      **Repayment of Deferred Rent**. Commencing on January 1, 2021, in addition to, and not in lieu of, all Rent for which Lessee is responsible under the Lease, Lessee shall repay the Deferred Rent over the following twelve (12) months (i.e., from January 1, 2021 through December 31, 2021) (the "**Deferral Repayment Period**"), in twelve (12) equal monthly installments, payable on the first day of each month and due concurrently with Lessee's payments of Rent. Notwithstanding the foregoing to the contrary, Lessee shall have the right at any time prior to the end of the Deferral Repayment Period, to accelerate its repayment of the Deferred Rent by paying off the outstanding amount of Deferred Rent in full or making monthly payments in excess of the monthly installments of Deferred Rent, provided that Lessee notifies Lessor in writing (at the time it delivers such payment) that the same is intended as a "payment in full" for, or as excess funds to be applied toward, the outstanding amount of Deferred Rent.

4.      **Confidentiality**. Lessee understands and agrees that the granting of the deferral of Rent to Lessee hereunder is highly confidential and that neither Lessee nor any of its officers, directors, employees, representatives or agents shall disclose to any party (a) the fact that Lessor has granted any rental concessions to Lessee, or (b) any information regarding the type or amount of such rental concessions (collectively, the "**Confidential Information**"). Notwithstanding anything to the contrary set forth in this Section 4, Lessee may disclose the Confidential Information to its attorneys, financial advisors and accountants for the purpose of preparing tax returns or other governmentally required information or documents, or for business planning; provided, that, Lessee informs such recipients of the confidential nature of the Confidential Information and takes responsibility for such persons or entities not disclosing the Confidential Information to any other person or entity, other than as required by law.

5.      **Lessee's Estoppel**. Lessee hereby certifies and acknowledges that, as of the date of the mutual execution of this Second Amendment, (a) Lessor is not in default in any respect under the Lease; (b) Lessee does not have any defenses to its obligations under the Lease; (c) there are no offsets against Rent; and (d) Lessor has completed any improvements and paid any allowances required to be constructed or paid by Lessor in accordance with the terms of the Lease. Lessee acknowledges and agrees that: (i) the representations herein set forth constitute a material consideration to Lessor in entering into this Second Amendment; (ii) such representations are being made by Lessee for purposes of inducing Lessor to enter into this Second Amendment; and (iii) Lessor is relying on such representations in entering into this Second Amendment.

6.      **Entire Agreement**. This Second Amendment contains the entire agreement and understanding between the parties concerning the subject matter of this Second Amendment and supersedes all prior agreements, terms, understandings, conditions, representations and warranties, whether written or oral, concerning the matters that are the subject of this Second Amendment. Wherever possible, each term of this Second Amendment shall be interpreted in such a manner as to be valid under applicable laws, rules, regulations and court authority, but if, notwithstanding the foregoing, any term of this Second Amendment is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining terms of this Second

Amendment shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.    **Effect of Amendment**. Except as expressly modified herein, the Lease is and shall remain in full force and effect according to the terms thereof including the Guaranty of Lease. In the event of any conflict between the terms and conditions of the Lease, on the one hand, and the terms and conditions of this Second Amendment, on the other hand, the terms and conditions of this Second Amendment shall control. Notwithstanding the foregoing to the contrary, whether or not expressly modified by this Second Amendment, the provisions of the Lease are amended to the extent necessary to give effect to the purpose and intent of this Second Amendment.

8.    **Headings**.   The headings to sections of this Second Amendment are for convenient reference only and shall not be used in interpreting this Second Amendment.

9.    **Counterparts.** This Second Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

[Signature Page Follows]

**IN WITNESS WHEREOF**, Lessor and Lessee have caused their duly authorized representatives to execute this Second Amendment as of the date first above written.

LESSOR:

**TANAGER CO., LLC,**
a California limited liability company

By: _____
Name: _____
Title: _____

LESSEE:

**TAK YE INTERNATIONAL, INC.,**
a California Corporation

By: _____
Name: Kin Wa Chek
Title: CEO

4

**THIRD AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL
SINGLE-TENANT LEASE GROSS**

THIS **THIRD AMENDMENT TO STANDARD INDUSTRIAL/COMMERCIAL
SINGLE-TENANT LEASE GROSS** dated, for reference purposes only as of February 24,
2025 (this "Third Amendment"), is entered into by and between **TANAGER CO., LLC**, a
California Limited Liability Company ("Lessor") and **TAK YE INTERNATIONAL, INC.** a
California Corporation ("Lessee") with reference to the following:

## R E C I T A L S

WHEREAS, Lessor and Lessee are parties to that certain Standard
Industrial/Commercial  Single-Tenant Lease Gross dated as of December 15, 2015 (the
"**Original Lease**") between Lessor and Lessee, as amended by that certain First Amendment to
Standard Industrial/Commercial  Single-Tenant Lease Gross dated as of February 10, 2020 (the
"**First Amendment**", as futher amended by that certain Second Amendment to Standard
Industrial/Commercial Single-Tenant Lease Gross dated as of May 15, 2020 (the "**Second
Amendment**"); the Original Lease as amended by the First Amendment and Second Amendment
is hereinafter referred to as the "**Lease**" between Lessor and Lessee for the lease of certain
premises (the "**Premises**") located at 3014 Tanager Avenue, Commerce, California (the
"**Building**"), containing approximately 17,875 rentable square feet, as more particularly
described in the Lease.

WHEREAS, Lessor and Lessee desire to amend the Lease in order to, among other
things, extend the Term of the Lease and provide for the rent and other terms applicable in
connection with such extension, all upon the terms and provisions set forth in this Third
Amendment.

NOW, THEREFORE, in consideration of the forgoing Recitals, which are incorporated
herein by this reference, for the mutual promises that are contained herein and for other good and
valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor
and Lessee hereby agree as follows:

1.    **Extension of Term.**  Notwithstanding anything to the contrary contained in the
Lease, Lessor and Lessee agree that the Term shall hereby be extended for a period of forty-eight
(48) months ("Extended Term") commencing on March 1, 2025 and ending on February 28,
2029.

2.    **Base Rent for the Extended Term**.  Notwithstanding anything to the contrary
contained in the Lease, Base Rent during the Extended Term shall be $19,662.50 per month due
and payable on the first day of each month. The Base Rent shall be subject to a four percent (4%)
increase on each anniversary date of the Extended Term, as follows:

- March 1, 2026:      $20,449.00
- March 1, 2027:      $21,266.96
- March 1, 2028:      $22,117.64

3.      **Security Deposit**. Lessor acknowledges that it is currently holding a Security Deposit in the amount of $28,712.76.

4.      **Lessee's Estoppel**. Lessee hereby certifies and acknowledges that, as of the date of Lessee's execution of this Third Amendment: (a) Lessor is not in default in any respect under the Lease; (b) Lessee does not have any defenses to its obligations under the Lease and (c) there are no offsets against Rent. Lessee acknowledges and agrees that: (i) the representations herein set forth constitute a material consideration to Lessor in entering into this Third Amendment; (ii) such representations are being made by Lessee for the purposes of inducing Lessor to enter into this Third Amendment and (iii) Lessor is relying on such representations in entering into this Third Amendment.

5.      **Confidentiality**. Lessor and Lessee hereby agree to keep the terms of the Lease and this Third Amendment and the negotiation of the Lease and this Third Amendment confidential, and neither party shall disseminate or disclose such information to third parties except with each party's financial, legal and space planning advisors and consultants in connection with the negotiation and documentation of this Third Amendment.

6.      **Entire Agreement.** This Third Amendment contains the entire agreement and understanding between the parties concerning the subject matter of this Third Amendment and supersedes all prior agreements, terms, understandings, conditions, representations and warranties, whether written or oral, concerning the matters that are the subject of this Third Amendment. Wherever possible, each term of this Third Amendment shall be interpreted in such a manner as to be valid under applicable laws, rules, regulations and court authority, but if, notwithstanding the foregoing, any term of this Third Amendment is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining terms of this Third Amendment shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

7.      **Ratification.** Lessor and Lessee hereby ratify and confirm their respective rights and obligations under the Lease. In the event of any conflict between the terms of the Lease and the terms of this Third Amendment, the terms of this Third Amendment shall control.

8.      **Successors and Assigns.** This Third Amendment shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and assigns.

9.      **Headings.** The headings to sections of this Third Amendment are for convenient reference only and shall not be used in interpreting this Third Amendment.

10.    **Counterparts.** This Third Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

11.    **Representations and Indemnities of Broker Relationships.** Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder in connection with this Lease, and that no one is entitled to any commission or finder's fee in connection herewith. Lessee and Lessor do hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses attorneys' fees reasonably incurred with respect thereto.

**IN WITNESS WHEREOF**, Lessor and Lessee have caused their duly authorized representatives to execute this Third Amendment as of the date Third above written.

LESSOR:

**TANAGER CO., LLC**

By: _____

Name:  Samantha Millman
Title:   Manager

LESSEE:

**TAK YE INTERNATIONAL, INC.**
a California Corporation

By: _____

Name:  Kin Wa Chek
Title:   President

**THREE (3) BUSINESS DAY NOTICE TO PAY RENT OR SURRENDER POSSESSION**
**(Section 1161.1 of the California *Code of Civil Procedure*)**

TO:     **Tak Ye International, Inc., a California corporation;** and All In Possession;

RE:     That Standard Industrial/Commercial Single-Tenant Lease – Gross dated December 15, 2015, and any and all amendments, addenda and exhibits thereto (the "Lease"), respecting that certain real property located at **3014 Tanager Ave., Commerce, CA 90040** (the "Premises").

You have defaulted in the payment of rental charges due under the Lease.  The Landlord, **Tanager Co., LLC, a California limited liability company** ("Landlord") reasonably estimates, under Section 1161.1 of the California *Code of Civil Procedure*, that the total of the rental due under the Lease for the last year is the sum of **$41,863.25.   THIS IS WITHOUT WAIVER OF LANDLORD'S RIGHTS CONCERNING ALL NON-MONETARY DEFAULTS.**

Landlord demands that, within three (3) business days (i.e., days of the week excluding weekends and judicial holidays), you either pay the total sum of **$41,863.25** or vacate the Premises.  Such payment must be personally delivered to Landlord, 1880 Century Park East, Suite 607, Los Angeles, CA 90067, attn: Kenneth Millman, (310) 486-3836, at any time between 9:00 a.m. and 3:00 p.m., Monday through Friday.  If you fail or refuse to pay Landlord the total sum of **$41,863.25** within such three (3) business days, Landlord elects to declare a forfeiture of the Lease and the Lease will terminate under Section 1951.2 of the California *Civil Code*.

If you fail or refuse to pay the total sum of **$41,863.25** or to return possession of the Premises to Landlord within three (3) business days, Landlord will institute, without further notice or demand, legal action to: (1) terminate the Lease; (2) recover possession of the Premises; (3) recover statutory damages of up to $600.00; and (4) recover attorneys' fees and other costs incurred in this legal action.

Landlord will accept any partial payments made by you under Sub-Section 1161.1(b) and (c) of the California *Code of Civil Procedure*.  If you make a partial payment after the service of this Notice, Landlord may accept the partial payment and may file, without further notice or demand, the legal action described in the preceding paragraph.  Any payments after the notice period has elapsed may or may not be accepted, at the discretion of Landlord.  If Landlord does not intend to accept a payment that has been sent to a lock box, Landlord will return the payment as soon as Landlord becomes aware of it.  The fact that a check has been deposited does not mean that Landlord was aware of it and intended to accept it.

If you make a partial payment after the service of legal action described in the preceding paragraph, Landlord may accept the partial payment and may amend the legal action to reflect the partial payment without delaying that action from proceeding.

Landlord has no reason to believe that Tenant is entitled to any protections from any applicable Covid-19 ordinance as Tenant has failed to undertake any necessary steps to provide any notice to Landlord regarding any negative impact of Covid-19 on Tenant related to the amounts set forth herein.

Dated: July 2, 2025                      "Landlord"
                                         **Tanager Co., LLC, a California limited liability company**

                                         By:     David M. Cohen, A Professional Law Corporation,
                                                 its attorneys

                                                 _____
                                                 David M. Cohen, Esq.

6224.001

DAVID M. COHEN, APLC !    QQ
21021 VENTURA BLVD., SUITE 330
WOODLAND HILLS, (818) 466-3700

Ref. No.: 6224.001

## Proof of Service of Notice

1.   At the time of service I was at least 18 years of age and not a party
     to this action, and I served copies of the:
     THREE (3) BUSINESS DAY NOTICE TO PAY RENT OR SURRENDER POSSESSION
     (SECTION 1161.1 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE)


2.   a. Name of Tenant/Occupant:  TAK YE INTERNATIONAL, INC., A CALIFORNIA
                                  CORPORATION
     c.   (Work) Address:  3014 TANAGER AVE.
                           COMMERCE, CA 90040

3.   Manner of Service:
     Posting and Mailing.  By posting a copy of said Notice for each tenant/
     occupant in a conspicuous place on the property described in said Notice,
     there being no person of suitable age or discretion to be found at any
     known place of residence or business of said tenant(s)/occupant(s); by
     depositing said copies in the United States mail, in a sealed envelope,
     with postage prepaid, addressed to the tenant(s)/occupant(s) at the place
     where the property is situated.   (C.C.P. 1162 (3))

               Date of Posting: 07/03/25
               Time of Posting:  1:00 pm
               Date of Mailing: 07/03/25
               Place of Mailing: BURBANK

Prior to the posting of said notice and in compliance with the provisions
of C.C.P. 1162, I first attempted service at the following address(es):


               Home:


               Business: 3014 TANAGER AVE.
                         COMMERCE, CA 90040
and the tenant/occupant was absent therefrom, and no person of suitable
age and discretion was found therein.

5.   Person Serving:               a.  Fee for service:   $95.00
     J. MARTINEZ                    (recoverable per C.C.P. 1033.5(a)(4)(B))
                                    d.  Registered California process servers.
     5632 Van Nuys Blvd., # 240        (1) Independant contractor, registered
     Van Nuys CA 91401                 (2) Registration No.: 2013031448
     (213) 928-7247                    (3) County: LOS ANGELES

6.   I declare under penalty of perjury under the laws of the State of
     California that the foregoing is true and correct.


Date:  07/04/25            Signature:   
                                        J. MARTINEZ
                           Proof of Service

AX0211-25773880

**EXHIBIT D**

UD-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(name, state bar number, and address)*:<br><br>David M. Cohen, Esq. (SBN 160535)          SBN:<br>David M. Cohen, APLC<br>21021 Ventura Blvd., Suite 330, Woodland Hills, CA 91364<br><br>TELEPHONE NO.: (818) 855-5905          FAX NO. *(optional)*: (818) 855-5915<br>EMAIL ADDRESS: david@davidcohen-law.com<br>ATTORNEY FOR *(name)*: Tanager Co., LLC, a California limited liability company | FOR COURT USE ONLY<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>9/03/2025 1:44 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. So, Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF: Tanager Co., LLC, a California limited liability company
DEFENDANT: Tak Ye International, Inc., a California corporation; and DOES 1 through

| **JUDGMENT—UNLAWFUL DETAINER** | CASE NUMBER: |
|---|---|
| [X] **By Clerk**   [X] **By Default**   [ ] **After Court Trial**<br>[ ] **By Court**   [X] **Possession Only**   [ ] **Defendant Did Not<br>Appear at Trial** | 25STCV20894 |

**JUDGMENT**

1. [X] **BY DEFAULT**

    a.  Defendant was properly served with a copy of the summons and complaint.

    b.  Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.

    c.  Defendant's default was entered by the clerk upon plaintiff's application.

    d.  [X] **Clerk's Judgment** (Code Civ. Proc., § 1169). For possession only of the premises described on page 2 (item 4).

    e.  [ ] **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered

        (1)  [ ]  plaintiff's testimony and other evidence.

        (2)  [ ]  plaintiff's or others' written declaration and evidence (Code Civ. Proc., § 585(d)).

2. [ ] **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.

    a.  The case was tried on *(date and time)*:

        before *(name of judicial officer)*:

    b.  Appearances by

        [ ] plaintiff *(name each)*:                    [ ] plaintiff's attorney *(name each)*:

                                                            (1)

                                                            (2)

        [ ] Continued on *Attachment* 2b (form MC-025).

        [ ] defendant *(name each)*:                    [ ] defendant 's attorney *(name each)*:

                                                            (1)

                                                            (2)

        [ ] Continued on *Attachment* 2b (form MC-025).

    c.  [ ]  Defendant did not appear at trial. Defendant was properly served with notice of trial.

    d.  [ ]  A statement of decision (Code Civ. Proc., § 632)   [ ] was not   [ ] was   requested.

Form Approved for Optional Use
Judicial Council of California
UD-110 [Rev. January 1, 2024]

**JUDGMENT—UNLAWFUL DETAINER**

Code of Civil Procedure, §§ 415.46,
585(d), 664.6, 1169

Westlaw Doc & Form Builder™

**UD-110**

| PLAINTIFF: Tanager Co., LLC, a California limited liability company | CASE NUMBER: 25STCV20894 |
|---|---|
| DEFENDANT: Tak Ye International, Inc., a California corporation; and DOES 1 through | |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☐ THE COURT ☒ THE CLERK

3. **Parties.** Judgment is

  a. ☒ for plaintiff *(name each):* Tanager Co., LLC, a California limited liability company

    and against defendant *(name each):* Tak Ye International, Inc., a California corporation

    ☐ Continued on *Attachment 3a* (form MC-025).

  b. ☐ for defendant *(name each):*

4. The party entitled to possession of the premises located at *(street address, apartment, city, and county):* 3014 Tanager Ave., Commerce, CA 90040 is
  ☒ plaintiff named in item 3a   ☐ defendant named in item 3b   ☐ defendant listed on attached form UD-110P in item 8b1 (Code Civ. Proc. § 1174.27).

5. ☐ Judgment applies to all occupants of the premises including tenants, subtenants if any, and named claimants if any (Code Civ. Proc., §§ 715.010, 1169, and 1174.3).

6. **Amount and terms of judgment**

  a. ☐ Defendant named in item 3a above must pay plaintiff on the complaint

  b. ☐ Plaintiff is to receive nothing from defendant named in item 3b.
    ☐ Defendant named in item 3b is to recover costs: $
    ☐ and attorney fees: $

| | | |
|---|---|---|
| (1) ☐ Past-due rent | $ | |
| (2) ☐ Holdover damages | $ | |
| (3) ☐ Attorney fees | $ | |
| (4) ☐ Costs | $ | |
| (5) ☐ Other *(specify):* | $ | |
| **(6) TOTAL JUDGMENT** | $ | |

  c. ☒ The rental agreement is canceled.   ☒ The lease is forfeited.

7. ☐ **Conditional judgment.** Plaintiff has breached the agreement to provide habitable premises to defendant as stated in *Judgment—Unlawful Detainer Habitable Premises Attachment* (form UD-110H), which is attached.

8. ☐ **Judgment for partial eviction.** A partial eviction is issued as stated in *Judgment—Unlawful Detainer Partial Eviction Attachment* (form UD-110P), which is attached.

9. ☐ Other *(specify):*

  ☐ Continued on *Attachment 9* (form MC-025).

Date: _____
                              JUDICIAL OFFICER

Date: 09/03/2025   ☑ Clerk, by   J. So   _____ , Deputy
                              David W. Slayton, Executive Officer/Clerk of Court

(SEAL)

**CLERK'S CERTIFICATE** *(Optional)*
I certify that this is a true copy of the original judgment on file in the court.

Date:

                  Clerk, by _____ , Deputy

**JUDGMENT—UNLAWFUL DETAINER**

**EXHIBIT E**



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only
**-FILED-**

File No.: BA20231909411
Date Filed: 12/19/2023

BA20231909411

| Entity Details | |
|---|---|
| Corporation Name | TAK YE INTERNATIONAL, INC. |
| Entity No. | 2844814 |
| Formed In | CALIFORNIA |

| Street Address of Principal Office of Corporation | |
|---|---|
| Principal Address | 3014 TANAGER AVE COMMERCE, CA 90040 |

| Mailing Address of Corporation | |
|---|---|
| Mailing Address | 3014 TANAGER AVE COMMERCE, CA 90040 |
| Attention | |

| Street Address of California Office of Corporation | |
|---|---|
| Street Address of California Office | 3014 TANAGER AVE COMMERCE, CA 90040 |

**Officers**

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| ➕ Kin Wa Tam | 3014 TANAGER AVE COMMERCE, CA 90040 | Chief Executive Officer, Chief Financial Officer, Secretary |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

**Directors**

| Director Name | Director Address |
|---|---|
| KIN WA CHEK | 9915 DUFFY ST TEMPLE CITY, CA 91780 |

The number of vacancies on Board of Directors is: 0

| Agent for Service of Process | |
|---|---|
| Agent Name | KIN WA CHEK |
| Agent Address | 3014 TANAGER AVE COMMERCE, CA 90040 |

| Type of Business | |
|---|---|
| Type of Business | IMPORT DISTRIBUTIONS |

| Email Notifications | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Labor Judgment**

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

B2346-2402 12/19/2023 11:03 AM Received by California Secretary of State

Electronic Signature

☒  By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*Kin Wa Tam*
_____
Signature

*12/19/2023*
_____
Date

B2346-2403 12/19/2023 11:03 AM Received by California Secretary of State

**EXHIBIT F**

**EJ-130**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:  STATE BAR NO.: | FOR COURT USE ONLY |

NAME: David M. Cohen, Esq. (SBN 160535)
FIRM NAME: David M. Cohen, APLC
STREET ADDRESS: 21021 Ventura Blvd. Suite 330
CITY: Woodland Hills  STATE: CA  ZIP CODE: 91364
TELEPHONE NO.: (818) 855-5905  FAX NO.: (818) 855-5915
EMAIL ADDRESS: david@davidcohen-law.com
ATTORNEY FOR (name): Tanager Co., LLC, a California limited liability company
[X] ATTORNEY FOR  [X] ORIGINAL JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Tanager Co., LLC, a California limited liability company
DEFENDANT/RESPONDENT: Tak Ye International, Inc., a California corporation;

CASE NUMBER: 25STCV20894

**WRIT OF**
[ ] EXECUTION (Money Judgment)
[X] POSSESSION OF  [ ] Personal Property
[ ] SALE  [X] Real Property

[ ] Limited Civil Case (including Small Claims)
[X] Unlimited Civil Case (including Family and Probate)

1. **To the Sheriff or Marshal of the County of:** Los Angeles
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. **To any registered process server:** You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): Tanager Co., LLC, a California limited liability company
   is the [X] original judgment creditor [ ] assignee of record  whose address is shown on this form above the court's name.

4. **Judgment debtor** (name, type of legal entity if not a natural person, and last known address):

   Tak Ye International, Inc., a California corporation

   3014 Tanager Ave., Commerce, CA 90040

   [ ] Additional judgment debtors on next page

5. **Judgment entered** on (date): 9/3/25
   (See type of judgment in item 22.)

6. [ ] Judgment renewed on (dates):

7. **Notice of sale** under this writ:
   a. [X] has not been requested.
   b. [ ] has been requested (see next page).

8. [ ] Joint debtor information on next page.

[SEAL]

9. [X] Writ of Possession/Writ of Sale information on next page.
10. [ ] This writ is issued on a sister-state judgment.
   **For items 11–17, see form MC-012 and form MC-013-INFO.**

| | |
|---|---|
| 11. Total judgment (as entered or renewed) | $ |
| 12. Costs after judgment (CCP 685.090) | $ |
| 13. Subtotal (add 11 and 12) | $ |
| 14. Credits to principal (after credit to interest) | $ |
| 15. Principal remaining due (subtract 14 from 13) | $ |
| 16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees) | $ |
| 17. Fee for issuance of writ (per GC 70626(a)(l)) | $ 40.00 |
| 18. **Total amount due** (add 15, 16, and 17) | $ 40.00 |

19. **Levying officer:**
   a. Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) . . . . . . . . . . . . . . . $
   b. Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637; CCP 699.520(j)) . . . . . . . . . . . $

20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

*POSSESSION ONLY*

David W. Slayton, Executive Officer/Clerk of Court
Date: 09/05/2025  Clerk, by K. Encinas , Deputy

**NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.**

Page 1 of 3

**WRIT OF EXECUTION**

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov
Westlaw Doc & Form Builder

Electronically Received 09/05/2025 07:50 AM

EJ-130

| | |
|---|---|
| Plaintiff/Petitioner: Tanager Co., LLC, a California limited liability company<br>Defendant/Respondent: Tak Ye International, Inc., a California corporation; and | CASE NUMBER:<br>25STCV20894 |

21. ☐ Additional judgment debtor(s) *(name, type of legal entity if not a natural person, and last known address):*

22. The judgment is for *(check one):*

    a. ☐ wages owed.

    b. ☐ child support or spousal support.

    c. ☒ other.

23. ☐ Notice of sale has been requested by *(name and address):*

24. ☐ Joint debtor was declared bound by the judgment (CCP 989-994)

    a. *on (date):*
    b. name, type of legal entity if not a natural person, and
    last known address of joint debtor:

    a. *on (date):*
    b. name, type of legal entity if not a natural person, and
    last known address of joint debtor:

    c. ☐ Additional costs against certain joint debtors are itemized: ☐ below ☐ on Attachment 24c.

25. ☒ (Writ of Possession or Writ of Sale) **Judgment** was entered for the following:

    a. ☒ Possession of real property: The complaint was filed on *(date):* 7/15/25
        *(Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)*

        (1) ☐ The *Prejudgment Claim of Right to Possession* was served in compliance with CCP 415.46. The
            judgment includes all tenants, subtenants, named claimants, and other occupants of the premises.

        (2) ☒ The *Prejudgment Claim of Right to Possession* was NOT served in compliance with CCP 415.46.

        (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the
            judgment may file a *Claim of Right to Possession* at any time up to and including the time the levying officer returns
            to effect eviction, regardless of whether a *Prejudgment Claim of Right to Possession* was served.) *(See CCP
            415.46 and 1174.3(a)(2).)*

        (4) If the unlawful detainer resulted from a foreclosure (item 25a(3)), or if the *Prejudgment Claim of Right to Possession* was
           not served in compliance with CCP 415.46 (item 25a(2)), answer the following:

           (a) The daily rental value on the date the complaint was filed was $ 655.39

           (b) The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates *(specify):*
              Monday through Friday at 8:30 a.m. in the Clerk's Office

                             Court to set date upon request

*Item 25 continued on next page*

**EJ-130**

| | |
|---|---|
| Plaintiff/Petitioner: Tanager Co., LLC, a California limited liability company<br>Defendant/Respondent: Tak Ye International, Inc., a California corporation; and | CASE NUMBER:<br>25STCV20894 |

25. b. ☐   Possession of personal property.

         ☐   If delivery cannot be had, then for the value *(itemize in 25e)* specified in the judgment or supplemental order.

    c. ☐   Sale of personal property.

    d. ☐   Sale of real property.

    e.   The property is described   ☒ below     ☐ on Attachment 25e.

       3014 Tanager Ave., Commerce, CA 90040

---

### NOTICE TO PERSON SERVED

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

---

**Exhibit G**

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

Central District of California

Case number (If known): _____

Chapter you are filing under:
- ❏ Chapter 7
- ❏ Chapter 11
- ❏ Chapter 12
- ☑ Chapter 13

```
FILED
OCT - 9 2025
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                      Deputy Clerk
```

❏ Check if this is an amended filing

## Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    04/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

|  | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- | --- |
| 1. | **Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Johnny<br>First name<br><br>Middle name<br><br>Chek<br>Last name<br><br>Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name<br><br>Suffix (Sr., Jr., II, III) |
| 2. | **All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | N/A<br>First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name | N/A<br>First name<br><br>Middle name<br><br>Last name<br><br>First name<br><br>Middle name<br><br>Last name |
| 3. | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – 6 3 9 1<br>OR<br>9 xx – xx – ___ ___ ___ ___ | xxx – xx – ___ ___ ___ ___<br>OR<br>9 xx – xx – ___ ___ ___ ___ |

| Debtor 1 | Johnny | | Chek | | Case number *(if known)* |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

|  | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| **4.** | **Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years** <br><br> Include trade names and *doing business as* names | ☑ I have not used any business names or EINs. <br><br> _____ <br> Business name <br><br> _____ <br> Business name <br><br> EIN _ _ – _ _ _ _ _ _ _ <br><br> EIN _ _ – _ _ _ _ _ _ _ | ☑ I have not used any business names or EINs. <br><br> _____ <br> Business name <br><br> _____ <br> Business name <br><br> EIN _ _ – _ _ _ _ _ _ _ <br><br> EIN _ _ – _ _ _ _ _ _ _ |

| **5.** | **Where you live** | | If Debtor 2 lives at a different address: |
|---|---|---|---|
| | 3014 Tanager Ave <br> Number    Street <br><br><br> Commerce                         Ca        90040 <br> City                              State      ZIP Code <br><br> Los Angeles <br> County <br><br> **If your mailing address is different from the one above, fill it in here. Note that the court will send any notices to you at this mailing address.** <br><br> _____ <br> Number    Street <br><br> _____ <br> P.O. Box <br><br> _____ <br> City                              State      ZIP Code | | _____ <br> Number    Street <br><br><br> _____ <br> City                              State      ZIP Code <br><br> _____ <br> County <br><br> **If Debtor 2's mailing address is different from yours, fill it in here. Note that the court will send any notices to this mailing address.** <br><br> _____ <br> Number    Street <br><br> _____ <br> P.O. Box <br><br> _____ <br> City                              State      ZIP Code |

| **6.** | **Why you are choosing *this district* to file for bankruptcy** | *Check one:* | *Check one:* |
|---|---|---|---|
| | | ☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. <br><br> ☐ I have another reason. Explain. (See 28 U.S.C. § 1408.) <br><br> _____ <br> _____ <br> _____ | ☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. <br><br> ☐ I have another reason. Explain. (See 28 U.S.C. § 1408.) <br><br> _____ <br> _____ <br> _____ |

| Debtor 1 | Johnny | | Chek | Case number *(if known)* |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

### Part 2:    Tell the Court About Your Bankruptcy Case

**7.  The chapter of the Bankruptcy Code you are choosing to file under**

Check one. (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☐ Chapter 11

☐ Chapter 12

☑ Chapter 13

---

**8.  How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9.  Have you filed for bankruptcy within the last 8 years?**

☑ No

☐ Yes.  District _____ When _____ Case number _____
                                          MM / DD / YYYY

        District _____ When _____ Case number _____
                                          MM / DD / YYYY

        District _____ When _____ Case number _____
                                          MM / DD / YYYY

---

**10.  Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No

☐ Yes.  Debtor _____ Relationship to you _____
        District _____ When _____ Case number, if known _____
                                          MM / DD / YYYY

        Debtor _____ Relationship to you _____
        District _____ When _____ Case number, if known _____
                                          MM / DD / YYYY

---

**11.  Do you rent your residence?**

☐ No.  Go to line 12.

☑ Yes.  Has your landlord obtained an eviction judgment against you?

    ☑ No. Go to line 12.

    ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

---

Debtor 1    Johnny _____ Chek _____    Case number (if known)_____
         First Name   Middle Name   Last Name

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

☑ No. Go to Part 4.

☐ Yes. Name and location of business

_____
Name of business, if any

_____
Number    Street

_____

_____
City                                    State      ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor* or a debtor as defined by 11 U.S. C. § 1182(1)?**
For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines.* If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☑ No. I am not filing under Chapter 11.

☐ No. I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes. I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes. I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

| Debtor 1 | Johnny | Chek | | Case number (if known)_____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |
|---|---|

14. **Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

    *For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

    ☑ No
    ☐ Yes.  What is the hazard?  _____
    _____

    If immediate attention is needed, why is it needed? _____
    _____

    Where is the property?  _____
    Number        Street

    _____

    _____
    City                                State      ZIP Code

| Debtor 1 | Johnny | | Chek | | Case number *(if known)* |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| **Part 5:** | **Explain Your Efforts to Receive a Briefing About Credit Counseling** |
|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

| Debtor 1 | Johnny | | Chek | | Case number *(if known)* _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**Part 6:    Answer These Questions for Reporting Purposes**

| 16. What kind of debts do you have? | 16a. **Are your debts primarily consumer debts?** *Consumer debts are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."*<br><br>☐ No. Go to line 16b.<br>☑ Yes. Go to line 17.<br><br>16b. **Are your debts primarily business debts?** *Business debts are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.*<br><br>☐ No. Go to line 16c.<br>☐ Yes. Go to line 17.<br><br>16c. State the type of debts you owe that are not consumer debts or business debts. |
|---|---|

| 17. Are you filing under Chapter 7?<br><br>Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors? | ☐ No.  I am not filing under Chapter 7. Go to line 18.<br><br>☐ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?<br><br>☑ No<br><br>☐ Yes |
|---|---|

| 18. How many creditors do you estimate that you owe? | ☑ 1-49<br>☐ 50-99<br>☐ 100-199<br>☐ 200-999 | ☐ 1,000-5,000<br>☐ 5,001-10,000<br>☐ 10,001-25,000 | ☐ 25,001-50,000<br>☐ 50,001-100,000<br>☐ More than 100,000 |
|---|---|---|---|

| 19. How much do you estimate your assets to be worth? | ☑ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☐ $100,000,001-$500 million | ☐ $500,000,001-$1 billion<br>☐ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |
|---|---|---|---|

| 20. How much do you estimate your liabilities to be? | ☑ $0-$50,000<br>☐ $50,001-$100,000<br>☐ $100,001-$500,000<br>☐ $500,001-$1 million | ☐ $1,000,001-$10 million<br>☐ $10,000,001-$50 million<br>☐ $50,000,001-$100 million<br>☐ $100,000,001-$500 million | ☐ $500,000,001-$1 billion<br>☐ $1,000,000,001-$10 billion<br>☐ $10,000,000,001-$50 billion<br>☐ More than $50 billion |
|---|---|---|---|

**Part 7:    Sign Below**

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12 , or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| ✗ _____ | ✗ _____ |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| | |
| Executed on  10/09/2025 | Executed on _____ |
| MM / DD / YYYY | MM / DD / YYYY |

| Debtor 1 | Johnny | | Chek | | Case number (if known) | |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | | |

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

✖ _____        Date        _____

Signature of Attorney for Debtor                                    MM    /    DD    / YYYY

Printed name        _____

Firm name        _____

Number    Street

_____

_____

City                                State        ZIP Code

Contact phone _____        Email address _____

Bar number        _____        State

---

| Debtor 1 | Johnny | | Chek | | Case number *(if known)* _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**For you if you are filing this bankruptcy without an attorney**

**If you are represented by an attorney, you do not need to file this page.**

The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☑ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☑ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☑ No
☐ Yes. Name of Person_____.
   Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

| ✗ _____ | ✗ _____ |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| Date   10/09/2025 | Date   _____ |
|    MM / DD  / YYYY |    MM /  DD / YYYY |
| Contact phone _____ | Contact phone _____ |
| Cell phone _____ | Cell phone _____ |
| Email address _____ | Email address _____ |

**Fill in this information to identify your case:**

| | | |
|---|---|---|
| Debtor 1 | Johnny | Check |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | |
| (Spouse, if filing) First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Central   District of CA

(State)

Case number
(if known) _____

☐ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

☒ No

☐ Yes. Name of person_____. Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

✗ _____    ✗ _____
Signature of Debtor 1              Signature of Debtor 2

Date 10/09/2025
MM / DD / YYYY

Date _____
MM / DD / YYYY

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Johnny Chek<br>3014 Tanager Ave<br>Commerce Ca 90040<br><br><br><br>☒ *Debtor(s) appearing without attorney*<br>☐ *Attorney for Debtor* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>Johnny Chek | CASE NO.:<br>CHAPTER: 13 |
|---|---|
| <br><br><br><br><br>Debtor(s). | **VERIFICATION OF MASTER<br>MAILING LIST OF CREDITORS**<br>**[LBR 1007-1(a)]** |

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of ____ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date:  10/09/2025 _____              _____
                                                                    Signature of Debtor 1

Date: _____                            _____
                                                                    Signature of Debtor 2 (joint debtor) (if applicable)

Date: _____                            _____
                                                                    Signature of Attorney for Debtor (if applicable)

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California

*December 2015*                                                                        **F 1007-1.MAILING.LIST.VERIFICATION**

# Master Mailing List of Creditors

**Visa**

**100 N Tryon St Ste 170**

**Charlotte, NC, 28202-4024 US**


**Mastercard**

**2200 Mastercard Blvd**

**O Fallon MO 66368**


**Tanager CO LLC**

**3014 Tanager Ave**

**Commerce Ca 90040**

| United States Bankruptcy Court<br>Central District of California | |
|---|---|
| In re:<br>Johnny Chek | CHAPTER NO.: 13 |
| | CASE NO.: 2:25–bk–18980 |

# ORDER TO COMPLY WITH BANKRUPTCY RULE 1007 and 3015(b)
# AND NOTICE OF INTENT TO DISMISS CASE

**To Debtor and Debtor's Attorney of Record,**

YOU FAILED TO FILE THE FOLLOWING DOCUMENTS:

**Schd A/B(Form106A/B or 206A/B)**
**Schedule C (Form 106C)**
**Schedule D (Form 106D or 206D)**
**Schd E/F(Form106E/F or 206E/F)**
**Schedule G (Form 106G or 206G)**
**Summary(Form 106Sum or 206Sum)**
**Schedule H (Form 106H or 206H)**
**Means Calculation(Form 122C–2)**
**Schedule I (Form 106I)**
**Schedule J (Form 106J)**
**StmtFinAffairs(Form107 or 207)**
**Chapter 13 Plan (LBR F3015–1)**
**Ch 13 Income (Form 122C–1)**

For Chapter 13 Cases filed on or after 04/15/2019, the new version of the chapter 13 plan is required. The court will treat your case as not having filed a plan and **WILL DISMISS YOUR CASE unless the correct version of the mandatory form plan is filed by the applicable deadline.**

**The Revised Official Bankruptcy Forms are mandatory and are available at www.cacb.uscourts.gov/forms**

According to Bankruptcy Rules 1007(c) and 3015(b), <u>within 14 days after you filed the petition</u>, **YOU MUST EITHER:**

(1)    File the required documents. If the document is filed electronically, no hard copy needs to be submitted to the court. (See Local Bankruptcy Rule 5005–2(d) and Court Manual, Appendix "F" as to whether a copy must be served on the judge.)
**OR**
(2)    File and serve a motion for an order extending the time to file the required document(s). If you make such a motion and it is denied after the 14 days have expired, your case will be dismissed.

**IF YOU DO NOT COMPLY** in a timely manner with either of the above alternatives, the court **WILL DISMISS YOUR CASE WITHOUT FURTHER NOTICE.**

Dated: <u>October 9, 2025</u>

For the Court
**Kathleen J. Campbell**
Clerk of Court

(Form deforco – Rev 04/2019)                                                     **1 / KC2**

# United States Bankruptcy Court
# Central District of California

In re:
Johnny Chek

CHAPTER NO.:  13

CASE NO.: 2:25–bk–18980

## CASE COMMENCEMENT DEFICIENCY NOTICE

**To Debtor and Debtor's Attorney of Record,**
**YOUR CASE MAY BE DISMISSED IF YOU FAIL TO CURE THE FOLLOWING DEFICIENCIES:**

You must cure the following within 14 days from filing of your petition:

☑ Certificate of Credit Counseling as required by § 521(b)(1), § 109(h)(1), and FRBP 1007(b)(3), or a Certification of Exigent Circumstances under § 109(h)(3), or a request for determination by the court under § 109(h)(4)
☑ Statement of Related Cases (LBR Form 1015–2) [Information required by LBR 1015–2]
☑ Declaration by Debtor(s) as to Whether Income was Received From an Employer within 60 Days of the Petition Date [11 U.S.C. § 521(a)(1)(B)(iv)] (LBR Form F1002–1)

**The Revised Official Bankruptcy Forms are mandatory and are available at www.cacb.uscourts.gov/forms**

For all items above that are not electronically filed, you must file the original and the following number of copies in accordance with Local Bankruptcy Rules 1002–1(c) and 5005–2, and Court Manual, section 2.5(a)(2).

        Chapter 13    Original only

**Please return the original or copy of this form with all required items to the following location:**

       255 E. Temple Street, Room 100, Los Angeles, CA 90012

If you have any questions, please contact the Court's Call Center at the toll free number (855) 460–9641.

Dated: <u>October 9, 2025</u>

For the Court
**Kathleen J. Campbell**
Clerk of Court

(Form ccdn – Rev 02/2020)

**1 / KC2**

**Exhibit H**

# Facsimile Transmission



# Los Angeles County Sheriff's Department

**From:**     Name:           CIVIL MANAGEMENT BUREAU
              Fax Number:     (323) 415-3124
              Voice Phone:    (213) 972-3930

**To:**       Name:           **Attb: Davud**
              Company:
              Fax Number:     1-818-855-5915
              Voice Phone:

              Date/Time:      Friday, October 10, 2025 9:07:56 AM
              Page(s) + Cover: **05**

**FAX NOTES:**

CP10

| CLAIMANT OR CLAIMANT'S ATTORNEY *(Name and Address)*    TELEPHONE NO. | FOR COURT USE ONLY |
|---|---|
| Johnny Chek<br>3014 Tanager Ave<br>Commerce Ca 90040 | LA COUNTY SHERIFF<br>CIVIL MGT BUREAU<br>2025 OCT -9 PM 12: 02<br>SANTA CLARITA OFFICE |

ATTORNEY FOR *(Name)*:

NAME OF COURT: Superior Court of Califonia - Los Angeles

STREET ADDRESS: 111 N Hill St

MAILING ADDRESS:

CITY AND ZIP CODE: Los Angeles Ca 90012

BRANCH NAME:

| | CASE NUMBER: |
|---|---|
| Plaintiff: Tanager Co LLC | 25STCV20894 |
| Defendant: Johnny Chek | *(For levying officer use only)* |
| **CLAIM OF RIGHT TO POSSESSION<br>AND NOTICE OF HEARING** | Completed form was received on<br>Date: 10-9-25   Time: 12:02<br>By: MER |

Complete this form only if ALL of these statements are true:

1. You are NOT named in the accompanying form called *Writ of Possession.*
2. You occupied the premises on or before the date the unlawful detainer (eviction) action was filed. *(The date is in the accompanying Writ of Possession.)*
3. You still occupy the premises.
4. A *Prejudgment Claim of Right to Possession* form was NOT served with the *Summons and Complaint*, OR this eviction results from a foreclosure.

NOTICE: If you are being evicted because of foreclosure, you have additional rights and should seek legal assistance immediately.

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is *(specify)*: Johnny Chek

2. I reside at *(street address, unit no., city and ZIP code)*:
   3014 Tanager Ave
   Commerce CA 90040

3. The address of "the premises" subject to this claim is *(address)*:

   3014 Tanager Ave Commerce Ca 90040

   ☐ Check here if this property was foreclosed on.

4. On *(insert date)*: 9/10/2025     , the owner, landlord, or the landlord's authorized agent filed a complaint to recover possession of the premises. *(This date is in the accompanying Writ of Possession.)*

5. I occupied the premises on the date the complaint was filed *(the date in item 4)*. I have continued to occupy the premises ever since.

6. I was at least 18 years of age on the date the complaint was filed *(the date in item 4)*.

7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed *(the date in item 4)*.

8. I was not named in the *Writ of Possession.*

9. I understand that if I make this claim of possession, a court hearing will be held to decide whether my claim will be granted.

10. *(Filing fee)* To obtain a court hearing on my claim, I understand that after I present this form to the levying officer I must go to the court and pay a filing fee of $ _____ or file with the court *"Application for Waiver of Court Fees and Costs."* I understand that if I don't pay the filing fee or file the form for waiver of court fees within 2 court days, the court will immediately deny my claim.

11. *(Immediate court hearing unless you deposit 15 days' rent)* To obtain a court hearing on my claim, I understand I must also present a copy of this completed complaint form or a receipt from the levying officer. I also understand the date of my hearing will be set immediately if I do not deliver to the court an amount equal to 15 days' rent.

*(Continued on reverse)*

CP10

| | | |
|---|---|---|
| Plaintiff: | Tanager Co LLC | CASE NUMBER: |
| Defendant: | Johnny Chek | 25STCV20894 |

12. I am filing my claim in the following manner *(check the box that shows how you are filing your claim. Note that you must deliver to the court a copy of the claim form or a levying officer's receipt):*

a. ☐ I presented this claim form to the sheriff, marshal, or other levying officer, AND within two court days I shall deliver to the court the following: (1) a copy of this completed claim form or a receipt, (2) the court filing fee or form for proceeding in forma pauperis, and (3) an amount equal to 15 days' rent; or

b. ☑ I presented this claim form to the sheriff, marshal, or other levying officer, AND within two court days I shall deliver to the court (1) a copy of this completed claim form or a receipt, and (2) the court filing fee or form for proceeding in forma pauperis.

**IMPORTANT: Do not take a copy of this claim form to the court unless you have first given the form to the sheriff, marshal, or other levying officer.**

| *(To be completed by the court)* | | | |
|---|---|---|---|
| Date of hearing: | Time: | Dept. or Div.: | Room: |
| Address of court: | | | |

NOTICE: If you fail to appear at this hearing you will be evicted without further hearing.

13. **Rental agreement.** I have *(check all that apply to you)*:

a. ☐ an oral rental agreement with the landlord.
b. ☑ a written rental agreement with the landlord.
c. ☐ an oral rental agreement with a person other than the landlord.
d. ☐ a written rental agreement with a person other than the landlord.
e. ☐ a rental agreement with the former owner who lost the property through foreclosure.
f. ☐ other *(explain):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

WARNING: Perjury is a felony punishable by imprisonment in the state prison.

Date: 10/9/2025

Johnny Chek

_____          ►          _____
(TYPE OR PRINT NAME)                                       (SIGNATURE OF CLAIMANT)

NOTICE: If your claim to possession is found to be valid, the unlawful detainer action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

— NOTICE TO OCCUPANTS —

YOU MUST ACT AT ONCE if all the following are true:

1. You are NOT named, in the accompanying form called Writ of Possession;
2. You occupied the premises on or before the date the unlawful detainer (eviction) action was filed; *and*
3. You still occupy the premises.
4. A Prejudgment Claim of Right to Possession form was NOT served with the Summons and Complaint, OR you are being evicted due to foreclosure.
   You can complete and SUBMIT THIS CLAIM FORM
   (1) Before the date of eviction at the sheriff's or marshal's office located at *(address):*

   (2) OR at the premises at the time of the eviction. *(Give this form to the officer who comes to evict you.)*
If you do not complete and submit this form (and pay a filing fee or file the form for proceeding in forma pauperis if you cannot pay the fee), YOU WILL BE EVICTED along with the parties named in the writ.
After this form is properly filed, A HEARING WILL BE HELD to decide your claim. If you do not appear at the hearing, you will be evicted without a further hearing.

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    [Print this form]  [Save this form]        [Clear this form]



United States Bankruptcy Court
Central District of California

# Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under
at 10:30 AM and filed on 10/09/2025.

**Johnny Chek**
3014 Tanager Ave
Commerce, CA 90040
SSN / ITIN: xxx-xx-6391

The bankruptcy trustee is:

**Nancy K Curry (TR)**
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
213-689-3014

The case was assigned case number 2:25-bk-18980-WB to Judge Julia W. Brand.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Kathleen J. Campbell**
**Clerk, U.S. Bankruptcy Court**

# PROOF OF SERVICE OF DOCUMENT

1

2  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

3  A True And Correct Copy Of The Foregoing Document **Notice Of Motion And Motion For Relief From The Automatic Stay Or For Order Confirming That The Automatic Stay Does Not Apply Under 11 U.S.C. § 362(L) (With Supporting Declarations) (Unlawful Detainer)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

4

5

6  **1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 14, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

7

8

9  • Nancy K Curry (TR)    inquiries@trusteecurry.com, TrusteeECFMail@gmail.com
   • United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

10  **2. <u>SERVED BY UNITED STATES MAIL</u>**: On **October 14, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

11

12

13  Johnny Chek                                    No RSN as of 10.14.2025
   3014 Tanager Ave
   Commerce, CA 90040
14  **Debtor**

15  Nancy K Curry (TR)
   1000 Wilshire Blvd., Suite 870
16  Los Angeles, CA 90017
   **Chapter 13 Trustee**

17
                                              ☒Service list attached

18

19  **3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 14, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

20

21

22

23  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

24  October 14, 2025          Vanina Ivanova              /s/ Vanina Ivanova

25  Date                       Type Name                  Signature

26

27

28

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:25-bk-18980-WB
Central District of California
Los Angeles
Tue Oct 14 11:41:16 PDT 2025

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Mastercard
2200 Mastercard Blvd
O Fallon MO 63368-7263

Tanager CO LLC
3014 Tanager Ave
Commerce Ca 90040-2719

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Visa
100 N Tryon St Ste 170
Charlotte, NC 28202-4024

Johnny Chek
3014 Tanager Ave
Commerce, CA 90040-2719

Nancy K Curry (TR)
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017-2466

End of Label Matrix
Mailable recipients    9
Bypassed recipients    0
Total                  9